## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TEXARKANA DIVISION

|  |  |  |
|---|---|---|
| LISA TORREY, et al., | § | |
| | § | |
| Plaintiffs, | § | Civil Action No. 5:17-cv-00190-RWS |
| | § | |
| v. | § | |
| | § | |
| INFECTIOUS DISEASES SOCIETY OF | § | |
| AMERICA, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## INSURANCE DEFENDANTS' MOTION TO DISMISS
## PLAINTIFFS' COMPLAINT

Defendants ANTHEM, INC., BLUE CROSS AND BLUE SHIELD OF TEXAS,

AETNA INC., CIGNA HEALTH AND LIFE INSURANCE COMPANY (improperly sued as

CIGNA CORPORATION), KAISER FOUNDATION HEALTH PLAN, INC. (improperly sued

as KAISER PERMANENTE, INC.), UNITED HEALTHCARE SERVICES, INC.,

UNITEDHEALTH GROUP INCORPORATED, and BLUE CROSS AND BLUE SHIELD

ASSOCIATION (collectively, the "Insurance Defendants"[1]) respectfully move this Court to

dismiss this action pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). The grounds

for this motion are set forth in the accompanying memorandum. The Insurance Defendants

respectfully request that the Court set a hearing date for this motion to allow for oral argument.

---

[1] The term "Insurance Defendants" is not an accurate description of every party listed above, particularly given that certain defendants are primarily third-party claims administrators. But because the complaint refers to the above-noted parties as the "Insurance Defendants," they will follow Plaintiffs' naming convention in this Motion for the convenience of the Court.

## INSURANCE DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 2

        A.      The IDSA Guidelines for the Clinical Assessment, Treatment, and
                Prevention of Lyme Disease ................................................................. 3

                1.      Lyme Disease and its Treatment ................................................ 3

                2.      Challenges to the Guidelines' Recommendations ..................... 5

        B.      Plaintiffs' Federal RICO and Antitrust Claims .................................... 6

III.    STATEMENT OF ISSUES PURSUANT TO LOCAL RULE CV-7(A)(1) ..................... 8

IV.     LEGAL STANDARDS GOVERNING CONCLUSORY ALLEGATIONS,
        "QUINTESSENTIAL SHOTGUN PLEADINGS," AND ALLEGATIONS OF
        FRAUD ............................................................................................................. 8

V.      ARGUMENT ..................................................................................................... 10

        A.      Plaintiffs Fail to State Plausible RICO Claims (Counts I-IV) ............. 11

                1.      Plaintiffs Lack Standing to Bring RICO Claims ....................... 12

                        a.      Plaintiffs Allege Only Personal Injuries, Which are
                                Improper Bases for RICO Claims ................................ 12

                        b.      Plaintiffs Fail to Allege Facts Establishing That Their
                                Injuries Were Caused by Any Racketeering Activity ......... 13

                2.      Plaintiffs' Allegations Are Insufficient to State a Viable RICO
                        Claim ........................................................................................ 15

                        a.      Plaintiffs Fail to Plead a Viable Section 1962(c) Claim ......... 15

                                (i)     Plaintiffs Fail to Plead a RICO Enterprise ......... 16

                                (ii)    Plaintiffs Fail to Adequately Plead that the
                                        Insurance Defendants Conducted the Affairs of the
                                        Alleged RICO Enterprise ................................. 17

(iii)    Plaintiffs Fail to Adequately Plead a Pattern of
Racketeering Activity ....................................................... 19

b.    Plaintiffs Fail to Plead a Viable Section 1962(a) Claim ............... 21

c.    Plaintiffs Fail to Plead a Viable Section 1962(b) Claim............... 22

d.    Plaintiffs Fail to Plead a Viable Section 1962(d) Claim............... 23

B.    Plaintiffs Fail to Plead Plausible Sherman Act Claims (Count V) ...................... 23

1.    Plaintiffs' Conclusory Allegations are Insufficient to State Any
Viable Sherman Act Claim ........................................................ 24

2.    Plaintiffs Fail to Allege an Antitrust Injury ............................................. 26

3.    Plaintiffs Cannot State a Claim Under Section 1 of the Sherman
Act Because They Fail to Adequately Plead an Agreement or a
Relevant Market....................................................................... 29

a.    Plaintiffs Fail to Allege an Actionable Agreement
Involving the Insurance Defendants ............................................. 30

b.    Plaintiffs Fail to Adequately Plead a Relevant Market................. 31

4.    Plaintiffs' Failure to Allege the Elements of a Monopolization or
Attempted Monopolization Claim Dooms Their Claims Under
Section 2 of the Sherman Act .................................................. 33

C.    Plaintiffs' Claims Are Time-Barred.................................................... 36

VI.    CONCLUSION................................................................................. 39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham & Veneklasen Joint Venture v. Am. Quarter Horse Ass'n,*
    776 F.3d 321 (5th Cir. 2015) .................................................................35

*Al George, Inc. v. Envirotech Corp.,*
    939 F.2d 1271 (5th Cir. 1991) ...............................................................37

*Alcatel USA, Inc. v. DGI Techs., Inc.,*
    166 F.3d 771 (5th Cir. 1999) .................................................................34

*Allstate Ins. Co. v. Benhamou,*
    190 F. Supp. 3d 631 (S.D. Tex. 2016) .............................................18, 19

*Allstate Ins. Co. v. Plambeck,*
    802 F.3d 665 (5th Cir. 2015) .................................................................16

*In re Am. Express Co. S'holder Litig.,*
    39 F.3d 395 (2d Cir. 1994).....................................................................14

*Am. Surgical Assistants, Inc. v. Great W. Healthcare of Tex., Inc.,*
    Civ. A. No. H-09-0646H-09-0646, 2010 WL 565283
    (S.D. Tex. Feb. 17, 2010).......................................................................30

*Apani Sw., Inc. v. Coca-Cola Enters., Inc.,*
    300 F.3d 620 (5th Cir. 2002) ....................................................... 29, 32-34

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..................................................................................9

*Astoria Entm't, Inc. v. Edwards,*
    159 F. Supp. 2d 303 (E.D. La. 2001), *aff'd*, 57 F. App'x 211 (5th Cir. 2003).................38, 39

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)............................................................... *passim*

*Berry v. Indianapolis Life Ins. Co.,*
    608 F. Supp. 2d 785 (N.D. Tex. 2009) ..................................................24

*Blanchard & Co. v. Contursi,*
    2000 WL 574590 (E.D. La. May 11, 2000).........................................22

*Borskey v. Medtronics, Inc.,*
    No. CIV. A. 94-2302, 1995 WL 120098 (E.D. La. Mar. 15, 1995), *aff'd in part*, 105 F.3d 651 (5th Cir. 1996)...........................................................13

*Bowlby v. City of Aberdeen,*
    681 F.3d 215 (5th Cir. 2012) ........................................................8, 9

*Boyle v. United States,*
    556 U.S. 938 (2009)................................................................16

*Bradley v. Phillips Chem. Co.,*
    527 F. Supp. 2d 625 (S.D. Tex. 2007) ...............................................13

*Bridge v. Phoenix Bond & Indem. Co.,*
    553 U.S. 639 (2008)................................................................14

*Bristow Endeavor Healthcare, LLC v. Blue Cross,*
    Case No. 16-cv-0057, 2016 WL 3199520 (N.D. Okla. June 8, 2016), *aff'd sub*
    *nom. Bristow Endeavor Healthcare, LLC v. Blue Cross & Blue Shield Ass'n,*
    691 F. App'x. 515 (10th Cir. 2017) ................................................25

*Broad. Music, Inc. v. Columbia Broad. Sys.,*
    441 U.S. 1 (1979)..................................................................32

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.,*
    509 U.S. 209 (1993)................................................................24

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
    429 U.S. 477 (1977)..........................................................27, 28, 29

*C.E. Servs., Inc. v. Control Data Corp.,*
    759 F.2d 1241 (5th Cir. 1985) ...................................................33, 34

*Causey v. Sewell Cadillac–Chevrolet, Inc.,*
    394 F.3d 285 (5th Cir. 2004) .......................................................2

*CCPI v. Am. Premier, Inc.,*
    967 F. Supp. 813 (D. Del. 1997)....................................................24

*Cedric Kushner Promotions, Ltd. v. King,*
    533 U.S. 158 (2001)................................................................18

*Chadda v. Burcke,*
    180 F. App'x. 370 (3d Cir. 2006) ..................................................27

*Chaney v. Dreyfus Serv. Corp.,*
    595 F.3d 219 (5th Cir. 2010) ...................................................11, 23

*Chapman & Cole v. Itel Container Int'l B.V.,*
    865 F.2d 676 (5th Cir. 1989) ......................................................11

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000) ...................................................................................2

*Consol. Metal Products, Inc. v. Am. Petroleum Inst.*,
    846 F.2d 284 (5th Cir. 1988) ................................................................................28

*Copeland v. Axion Mortgage Grp. LLC*,
    No. 1:16-cv-00159, 2016 WL 4250431 (S.D. Miss. Aug. 11, 2016) ......................9

*Crowe v. Henry*,
    43 F.3d 198 (5th Cir. 1995) .......................................................................21, 22, 23

*Deborah Heart & Lung Ctr. v. Virtua Health, Inc.*,
    833 F.3d 399 (3d Cir. 2016).................................................................................28

*Del Castillo v. PMI Holdings N. Am. Inc.*,
    No. 4:14-CV-03435, 2016 WL 3745953 (S.D. Tex. July 13, 2016) .......................9

*Doctor's Hosp. of Jefferson, Inc. v. Se. Med. Alliance*,
    123 F.3d 301 (5th Cir. 1997) ................................................................................34

*Elliot v. Foufas*,
    867 F.2d 877 (5th Cir. 1989) .........................................................................11, 17

*Endsley v. City of Chi.*,
    230 F.3d 276 (7th Cir. 2000) ................................................................................35

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004).......................................................................18, 24, 34

*FMC Int'l A.G. v. ABB Lummus Glob., Inc.*,
    No. Civ.A H-04-3896, 2006 WL 213948 (S.D. Tex. Jan. 25, 2006)...........17, 19, 20

*Gaines v. Tex. Tech Univ.*,
    965 F. Supp. 886 (N.D. Tex. 1996) ......................................................................13

*Garrett v. Davis*,
    No. 2:13-CV-70, 2017 WL 1044969 (S.D. Tex. Mar. 20, 2017) ...........................5

*Gent v. CUNA Mut. Ins. Soc'y*,
    611 F.3d 79 (1st Cir. 2010).....................................................................................6

*Grogan v. Platt*,
    835 F.2d 844 (11th Cir. 1988) ..............................................................................13

*Gross v. Waywell*,
    628 F. Supp. 2d 475 (S.D.N.Y. 2009)...................................................................11

*H.J. Inc. v. Nw. Bell Tel. Co.*,
   492 U.S. 229 (1989)........................................................................................20

*Harkins Amusement Enters., Inc. v. Gen. Cinema Corp.*,
   850 F.2d 477 (9th Cir. 1988) ........................................................................35

*Hemi Grp., LLC v. City of New York*,
   559 U.S. 1 (2010)...........................................................................................14

*Home Health Licensing Specialists, Inc. v. Leavitt*,
   No. 3:07-CV-2150-B, 2008 WL 4830543 (N.D. Tex. Nov. 7, 2008)....................25

*Hughes v. Tobacco Inst., Inc.*,
   278 F.3d 417 (5th Cir. 2001) ........................................................................12

*In re Ins. Brokerage Antitrust Litig.*,
   618 F.3d 300 (3d Cir. 2010)..........................................................................18

*Jackson v. Nat'l Ass'n for Advancement of Colored People*,
   546 F. App'x 438 (5th Cir. 2013) ..............................................................12, 14

*Jayco Sys., Inc. v. Savin Bus. Machs. Corp.*,
   777 F.2d 306 (5th Cir. 1985) ........................................................................33

*Jones v. ALCOA, Inc.*,
   339 F.3d 359 (5th Cir. 2003) ........................................................................37

*Joseph v. Bach & Wasserman, L.L.C.*,
   487 F. App'x 173 (5th Cir. 2012) .................................................................37

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
   677 F.2d 1045 (5th Cir. 1982) ..................................................................37, 38

*In re Katrina Canal Breaches Litig.*,
   495 F.3d 191 (5th Cir. 2007) ..........................................................................2

*Khurana v. Innovative Health Care Sys., Inc.*,
   130 F.3d 143 (5th Cir. 1997) ........................................................................15

*L.G. Motorsports, Inc. v. NGMCO, Inc.*,
   No. 4:11CV112, 2012 WL 718603 (E.D. Tex. Mar. 6, 2012)................................35

*Magluta v. Samples*,
   256 F.3d 1282 (11th Cir. 2001) ......................................................................9

*Maloney Gaming Mgmt., L.L.C. v. St. Tammany Par.*,
   456 F. App'x 336 (5th Cir. 2011) ...................................................................2

vi

*Malvino v. Delluniversita*,
  840 F.3d 223 (5th Cir. 2016) ..........................................................................20

*Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*,
  751 F.3d 368 (5th Cir. 2014) ................................................................. *passim*

*McCormack v. Nat'l Collegiate Athletic Ass'n*,
  845 F.2d 1338 (5th Cir. 1988) ........................................................................26

*Mercy-Peninsula Ambulance, Inc. v. Cty. of San Mateo*,
  791 F.2d 755 (9th Cir. 1986) ..........................................................................35

*Montesano v. Seafirst Commercial Corp.*,
  818 F.2d 423 (5th Cir. 1987) ..........................................................................17

*N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*,
  781 F.3d 182 (5th Cir. 2015) ..........................................................................23

*Norris v. Hearst Trust*,
  500 F.3d 454 (5th Cir. 2007) ..........................................................................28

*Nw. Wholesale Stationers, Inc. v. Pacific Stationery and Printing Co.*,
  472 U.S. 284 (1985).........................................................................................32

*NYNEX Corp. v. Discon, Inc.*,
  525 U.S. 128 (1998).........................................................................................27

*Oceanic Expl. Co, v. Phillips Petroleum Co. ZOC*,
  352 F. App'x. 945 (5th Cir. 2009) ..................................................................15

*Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*,
  926 F. Supp. 2d 36 (D.D.C. 2013) ..................................................................35

*Plotkin v. IP Axess Inc.*,
  407 F.3d 690 (5th Cir. 2005) ............................................................................9

*Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*,
  517 F.2d 117 (5th Cir. 1975) ..........................................................................37

*Priester v. Long Beach Mortg. Co.*,
  No. 4:10-CV-641, 2011 WL 6116491 (E.D. Tex. Oct. 13, 2011) .........................39

*PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*,
  615 F.3d 412 (5th Cir. 2010) ..........................................................................27

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
  124 F.3d 430 (3d Cir. 1997)......................................................................32, 33

*Retractable Techs. Inc. v. Becton Dickinson & Co.,*
    842 F.3d 883 (5th Cir. 2016) .....................................................................23, 34, 36

*Reves v. Ernst & Young,*
    507 U.S. 170 (1993)..........................................................................................18

*Robinson v. Castle,*
    No. H-11-649, 2011 WL 3813292 (S.D. Tex. Aug. 29, 2011)..............................13

*Sahlein v. Red Oak Capital, Inc.,*
    No. 3:13-cv-00067, 2014 WL 3046477 (N.D. Miss. July 3, 2014).........................9

*Savory Pie Guy, LLC v. Comtec Indus., Ltd.,*
    No. 14 CV 7527, 2016 WL 7471340 (S.D.N.Y. Dec. 28, 2016)...........................27

*Schachar v. Am. Acad. of Ophthalmology, Inc.,*
    870 F.2d 397 (7th Cir. 1989) .................................................................27, 28, 29

*Sedima, S.P.R.L. v. Imrex Co., Inc.,*
    473 U.S. 479 (1985)..........................................................................................12

*Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter,*
    607 F.3d 1029 (5th Cir. 2010) ...........................................................................10

*Smugglers Notch Homeowners' Ass'n, Inc. v. Smugglers' Notch Mgmt. Co.,*
    414 Fed. App'x 372 (2d Cir. 2011)....................................................................33

*Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.,*
    376 F.3d 1065 (11th Cir. 2004) .........................................................................35

*Spectators' Commc'n Network Inc. v. Colonial Country Club,*
    253 F.3d 215 (5th Cir. 2001) .............................................................................32

*Spectrum Sports, Inc. v. McQuillan,*
    506 U.S. 447 (1993)..........................................................................................34

*St. Germain v. Howard,*
    556 F.3d 261 (5th Cir. 2009) .............................................................................11

*St. Paul Mercury Ins. Co. v. Williamson,*
    224 F.3d 425 (5th Cir. 2000) .............................................................................21

*Star Tobacco, Inc. v. Darilek,*
    298 F. Supp. 2d 436 (E.D. Tex. 2003)................................................................33

*Stearns Airport Equip. Co. v. FMC Corp.,*
    170 F.3d 518 (5th Cir. 1999) .......................................................................34, 36

*Surgical Care Ctr. of Hammond, L.C. v. Hosp. Serv. Dist. No. 1 of Tangipahoa Par.*, 309 F.3d 836 (5th Cir. 2002) ........................................................................34

*Tanaka v. Univ. of So. Cal.*,
  252 F.3d 1059 (9th Cir. 2001) .......................................................................33

*Taylor Publ'g Co. v. Jostens, Inc.*,
  216 F.3d 465 (5th Cir. 2000) ........................................................................36

*Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*,
  975 F.2d 1134 (5th Cir. 1992) .................................................................10, 19

*Tex. Carpenters Health Ben. Fund v. Philip Morris, Inc.*,
  21 F. Supp. 2d 664 (E.D. Tex. 1998), *aff'd*, 199 F.3d 788 (5th Cir. 2000) .......................12, 15

*Turner v. Union Planters Bank of S. Miss.*,
  974 F. Supp. 890 (S.D. Miss. 1997)................................................................21

*U.S. v. Grinnell Corp.*,
  384 U.S. 563 (1966)........................................................................................33

*United States v. Hutchinson*,
  573 F.3d 1011 (10th Cir. 2009) ....................................................................16

*Vanderbilt Mortg. & Fin., Inc. v. Flores*,
  735 F. Supp. 2d 679 (S.D. Tex. 2010) ..........................................................22

*Varela v. Gonzales*,
  773 F.3d 704 (5th Cir. 2014) ........................................................................14

*Viazis v. Am. Ass'n of Orthodontists*,
  314 F.3d 758 (5th Cir. 2002) ........................................................................28

*Walsh v. Am's Tele-Network Corp.*,
  195 F. Supp. 2d 840 (E.D. Tex. 2002).............................................................20

*Williams v. WMX Techs., Inc.*,
  112 F.3d 175 (5th Cir. 1997) ........................................................................10

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
  401 U.S. 321 (1971)........................................................................................37

**Statutes**

15 U.S.C. § 1 ................................................................................................ *passim*

15 U.S.C. § 2 ................................................................................................ *passim*

18 U.S.C. § 1961 ...............................................................................................19

18 U.S.C. § 1962 ............................................................................................... *passim*

18 U.S.C. § 1964 ...............................................................................................11, 12

**Rules**

Fed. R. Civ. P. 8(a)(2) .............................................................................................9

Fed. R. Civ. P. 9(b) ...............................................................................10, 19, 20

Fed. R. Civ. P. 12(b)(6)..............................................................................8, 9, 37

**Other Authorities**

INFECTIOUS DISEASES SOCIETY OF AMERICA, *The Clinical Assessment, Treatment,
    and Prevention of Lyme Disease, Human Granulocytic Anaplasmosis, and
    Babesiosis:  Clinical Practice Guidelines*, CLINICAL INFECTIOUS DISEASES
    43:1089-1134 (2006) (attached as Exhibit A) ...................................................... 3-5

U.S. CENTERS FOR DISEASE CONTROL & PREVENTION, *Post-Treatment Lyme
    Disease Syndrome* (Dec. 1, 2017) (attached as Exhibit B).........................................5

U.S. CENTERS FOR DISEASE CONTROL & PREVENTION, *Serious Bacterial Infections
    Acquired During Treatment of Patients Given a Diagnosis of Chronic Lyme
    Disease – United States* (June 16, 2017) (attached as Exhibit C)..............................5

I.    **INTRODUCTION**

Plaintiffs' complaint rests on a decade-old conspiracy theory that has become popular among those who believe that Lyme disease is a leading cause of chronic pain that requires months or years of antibiotic treatments to cure. Plaintiffs' theory ignores the possibility that the mainstream medical community has concluded, through scientific study, that the available evidence simply does not support long-term antibiotic use to treat Lyme disease. Instead, Plaintiffs hypothesize a far-flung conspiracy involving the Infectious Diseases Society of America ("IDSA"), its Lyme disease panelists and other medical researchers, large health insurers, third-party claims administrators, state medical licensing boards, and, presumably, the U.S. Centers for Disease Control and Prevention ("CDC").

Federal courts, however, are not testing grounds for implausible conspiracy theories. To proceed past the pleadings stage, the Supreme Court of the United States has emphasized that conspiracy claims require allegations of *facts*—not vague conclusions—sufficient to "nudge[] claims along the line from the conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiffs here have failed to meet that standard. Their complaint does not explain how the alleged conspiracy works; who among the Defendants committed which wrongful acts; how those acts related to their supposed conspiracy, as opposed to just normal business; or how any particular act by any particular Defendant was the proximate cause of harm to any particular Plaintiff. Plaintiffs do not even allege whether they are members of health benefits plans insured or administered by any of the Insurance Defendants, or whether they ever asked any of the Insurance Defendants to cover claims related to long-term antibiotic treatment of Lyme disease.

Even from the face of the complaint, it is readily apparent that Plaintiffs' conspiracy theory does not fit the causes of action they assert. The Racketeering Influenced and Corrupt

Organizations ("RICO") Act, 18 U.S.C. § 1962(a)-(d), and the Sherman Antitrust Act, 15 U.S.C. §§ 1-2, address injuries caused by racketeering and conduct that harms competition. Here, Plaintiffs allege only personal injury damages, which are not cognizable harms under either statute. Plaintiffs also fail to allege specific facts that are sufficient to plausibly establish the existence of, or the Insurance Defendants' involvement in, any racketeering enterprise or anticompetitive scheme. Indeed, nowhere does the complaint explain what exactly the Insurance Defendants are alleged to have done that may be unlawful or the proximate cause of any damage to any particular Plaintiff. Moreover, the "conspiracy" Plaintiffs posit is founded on events that occurred more than a decade ago, and Plaintiffs' claims are plainly time-barred.

At their core, Plaintiffs' claims boil down to a disagreement with the mainstream medical community over the nature of Lyme disease and the effectiveness and safety of certain treatments—allegations that are the proper subject of continuing medical studies and scientific debate, not a federal RICO or antitrust action. As described in more detail below, Plaintiffs' complaint falls far short of stating plausible claims under the RICO and Sherman Acts.

## II.   BACKGROUND

Plaintiffs assert that IDSA's 2006 Clinical Practice Guidelines for the assessment, treatment, and prevention of Lyme disease (the "Guidelines," attached as Exhibit A[2]) (1) are false insofar as they caution against long-term antibiotic treatment; (2) are the product of a vast

---

[2] "[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (internal quotation omitted); *see also Maloney Gaming Mgmt., L.L.C. v. St. Tammany Par.*, 456 F. App'x 336, 340–41 (5th Cir. 2011); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). Here, the complaint refers to the Guidelines more than 100 times, and Plaintiffs frame the Guidelines as the means by which Defendants carry out their purported conspiracy.

conspiracy involving medical experts and university researchers, state medical boards, health insurers, and others; and (3) make it harder for Plaintiffs to get the long-term antibiotic treatments they want. Although none of the grounds for dismissal set forth in this Motion requires the Court to resolve any debates regarding the proper diagnosis and treatment of Lyme disease, some background on the disease and the Guidelines' recommendations for treatment provides useful context.

A.   **The IDSA Guidelines for the Clinical Assessment, Treatment, and Prevention of Lyme Disease**

Lyme disease is the most common tick-borne infection in North America. (Compl. ¶ 44; Guidelines at 1089.)  Plaintiffs' allegations focus on IDSA's 2006 Guidelines, which cover the management of patients with Lyme disease, among other diseases. (Guidelines at 1089.)[3] The Guidelines are not inflexible mandates, and Plaintiffs acknowledge that the Guidelines "are not rules or requirements[.]" (Compl. ¶ 74.) IDSA expressly "considers adherence to these guidelines to be voluntary, with the ultimate determination to be made by the physician in the light of each patient's individual circumstances." (Guidelines at 1089.) The Guidelines merely synthesize and assess the universe of available medical information, and IDSA makes them available for free to treating physicians, patients, insurers, and the rest of the general public.

1.   **Lyme Disease and its Treatment**

Lyme disease is transmitted by bites from ticks infected with the *Borrelia burgdorferi* bacteria. (Guidelines at 1089.) In most cases of Lyme disease, a trademark symptom appears: an oval or bullseye-pattern lesion at the site where the tick attached, a pattern so distinctive that

---

[3] The 2006 Guidelines are a revised version of the original IDSA Lyme disease guidelines, which were published in 2000. (Guidelines at 1089.)

doctors who see it may make a clinical diagnosis without further testing. (*Id.* at 1099, 1101-1102.) In other cases, laboratory testing may be required to make a diagnosis. (*Id.* at 1101.)

Once a doctor confirms the presence of Lyme disease, the Guidelines recommend a 14- to 28-day course of antibiotics. (Guidelines at 1091-1093.) There is "no convincing biologic evidence" that Lyme-causing bacteria survive this treatment regimen and it is "highly implausible" that they would, given their biology and the nature of the infection. (*Id.* at 1094, 1117-1118.) But just in case, the Guidelines recommend consideration of re-treatment with another 28-day course of antibiotics if joint swelling persists.[4] (*Id.* at 1093, 1113.)

For patients with continuing symptoms beyond those initial 28-day courses of antibiotics, such as fatigue or pain, blind studies show no significant difference in outcomes between Lyme disease patients who continue taking antibiotics and those who receive a placebo. (Guidelines at 1119-1120.) People may feel some relief while taking certain classes of antibiotics due to their anti-inflammatory effects (*id.* at 1117), but there are other anti-inflammatory medications available that do not carry "the frequency of serious adverse events" attendant with long-term antibiotic use. (*Id.* at 1120.) Therefore, the Guidelines conclude that "[a]ntibiotic therapy has not proven to be useful and is not recommended for patients with chronic subjective symptoms after administration of recommended treatment regimens for Lyme disease." (*Id.* at 1121.) The Guidelines advise that those chronic subjective symptoms—such as joint pain and fatigue—may be attributable to neurological damage from the original infection or to many conditions more common than Lyme disease, such as arthritis and fibromyalgia. (*Id.* at 1115.)

---

[4] The Guidelines' approach is consistent with longstanding practice. Plaintiffs allege that the "Insurance Defendants" had adopted a 28-day limit on intravenous antibiotic treatment with the "help" of IDSA panelists "[b]y August of 1992[.]"  (Compl. ¶ 50.)

## 2.    Challenges to the Guidelines' Recommendations

In response to dissatisfaction with the treatment approach recommended in the Guidelines, some medical providers have opted to recommend a host of purported (yet medically unproven) remedies ranging from nutritional supplements to hyperbaric oxygen to "fever therapy" (a form of treatment that sometimes involves subjecting patients to malaria) and long-term antibiotic regimens, sometimes with "pulsed-dosing (i.e., dosing on some days but not others)." (Guidelines at 1094, 1107.)  Plaintiffs allege that some doctors believe "long-term antibiotic treatment for many months" is appropriate for certain Lyme patients. (Compl. ¶ 44.) Plaintiffs refer to such patients as suffering from "chronic Lyme disease[.]" (*Id.* ¶ 45.)

Addressing chronic Lyme disease, the Guidelines observe that "[t]here is no convincing biologic evidence for the existence of symptomatic chronic [Lyme]" after recommended antibiotic treatment. (Guidelines at 1094.) After analyzing the history and evidence of chronic Lyme and related symptoms, the Guidelines conclude that "[a]ntibiotic therapy has not proven to be useful and is not recommended for patients with chronic . . . subjective symptoms after administration of recommended treatment regimens for Lyme disease." (*Id.* at 1121.) The CDC has separately reached the same conclusion.[5]

---

[5] In its guidance on "chronic Lyme disease," the CDC notes that "[s]tudies funded by the National Institutes of Health have **not** shown that people who received prolonged courses of antibiotics do better in the long run than people treated with placebo."  U.S. CENTERS FOR DISEASE CONTROL & PREVENTION, *Post-Treatment Lyme Disease Syndrome* (Dec. 1, 2017) (emphasis in original) (attached as Exhibit B). Just last year, the CDC cautioned patients and medical professionals to "be aware that treatments for chronic Lyme disease lack proof of effectiveness and can result in serious complications," as well as "missed opportunities to diagnose and treat the actual underlying cause of the patient's symptoms." U.S. CENTERS FOR DISEASE CONTROL & PREVENTION, *Serious Bacterial Infections Acquired During Treatment of Patients Given a Diagnosis of Chronic Lyme Disease – United States* (June 16, 2017) (attached as Exhibit C). "Courts are permitted to take judicial notice of information appearing on government websites, if the information is not subject to reasonable dispute," and CDC reports are commonly admitted on that basis. *Garrett v. Davis*, No. 2:13-CV-70, 2017 WL 1044969, at

B.      **Plaintiffs' Federal RICO and Antitrust Claims**

Plaintiffs allege that the Guidelines for treatment of Lyme disease are a "scheme" by the mainstream medical community "to prevent patients with chronic Lyme disease from receiving proper treatment." (*See, e.g.*, Compl. ¶ 100.) According to Plaintiffs, Lyme practitioners have "known for a long time" that long-term antibiotic treatment is effective, regardless of what the leading studies say. (*Id.* ¶ 45.) If that is true, they assert, then health officials' cautionary words about the inefficacy and risks of long-term antibiotic therapy must be a ruse to serve their real motive: to reduce insurers' costs to treat a disease that affects less than one-tenth of one percent of Americans per year. (*Id.* ¶¶ 44, 75-76.) And everyone is in on the plot, according to Plaintiffs—from the university doctors who served on the IDSA panels, to the medical researchers who publish Lyme studies, to the state medical officials who scrutinize doctors for prescribing unproven and harmful treatments. (*Id.* ¶¶ 60-61, 65, 85.)

Plaintiffs' 178-paragraph complaint is replete with these kinds of conspiracy theories, but it is thin on allegations of facts to support this purportedly far-flung scheme—particularly with regard to the "Insurance Defendants."[6] In "shotgun pleading" fashion, Plaintiffs broadly assert that "all" Insurance Defendants harmed them through their participation in this purported "scheme," without alleging:

- That any Insurance Defendant actually insured any Plaintiff;
- That any Insurance Defendant denied coverage for treatment sought by any Plaintiff;
- That any Insurance Defendant ever communicated with any IDSA panelist about the content of the Guidelines as they were being drafted;

---

*2 (S.D. Tex. Mar. 20, 2017). *See also, e.g.*, *Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 84 (1st Cir. 2010) (taking judicial notice of material on CDC website regarding Lyme disease).

[6] As noted *supra* n.1, this Memorandum follows the complaint's naming convention in referring to the movants as the "Insurance Defendants," even though that term does not accurately describe certain parties included within it.

- That any particular Insurance Defendant retained any particular IDSA panelist for any particular work or paid any panelist for anything other than reviewing specific policy claims;
- That any particular Insurance Defendant communicated with any other Insurance Defendant at any time about these matters, let alone how all of them jointly coordinated this supposed conspiracy amongst themselves.

Plaintiffs try to shoe-horn their vague conspiracy allegations into claims for multiple violations of two federal statutes, the RICO Act and the Sherman Act. In doing so, Plaintiffs do little more than parrot the elements of the statutes and assert that they were violated.

With regard to their RICO Act allegations, Plaintiffs assert that the Insurance Defendants' individual decisions on claims for long-term antibiotic treatments are not simply instances of insurers and third-party administrators choosing to follow the prevailing medical guidance, but rather the outcome of some kind of "enterprise" for the purpose of preventing the proper treatment and testing of potential Lyme disease patients. (Compl. ¶ 143.) The complaint alleges that the Insurance Defendants carried out their enterprise through wire and mail fraud, defined by Plaintiffs as any communications inconsistent with Plaintiffs' views on Lyme disease (*id.* ¶ 99(a)) or any instance where an Insurance Defendant hired an IDSA panelist to review a specific policy claim (*id.* ¶ 99(b)). These allegations of fraud appear in a laundry-list format; the complaint is silent as to the date, time, place, and circumstance of any predicate mailing or wire. As for injury, Plaintiffs assert that they were harmed by that "enterprise" when they were forced to pay for long-term antibiotic treatments themselves (*id.* ¶ 103)—even though the complaint does not identify whether any Plaintiff was even covered by any of the Insurance Defendants, let alone whether Plaintiffs' doctors made insurance claims where coverage was denied for reasons that implicate supposed adherence to the Guidelines.

With regard to their Sherman Act allegations, Plaintiffs assert that the Insurance Defendants "consciously committed to a common agreement" to either "monopolize" or

7

"restrain trade in" the "Lyme treatment market." (*Id.* ¶¶ 115, 130.) It is unclear how Plaintiffs

define the "Lyme treatment market," and there is no allegation that any Insurance Defendant

even participates in a "Lyme treatment market," let alone possesses monopoly power over it.

(Insurance Defendants are insurers and/or third-party administrators on behalf of employer-

sponsored health plans, not treatment providers.) Nor do Plaintiffs point to any actual agreement

that any of the Insurance Defendants entered into with each other. Instead, they allege that the

Insurance Defendants' parallel conduct in using the Guidelines to inform individual coverage

decisions is sufficient to support a finding that they must have reached some accord amongst

themselves for the purpose of restraining trade. (*Id.* ¶ 119.)

## III.    STATEMENT OF ISSUES PURSUANT TO LOCAL RULE CV-7(A)(1)

Whether Plaintiffs' complaint should be dismissed under Rule 12(b)(6) for failure to state

a claim upon which relief can be granted because:

1.    Plaintiffs have failed to allege facts sufficient to plead a plausible cause of

action against the Insurance Defendants under the RICO Act;

2.    Plaintiffs have failed to allege facts sufficient to plead a plausible cause of

action against the Insurance Defendants under the Sherman Act; and

3.    Plaintiffs' purported claims under both the RICO Act and the Sherman

Act are barred by the applicable four-year statutes of limitations.

## IV.    LEGAL STANDARDS GOVERNING CONCLUSORY ALLEGATIONS, "QUINTESSENTIAL SHOTGUN PLEADINGS," AND ALLEGATIONS OF FRAUD

To survive a motion to dismiss, a complaint must plead *facts*—not merely "labels and

conclusions"—that on their face plausibly suggest entitlement to relief. *Twombly*, 550 U.S. at

555. "A claim has facial plausibility when the pleaded factual content allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Bowlby v. City*

8

*of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009)). A complaint fails to meet this standard where it offers only labels and conclusions, or a

formulaic recitation of the elements of a claim. *Bowlby*, 681 F.3d at 291. In evaluating a motion

to dismiss, the Court should "not accept as true conclusory allegations, unwarranted factual

inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

For this reason, a complaint that merely lumps defendants together and fails to attribute

conduct to each individual defendant cannot give rise to a plausible inference of liability

sufficient to withstand a motion to dismiss. *See Copeland v. Axion Mortgage Grp. LLC*, No.

1:16-cv-00159, 2016 WL 4250431, at *4 (S.D. Miss. Aug. 11, 2016) (complaints that lump

together multiple defendants and fail to distinguish between the relevant conduct of any of them

fail the *Twombly* standard and "are subject to dismissal pursuant to Federal Rule of Civil

Procedure 12(b)(6)"); *Del Castillo v. PMI Holdings N. Am. Inc.*, No. 4:14-CV-03435, 2016 WL

3745953, at *13 (S.D. Tex. July 13, 2016) ("[L]umping together multiple defendants without

identifying who is responsible for which acts does not satisfy the requirements of Rules 8(a)(2)

and 12(b)(6)."); *Sahlein v. Red Oak Capital, Inc.*, No. 3:13-cv-00067, 2014 WL 3046477, at *4

(N.D. Miss. July 3, 2014) (dismissing "a quintessential shotgun pleading" that failed to

differentiate between defendants); *see also Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir.

2001) (remanding complaint that "names fourteen defendants, and all defendants are charged in

each count . . . making no distinction among the fourteen defendants charged, though geographic

and temporal realities make plain that all of the defendants could not have participated in every

act complained of").

Moreover, to the extent that a plaintiff's claims are premised on allegations of fraud—

regardless of whether fraud is an express element of the claim—a plaintiff must satisfy the

heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b). *See Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). Rule 9(b) requires a party to state with particularity the circumstances constituting the fraud. *See* Fed. R. Civ. P. 9(b). "Put simply, Rule 9(b) requires the who, what, when, where, and how to be laid out." *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) (citation omitted); *see also Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992).

## V.    ARGUMENT

Neither the RICO Act nor the Sherman Act licenses plaintiffs to explore vague conspiracy theories. Each statute is subject to certain threshold pleading requirements, all of which serve to prevent the very type of complaint Plaintiffs are bringing here: one filled with conclusory accusations of a generalized conspiracy, without any plausible allegation of an agreement among the supposed conspirators or any facts plausibly suggesting that Defendants engaged in competition-reducing conduct or racketeering.

Plaintiffs' complaint falls short of the requirements for RICO and Sherman Act claims in numerous respects. Among other deficiencies with their RICO Act claims, Plaintiffs allege only personal injuries, which are not cognizable under the statute; fail to explain how those injuries were proximately caused by any racketeering activity; fail to make allegations sufficient to establish a RICO enterprise; fail to explain how the Insurance Defendants purportedly conducted the affairs of the supposed enterprise; and fail to plead any predicate acts with particularity, or explain how they are connected to that purported criminal enterprise. Among other deficiencies with their Sherman Act claims, Plaintiffs fail to plead any facts suggestive of an agreement among the Insurance Defendants to act in concert; fail to allege any anticompetitive conduct by any Defendants; and fail to explain what markets are purportedly being monopolized by whom.

10

In addition, Plaintiffs' complaint is also facially barred under the applicable four-year statute of limitations because Plaintiffs allege no injury-causing acts within the last four years—or even within the last decade.

## A.      Plaintiffs Fail to State Plausible RICO Claims (Counts I-IV)

Although the Fifth Circuit has long warned that the "proliferation of civil RICO claims and the potential for frivolous suits" places a "greater responsibility . . . on the bar to inquire into the factual and legal bases of potential [RICO] claims," *Chapman & Cole v. Itel Container Int'l B.V.*, 865 F.2d 676, 685 (5th Cir. 1989), Plaintiffs' complaint eschews that responsibility in favor of generalized and conclusory allegations that mimic the RICO Act's language. Such generic allegations are insufficient to state RICO claims. *See Elliot v. Foufas*, 867 F.2d 877, 880-81 (5th Cir. 1989) (dismissing complaint that "substantially rescript[ed] the language of the statute in conclusory form"). Plaintiffs here, "as [have] so many other claimants enticed by the charm of a RICO verdict, chose to try [ ] to fit insufficient factual allegations into RICO's complex pleading standards." *Gross v. Waywell*, 628 F. Supp. 2d 475, 479 (S.D.N.Y. 2009).

Though "complex," RICO's pleading standards are well-defined. To plausibly state a RICO claim, Plaintiffs must establish standing, *see* 18 U.S.C. § 1964, as well as adequately plead a substantive violation of one of RICO's four provisions, *see* 18 U.S.C. § 1962(a)-(d). RICO's first three statutory provisions are similar: each involves "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009); *see* 18 U.S.C. § 1962(a)-(c). However, each of RICO's first three provisions differs in the relationship between the defendants and the racketeering enterprise. The final provision concerns conspiracies to "to commit a substantive RICO offense." *Chaney v. Dreyfus Serv. Corp.*, 595

11

F.3d 219, 239 (5th Cir. 2010). For the reasons detailed below, the complaint fails to satisfy any

of these standards.

### 1.     Plaintiffs Lack Standing to Bring RICO Claims

As a threshold matter, RICO requires that Plaintiffs first allege that they have "been

injured in [their] business or property by the conduct constituting the [RICO] violation." *Sedima,*

*S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985); *see also* 18 U.S.C. § 1964. Plaintiffs must

adequately plead both "injury and causation." *Jackson v. Nat'l Ass'n for Advancement of*

*Colored People*, 546 F. App'x 438, 442 (5th Cir. 2013) (citation omitted). Here, Plaintiffs'

allegations support neither of these fundamental elements of RICO standing.

### a.     Plaintiffs Allege Only Personal Injuries, Which are Improper Bases for RICO Claims

For each RICO claim, the complaint alleges the following harm:

> [Plaintiffs] were forced to pay for their treatments, were forced to pay all expenses
> associated with treating their Lyme disease, were forced to travel long distances for
> treatment, were forced to try to find doctors who would treat them, and were unable to
> work or earn money because of their debilitating illness. Further, because Plaintiffs were
> not timely diagnosed or treated, they now suffer long-term complications and are forced
> to continue to pay future medical costs for treatment and out-of-pocket expenses to
> receive this treatment.

(Compl. ¶¶ 147, 152, 158, 162.) All of these alleged harms are either personal injuries (the

complications of Lyme disease) or the economic consequences of those personal injuries, namely

medical expenses and lost wages.

A RICO claim cannot redress these alleged injuries. It is well-established that RICO does

not allow recovery for "personal injuries." *See, e.g.*, *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417,

420 (5th Cir. 2001); *Tex. Carpenters Health Ben. Fund v. Philip Morris, Inc.*, 21 F. Supp. 2d

664, 671 (E.D. Tex. 1998), *aff'd*, 199 F.3d 788 (5th Cir. 2000). Moreover, the economic

consequences of personal injuries also "do not qualify as injury to business or property" for

12

purposes of RICO standing. *Bradley v. Phillips Chem. Co.*, 527 F. Supp. 2d 625, 646-47 (S.D. Tex. 2007) (internal quotation omitted); *see also Gaines v. Tex. Tech Univ.*, 965 F. Supp. 886, 890 (N.D. Tex. 1996) (holding that the impairment of future earning capacity as a result of a personal injury is not recoverable under RICO); *Borskey v. Medtronics, Inc.*, No. CIV. A. 94-2302, 1995 WL 120098, at *3 (E.D. La. Mar. 15, 1995), *aff'd in part*, 105 F.3d 651 (5th Cir. 1996) (holding that plaintiffs' medical expenses were so closely tied to their alleged personal injuries that such expenses could not be covered under RICO).

Here, Plaintiffs merely allege that they were harmed as a result of their personal injuries; medical expenses and lost wages due to an inability to work are not distinct from the root harm. *See Robinson v. Castle*, No. H-11-649, 2011 WL 3813292, at *6 (S.D. Tex. Aug. 29, 2011) (plaintiffs lacked RICO standing based on alleged injuries including physical injuries and resulting medical expenses); *Grogan v. Platt*, 835 F.2d 844, 847 (11th Cir. 1988) ("[T]he ordinary meaning of the phrase 'injured in his business or property' excludes personal injuries, including the pecuniary losses therefrom."). For this reason, Plaintiffs have failed to articulate any cognizable injury suffered as a result of Defendants' alleged acts of racketeering activity, and thus have no standing to assert RICO claims.

> **b.** **Plaintiffs Fail to Allege Facts Establishing That Their Injuries Were Caused by Any Racketeering Activity**

The complaint also fails to offer any plausible explanation of how Plaintiffs' alleged injuries were proximately caused by any alleged racketeering activity by the Insurance Defendants. Indeed, the complaint fails to identify any particular act of mail or wire fraud that any particular Defendant committed (Compl. ¶ 99), much less explain how any such acts were the proximate cause of Plaintiffs' injuries.

Plaintiffs' inability to do so dooms their RICO claims. Each RICO provision requires Plaintiffs to establish that the racketeering violation was "not only a 'but for' cause of [plaintiff's] injury, but the proximate cause as well." *Jackson v. NAACP*, 546 F. App'x 438, 442 (5th Cir. 2013); *see also Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010); *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 656-60 (2008); *Varela v. Gonzales*, 773 F.3d 704, 707-08 (5th Cir. 2014). Though Plaintiffs pay lip service to this requirement by generically claiming that their injuries were the "direct and proximate result" of the alleged predicate acts (*see, e.g.,* Compl. ¶¶ 147, 152, 158, 162), conclusory allegations of injury "need not be accepted as true for the purposes of ruling on a motion to dismiss." *In re Am. Express Co. S'holder Litig.*, 39 F.3d 395, 400 n.3 (2d Cir. 1994) (rejecting RICO claim where the complaint "cursorily assert[ed]" that the alleged misconduct proximately caused plaintiff's injuries).

This deficiency cannot be fixed through more artful pleading. To follow the chain of causation, Plaintiffs would have to allege that "but for" alleged acts of wire and mail fraud in the form of consulting fees paid to IDSA experts to review specific coverage determinations (that are not alleged to be Plaintiffs') (Compl. ¶ 99), all of the following would have happened:

> (1) IDSA panelists would have ignored medical studies and recommended long-term antibiotic treatments in the non-binding Guidelines;
>
> (2) Plaintiffs' own doctors would have recommended long-term antibiotic treatments for them, even though other medical authorities do not;
>
> (3) Plaintiffs' health plans, which they never identify, would have provided coverage for long-term antibiotic treatments; and
>
> (4) Long-term antibiotic treatments would have been effective in resolving Plaintiffs' symptoms.

Even if Plaintiffs had pleaded this chain of causation, it is far too attenuated on its face to plausibly allege "but for" causation, let alone the more demanding requirement of proximate causation. The Guidelines are merely a non-binding summary of prevailing research and studies.

14

With or without the Guidelines, the extensive underlying medical evidence is the same; health plans and doctors (as well as other authorities, such as the CDC) are free to independently view that underlying evidence as a basis for whether to prescribe or cover long-term antibiotic treatments for Lyme disease. These and other obvious independent factors that may influence Plaintiffs' healthcare treatment and healthcare costs require too many logical leaps to link Defendants' alleged acts of mail and wire fraud to Plaintiffs' alleged injuries. *See, e.g.*, *Oceanic Expl. Co, v. Phillips Petroleum Co. ZOC*, 352 F. App'x. 945, 951 (5th Cir. 2009) (affirming dismissal of RICO claims where causation was "overly attenuated" because it was merely hypothetical and there were potential intervening factors); *Tex. Carpenters Health Ben. Fund v. Philip Morris, Inc.*, 21 F. Supp. 2d 664, 674 (E.D. Tex. 1998) ("[T]he presence of intervening factors breaks the causal chain between predicate acts and injury, thereby precluding a proximate cause finding.") (citing *Khurana v. Innovative Health Care Sys., Inc.*, 130 F.3d 143, 148 (5th Cir. 1997)).

### 2.    Plaintiffs' Allegations Are Insufficient to State a Viable RICO Claim

Even if Plaintiffs had standing to bring a RICO claim, they have failed to adequately plead one. The first four counts of Plaintiffs' complaint each allege a violation of a different sub-section of 18 U.S.C. § 1962, the RICO section defining "[p]rohibited activities." Not one of those prohibited activities fits the allegations of Plaintiffs' complaint, and in each case there are one or more fundamental elements of the offenses that Plaintiffs' complaint conveniently ignores. Indeed, as set forth below, Plaintiffs' conclusory allegations fail to state a violation of any subsection of RICO.

### a.    Plaintiffs Fail to Plead a Viable Section 1962(c) Claim

Section 1962(c) prohibits parties from "conduct[ing] or participat[ing], directly or indirectly, in the conduct of [an] enterprise's affairs through a pattern of racketeering activity."

15

Thus, plaintiffs alleging a violation of Section 1962(c) must show:  (1) the existence of a RICO enterprise; (2) the defendants' conduct of (or participation in) the enterprise; and (3) defendants' participation "through a pattern of racketeering activity."  Plaintiffs have failed to adequately plead any of these required elements.

(i)        <strong>Plaintiffs Fail to Plead a RICO Enterprise</strong>

Plaintiffs allege an association-in-fact enterprise comprised of IDSA, the IDSA panelists, and the Insurance Defendants. (Compl. ¶ 98.) An association-in-fact enterprise is a "group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle v. United States*, 556 U.S. 938, 946 (2009) (citation omitted). The group "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.*; *see also Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 673 (5th Cir. 2015). While this definition does not depend on fixed roles or a hierarchical structure, Plaintiffs nevertheless must plead the existence of a "continuing unit" that shares a "common purpose." *Boyle*, 556 U.S. at 948. Thus, Plaintiffs must plead facts sufficient to show that the alleged enterprise—each and every Defendant— shared the *common* purpose underlying the alleged RICO scheme: "to prevent treatment of chronic Lyme disease and to prevent the proper testing of potential Lyme disease patients." (Compl. ¶ 99.) *See United States v. Hutchinson,* 573 F.3d 1011, 1021 (10th Cir. 2009).

While Plaintiffs' complaint nakedly asserts that all Defendants participated in a "scheme to prevent treatment of chronic Lyme disease," Plaintiffs plead no facts to support the conclusion that any of the Defendants furthered that common purpose in a common enterprise. The complaint includes no facts suggesting any coordination, communication, or common plan among the various Insurance Defendants (or any other Defendant), nor does it allege that the

16

Insurance Defendants had any sort of relationship with respect to denying coverage for medical claims seeking reimbursement for the treatment of Lyme disease. Indeed, the complaint is devoid of any allegation that these wholly-independent companies, IDSA, and the IDSA panelists joined together for *any* common purpose.

At most, Plaintiffs have pleaded that each of the Insurance Defendants did the same things for the same reasons in generally following the prevailing medical guidance on Lyme disease. But the fact that some companies happen to make the same coverage decisions is not sufficient to create an inference that they acted in concert, a fact magnified by the complicated relationships between healthcare providers and payors, including employers. To find otherwise would flip RICO on its head, turning all independent—but incidentally related—actors into RICO enterprises. Courts in this Circuit have routinely held that RICO is not to be so broadly construed, and that Plaintiffs cannot state viable claims without specifically alleging facts supporting the plausible existence of a RICO enterprise. *See, e.g.*, *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989) ("In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations, which establish the enterprise.") (quoting *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 427 (5th Cir. 1987)); *FMC Int'l A.G. v. ABB Lummus Glob., Inc.*, No. Civ.A H-04-3896, 2006 WL 213948, at *9 (S.D. Tex. Jan. 25, 2006) ("Allegations regarding the existence of a RICO enterprise must be fact-specific; conclusory allegations are insufficient."). Plaintiffs' failure to allege any facts establishing coordination between or among the individual Insurance Defendants is fatal to their claim.

> (ii)     **Plaintiffs Fail to Adequately Plead that the Insurance Defendants Conducted the Affairs of the Alleged RICO Enterprise**

Even if Plaintiffs had alleged some kind of enterprise, they fail to plead any facts demonstrating that the Insurance Defendants conducted or participated in the enterprise's

"affairs." 18 U.S.C. § 1962(c). RICO liability "depends on showing that the defendants

conducted or participated in the conduct of the 'enterprise's affairs,' not just their *own* affairs."

*Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001) (quoting *Reves v. Ernst &

Young*, 507 U.S. 170, 185 (1993)) (emphasis in original). This distinction is critical: RICO

plaintiffs must allege that each defendant engaged in the operation or management of the

*enterprise itself* through the pattern of racketeering activity. Although defendants do not have to

be primarily responsible for the management of the enterprise, "the Fifth Circuit has made clear

that a defendant must have some *supervisory involvement* in an enterprise in order to satisfy §

1962(c)'s conduct or participate requirement." *Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d

631, 655 (S.D. Tex. 2016) (emphasis added).

Once again, Plaintiffs pay lip service to that requirement, vaguely alleging that the

Insurance Defendants "directly and indirectly conducted and participated in the conduct of the

enterprise's affairs." (Compl. ¶ 146.) But they allege no facts suggesting that any of the

Insurance Defendants assumed a "supervisory role" in the "operation or management" of a joint

criminal enterprise. Nor are there any allegations that the Insurance Defendants asserted control

over the enterprise *by virtue of* any alleged racketeering activity. *See In re Ins. Brokerage

Antitrust Litig.*, 618 F.3d 300, 371 (3d Cir. 2010) ("Simply pleading that a defendant participated

in the operation or management of an enterprise . . . is not enough to make out a violation of §

1962(c). The defendant must have done so *through a pattern of racketeering activity*.")

(emphasis added); *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 175 (2d Cir.

2004) (affirming dismissal of RICO claim due to plaintiff's "fail[ure] to allege a nexus between

the . . . Enterprise and the RICO predicates"). The only activity Plaintiffs allege—that the

Insurance Defendants occasionally employed Lyme disease experts to assist in reviewing claims

18

(Compl. ¶¶ 54-55)—is a legitimate business function of an insurer or third-party administrator, and thus fails to give rise to a plausible inference that it was instead used for the management of a RICO enterprise. *See Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d 631, 656 (S.D. Tex. 2016) ("[N]either the provision of goods or services, the mere existence of a business relationship, simple contributions with knowledge of the scheme, nor the receipt of funds or materials from the scheme is sufficient to subject one to RICO liability.").

**(iii)     Plaintiffs Fail to Adequately Plead a Pattern of Racketeering Activity**

Finally, Plaintiffs' Section 1962(c) claim fails to plead the most fundamental RICO requirement of all: a "pattern of racketeering activity" involving "at least two acts of racketeering activity" within a ten-year period. 18 U.S.C. § 1961(5); *see also* 18 U.S.C. § 1961(1) (listing acts that constitute "racketeering activity," including mail and wire fraud).

Allegations of mail and wire fraud must be pleaded with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. *See, e.g.*, *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id*. (internal quotation omitted). Courts have specifically held that "loose references to mailings and telephone calls in furtherance of a purported scheme to defraud will not do." *FMC Int'l*, 2006 WL 213948, at *4 (citation omitted). Rather, Plaintiffs "must, within reason, describe the time, place, and content of the mail and wire communications, and it must identify the parties to these communications." *Id*.

Plaintiffs' complaint here does exactly what Rule 9(b) warns litigants *not* to do when making allegations of fraud. It asserts that the Insurance Defendants committed mail and wire

19

fraud (Compl. ¶ 99),[7] but Plaintiffs' only description of those criminal violations consists of scattershot references to unidentified mailings, communications, and payments that are alleged to somehow be part of a scheme to defraud. (*See* Compl. ¶ 99.) Plaintiffs do not identify a single mailing, communication, or payment with any specificity at all. In similar fashion, Plaintiffs make no effort to identify who did what among the Insurance Defendants. Instead, Plaintiffs lump all the Insurance Defendants together and allege—without any distinction—that they all engaged in the same predicate acts of mail and wire fraud. (*See, e.g.*, *id.* ¶¶ 77, 99-102.) Such vague allegations against all of the Insurance Defendants fail to satisfy the particularity requirement of Rule 9(b). *FMC Int'l A.G. v. ABB Lummus Glob., Inc.*, 2006 WL 213948, at *4 (S.D. Tex. Jan. 25, 2006) ("It is not enough for the plaintiff to attribute vaguely the alleged fraudulent activity to the 'defendants' collectively.").

Because Plaintiffs fail to specify any particular predicate acts, Plaintiffs necessarily fail to specify a pattern of racketeering activity. Merely alleging two or more predicate acts, without more, is not sufficient to demonstrate a *pattern* of racketeering activity. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). To establish a pattern of racketeering activity, a plaintiff must show "both a relationship between the predicate offenses—here mail fraud and wire fraud—and the threat of continuing activity." *Malvino v. Delluniversita*, 840 F.3d 223, 231 (5th Cir. 2016) (citing *H.J. Inc.*, 492 U.S. at 239). The complaint here alleges no coherent pattern between the alleged acts, nor does it articulate how they demonstrate a threat of continuing

---

[7] Mail fraud consists of "(1) the defendant's participation in some scheme or artifice to defraud, (2) the use of the mails 'caused by' defendant or someone associated with the scheme, and (3) the use of the mails for the purpose of executing the scheme." *Walsh v. Am's Tele-Network Corp.*, 195 F. Supp. 2d 840, 846 (E.D. Tex. 2002) (internal citations omitted). The elements of wire fraud "are the same as those for a mail fraud claim except the use of the wire must be interstate." *Id.*

activity. Instead, the complaint provides nothing more than a rote recitation of the element itself,

which is insufficient to state a RICO claim. (*See* Compl. ¶ 98 ("The IDSA, Insurance

Defendants, and the IDSA Panelists engage in a pattern of racketeering, their acts are related and

continuous, and their acts form a 'pattern of racketeering.'").)

### b.     Plaintiffs Fail to Plead a Viable Section 1962(a) Claim

Section 1962(a) provides that "a person who has received income from a pattern of

racketeering activity cannot invest that income in an enterprise." *Crowe v. Henry*, 43 F.3d 198,

203 (5th Cir. 1995); *see also* 18 U.S.C. § 1962(a). Plaintiffs' Section 1962(a) claim suffers from

the same deficiencies described above with respect to Section 1962(c), namely the failure to

adequately allege an enterprise or a pattern of racketeering activity.

But Plaintiffs' Section 1962(a) claim also suffers from an additional defect: Plaintiffs do

not allege how the Insurance Defendants invested income derived from a pattern of racketeering

into the alleged enterprise. The only conceivable "investment" was compensation to IDSA

panelists for consulting work (Compl. ¶ 150), and there is no explanation for how the money for

those payments came from "income" derived from the enterprise. At most, Plaintiffs allege that

the Insurance Defendants reduced their overall operating expenses whenever they denied claims

for long-term antibiotic treatment. Deeming that reduction in cost to be "income" and linking

that "income" to the "enterprise" requires several long causal leaps—*e.g.*, that those denials

would not have occurred but for the recommendations in the Guidelines, and that the IDSA panel

would not have made those same recommendations in the Guidelines anyway—that the

complaint does not even attempt to plead facts to support. Thus, it fails to state a viable claim for

violation of Section 1962(a). *See, e.g.*, *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425,

443 (5th Cir. 2000) ("Of course, to state a claim under § 1962(a), a plaintiff must also show that

its injuries resulted from the investment or use of racketeering proceeds."); *Turner v. Union*

*Planters Bank of S. Miss.*, 974 F. Supp. 890, 894 (S.D. Miss. 1997) ("It is not sufficient to merely show that a defendant invested or used the income derived from its pattern of racketeering activity to facilitate its own general operations and that the continuing operation of the enterprise injured the plaintiffs.").

c.      **Plaintiffs Fail to Plead a Viable Section 1962(b) Claim**

Section 1962(b) provides that "a person cannot acquire or maintain an interest in an enterprise through a pattern of racketeering activity." *Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995); *see also* 18 U.S.C. § 1962(b). Plaintiffs' Section 1962(b) claim suffers from the same deficiencies described above with respect to Section 1962(c), namely the failure to adequately plead an enterprise or a pattern of racketeering activity.

In addition, Plaintiffs do not allege how the Insurance Defendants "acquired or maintained" an interest in the alleged association-in-fact enterprise through a pattern of racketeering activity. (*See* Compl. ¶ 155.) Instead, Plaintiffs allege only that IDSA and the Insurance Defendants "refused to accept, acknowledge, or rely on" the studies and organizations that alternative medicine proponents cite to support their arguments. *Id.* The complaint neither explains how mail and wire fraud relate to an alleged refusal to rely on certain studies, nor how these predicate violations allegedly allowed IDSA and the Insurance Defendants to "acquire or maintain" an interest in an abstract association. Such conclusory allegations are plainly insufficient. *See, e.g.*, *Vanderbilt Mortg. & Fin., Inc. v. Flores*, 735 F. Supp. 2d 679, 702 (S.D. Tex. 2010) (dismissing Section 1962(b) claim based on conclusory allegations parroting statutory requirements); *Blanchard & Co. v. Contursi*, 2000 WL 574590, at *2 (E.D. La. May 11, 2000) (dismissing Section 1962(b) claim because plaintiff failed to "adequately allege[ ] how the defendants acquiring or maintaining their interest or control in the alleged enterprise caused the plaintiff's alleged injury").

22

### d.      Plaintiffs Fail to Plead a Viable Section 1962(d) Claim

Because Plaintiffs have failed to plead an independent violation of Section 1962(a), (b), or (c), Plaintiffs' RICO conspiracy claim under Section 1962(d) must also be dismissed as a matter of law. *See N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 203 (5th Cir. 2015) ("Since [plaintiff] failed to properly plead a claim under §§ 1962(a), (b), or (c), it correspondingly failed to properly plead a claim under § 1962(d).").

Even if Plaintiffs had alleged actionable violations of Sections 1962(a), (b), or (c) by any specific Insurance Defendants—which they have not—they fail to allege facts sufficient to show that Defendants conspired with each other to commit such violations. This too warrants dismissal of the RICO conspiracy claim. *See Crowe*, 43 F.3d at 206 ("While Crowe has pled the conclusory allegation that the defendants herein 'conspired,' nowhere does he allege facts implying any agreement to commit predicate acts of racketeering. Therefore, Crowe's claim under 18 U.S.C. § 1962(d) must also fail."); *see also Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 239 (5th Cir. 2010) ("In order to demonstrate a RICO conspiracy under § 1962(d), [plaintiffs] must demonstrate (1) that two or more people agreed to commit a substantive RICO offense and (2) that [defendants] knew of and agreed to the overall object of the RICO offense.") (internal quotation omitted).

### B.      Plaintiffs Fail to Plead Plausible Sherman Act Claims (Count V)

Plaintiffs' allegations fare no better under the Sherman Act, which is intended to prevent anticompetitive conduct, not redress harms having nothing to do with competition.[8] As with their

---

[8]      The "distinction between unfair conduct and anticompetitive conduct is critical to maintain because the antitrust laws 'do not create a federal law of unfair competition or purport to afford remedies for all torts committed by or against persons engaged in interstate commerce.'" *Retractable Techs. Inc. v. Becton Dickinson & Co.*, 842 F.3d 883, 892 (5th Cir.

RICO claims, Plaintiffs simply recite the elements of a Sherman Act violation in conclusory

fashion, without making any effort to allege specific facts demonstrating that the Insurance

Defendants conspired with each other to restrain trade or that any Insurance Defendants

monopolized any market. These failures give rise to multiple fatal flaws requiring dismissal of

Count V.

> **1.     Plaintiffs' Conclusory Allegations are Insufficient to State Any Viable Sherman Act Claim**

As a threshold matter, Plaintiffs' allegations of antitrust violations suffer from the same

problem as their allegations of a racketeering enterprise: they parrot the legal requirements of the

statute without alleging facts sufficient to support an inference that it was violated. "[S]imply

cry[ing] 'antitrust' or 'Sherman Act' in a crowded [ ]room . . . [leaving] the []Court with head-

scratching attempts to peer through the smoke[,]" *CCPI v. Am. Premier, Inc.*, 967 F. Supp. 813,

816 (D. Del. 1997), as Plaintiffs do here, is precisely the type of pleading strategy that the

Supreme Court, the Fifth Circuit, and numerous trial courts have found to be impermissible. *See,*

*e.g.*, *Twombly*, 550 U.S. at 553 (declining to infer bald allegations of parallelism amounted to

actionable Sherman Act claim because of lack of facts making allegations plausible); *Marucci*

*Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 375 (5th Cir. 2014) (dismissing

Sherman Act claims premised on conclusory allegations devoid of factual support); *Berry v.*

*Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 794 (N.D. Tex. 2009) (rejecting rote allegations

of conspiracy absent facts to support involvement by each defendant).

The complaint fails to heed those warnings in several respects, two of which are

applicable to claims under both Sections 1 and 2 of the Sherman Act. *First*, as with the RICO

---

2016) (quoting *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 225
(1993) (internal quotation omitted)).

claims, Plaintiffs lump together all Defendants without any explanation of who is alleged to have

done what in violation of the Sherman Act. Indeed, the complaint does not even allege that any

specific Insurance Defendant—aside from the Blue Cross Defendants[9]—did *anything*.[10] Aetna,

Cigna, Kaiser, and United Healthcare are only mentioned by name once in the complaint, in the

recitation of principal-place-of-business allegations. (*See* Compl. ¶¶ 25-32.) Throughout the

remainder of the complaint, the Insurance Defendants are impermissibly lumped together in

contravention of well-established pleading standards. *See Home Health Licensing Specialists,*

*Inc. v. Leavitt*, No. 3:07-CV-2150-B, 2008 WL 4830543, at *9 (N.D. Tex. Nov. 7, 2008)

(dismissing antitrust conspiracy claim where plaintiff failed to make specific allegations

pertaining to individual defendants); *see also Bristow Endeavor Healthcare, LLC v. Blue Cross*,

Case No. 16-cv-0057, 2016 WL 3199520, at *4 (N.D. Okla. June 8, 2016) ("motion to dismiss

should be granted, because plaintiff has not alleged that [Insurance Defendant] played any role in

the alleged anticompetitive conspiracy"), *aff'd sub nom. Bristow Endeavor Healthcare, LLC v.*

*Blue Cross & Blue Shield Ass'n*, 691 F. App'x. 515 (10th Cir. 2017). As a result, the complaint

does not link any Insurance Defendant to any Plaintiff, let alone to a plausible conspiracy (as

required for a claim under Section 1 of the Sherman Act) or any unilateral anticompetitive

---

[9]    Plaintiffs name two Blue Cross and Blue Shield plans (Anthem and Blue Cross and Blue Shield
of Texas) as defendants but make allegations against unidentified "Blue Cross Defendants" which are not
specified as either Anthem or Blue Cross and Blue Shield of Texas. Further, although referred to in this
brief for convenience as a "Insurance Defendant," Blue Cross and Blue Shield Association is not even a
health insurer; rather, BCBSA is the owner of the Blue Cross and Blue Shield trademarks and licenses
them to Blue Cross and Blue Shield Health Plans. Thus, even Plaintiffs' references to the "Blue Cross
Defendants" do not apply to BCBSA as those paragraphs concern decisions to deny coverage for Lyme
disease treatment—decisions that BCBSA takes no part in. (*See* Compl. ¶¶ 51-53 and 84-87.)

[10]    The additional allegations pertaining to the Blue Cross Defendants consist only of quoting
deposition testimony from an officer of an unidentified Blue Cross Plan who is not alleged to have any
personal knowledge of that Plan's involvement—let alone the involvement of any Insurance Defendant—
in IDSA's promulgation of Lyme disease treatment guidelines. (*See* Compl. ¶ 51.)

behavior (as required for a claim under Section 2). Plaintiffs' antitrust claims should be dismissed on this basis alone.

*Second*, the complaint lacks allegations sufficient to give rise to an inference of causation. The complaint simply asserts that the Insurance Defendants retained physicians as consultants and referenced the Guidelines when making individual coverage decisions. (Compl. ¶ 76). However, the complaint fails to explain how Insurance Defendants' alleged retention of physicians as experts and consultants is at all related to those physicians' alleged participation in development of IDSA guidelines. Nor does the complaint plead facts giving rise to a plausible inference of any connection between IDSA's development of the Guidelines and any Insurance Defendant's reliance on them when making individual coverage decisions. Likewise, the complaint lacks allegations sufficient to link the claimed harm—personal injuries and medical costs—to the Insurance Defendants. Plaintiffs have not even alleged that they are members of health plans insured or administered by the Insurance Defendants, much less that they (1) submitted proper claims for long-term antibiotic treatment that (2) were wrongfully denied, leaving them (3) unable to obtain that treatment. Plaintiffs' failure to plead causation is dispositive of this claim. *See McCormack v. Nat'l Collegiate Athletic Ass'n*, 845 F.2d 1338, 1342 (5th Cir. 1988) (affirming dismissal of Sherman Act claims because the "alleged connection between [Defendant]'s actions" and purported injury "presents the sort of 'speculative' and 'abstract' causal chain" insufficient to state a claim).

### 2.      Plaintiffs Fail to Allege an Antitrust Injury

Even if Plaintiffs had alleged facts sufficient to sustain a claim, their antitrust claims would fail because they do not allege harm flowing from conduct that could be deemed anticompetitive within the meaning of Sherman Act.

A private plaintiff seeking relief under the Sherman Act must establish "antitrust injury," which means "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). It is not enough for a claimant to show some alleged injury; rather, the claimant must show harm to the competitive process itself. *See PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 419 (5th Cir. 2010). Therefore, "unless one group of suppliers diminishes another's ability to peddle its wares . . . there is not even the beginnings of an antitrust case." *Schachar v. Am. Acad. of Ophthalmology, Inc.*, 870 F.2d 397, 399 (7th Cir. 1989); *see also NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 139 (1998) (rejecting antitrust claim where there was no evidence alleged scheme "harmed the competitive process").

Here, Plaintiffs' Sherman Act claims fail because their injuries have nothing to do with competition, much less the reduction of competition. Instead, Plaintiffs' purported injuries allegedly flow from the promulgation and use of the non-binding IDSA Guidelines. (*See* Compl. ¶¶ 48, 95-96 (alleging that IDSA Guidelines "cause many people suffering with Lyme disease to go undiagnosed" resulting in chronic illness or disability), ¶ 123 ("IDSA Guidelines also prevent doctors from providing patients with proven treatment options because the IDSA Guidelines are extremely restrictive"), ¶¶ 132-140 (discussing personal injuries).)[11] However, the creation and

---

[11]     Plaintiffs' focus on their claimed individual personal injuries, which are in no way tied to the conduct of any of the Insurance Defendants, further underscores that they lack antitrust standing. *See Marucci Sports*, 751 F.3d at 376 (emphasizing antitrust laws are designed to protect competition, not competitors" and, thus, a plaintiff's "predominate focus on its own injuries" is "misguided"); *Chadda v. Burcke*, 180 F. App'x. 370, 371 (3d Cir. 2006) ("Although this statute provides a remedy for consumers of goods or services for personal use, it does not encompass personal injuries"); *see also Savory Pie Guy, LLC v. Comtec Indus., Ltd.*, No. 14 CV 7527, 2016 WL 7471340, at *12 (S.D.N.Y. Dec. 28, 2016) (Because "plaintiff has produced no evidence of the classic antitrust injury—monopolist overcharges" on the purchase of a product, plaintiff could not establish antitrust injury as a matter of law).

27

promulgation of the Guidelines is not a competitive market process, and the issuance of the

Guidelines was not accomplished through any purported reduction in competition, which is a

basic prerequisite for Plaintiffs to have antitrust standing. *See Norris v. Hearst Trust*, 500 F.3d

454, 465-69 (5th Cir. 2007) (affirming dismissal of antitrust claims for failure to show an injury

to competition that "reflect[s] the anticompetitive effect either of the violation or of

anticompetitive acts made possible by the violation.") (quoting *Brunswick Corp.*, 429 U.S. at

489).

     The Fifth Circuit has rejected similar attempts by plaintiffs to transform the mere

existence of a trade association and establishment of guidelines into viable antitrust claims,

absent any facts demonstrating anticompetitive market harm. *See Viazis v. Am. Ass'n of

Orthodontists*, 314 F.3d 758, 764 (5th Cir. 2002) ("Despite the fact that '[a] trade association by

its nature involves collective action by competitors[,]. . .[it] is not by its nature a "walking

conspiracy," its every denial of some benefit amounting to an unreasonable restraint of trade.'")

(quoting *Consol. Metal Products, Inc. v. Am. Petroleum Inst.*, 846 F.2d 284, 293-94 (5th Cir.

1988)). The outcome should be the same here. *See Schachar*, 870 F.2d at 399 (allegation that

standards organization improperly labeled procedure "experimental" was insufficient to establish

requisite anticompetitive conduct because it did not reduce competition or output or increase

prices).

     Further, Plaintiffs cannot plausibly allege that IDSA, through its Guidelines—which

Plaintiffs concede are non-binding (*see* Compl. ¶¶ 74, 111)—had the power to compel any

market actors to stop competing with IDSA or each other in the "Lyme disease market" as a

whole. *See Deborah Heart & Lung Ctr. v. Virtua Health, Inc.*, 833 F.3d 399, 403, 404 (3d Cir.

2016) (holding that in order to prove Sherman Act claim, plaintiff must "show anti-competitive

effects on the market as a whole"). The Insurance Defendants' alleged conduct—administering

claims for fully insured or employer-sponsored plans when their plan members seek long-term

antibiotic treatment—does not subvert competition or limit any competitor's ability to "peddle its

wares." *Schachar*, 870 F.2d at 399. Indeed, Plaintiffs have failed to even allege that the output of

Lyme disease treatment has been reduced or that the prices of such treatments have increased—

the very evils that the antitrust laws were enacted to protect against. *See Marucci Sports*, 751

F.3d at 377 ("A restraint should not be deemed unlawful, even if it eliminates a competitor from

the market, so long as sufficient competitors remain to ensure that competitive prices, quality,

and service persist."). To the contrary, Plaintiffs have alleged only that one particular type of

treatment is not covered by Insurance Defendants, which does not reflect harm to the market for

treatment of Lyme disease generally. Indeed, Plaintiffs acknowledge that a 28-day course of

antibiotic treatment is generally considered appropriate. (Compl. ¶ 54.) Having failed to allege

conduct that has anticompetitive effects, Plaintiffs simply cannot have suffered any injury that

flows from a violation of the antitrust laws. *Brunswick Corp.*, 429 U.S. at 489.

### 3. Plaintiffs Cannot State a Claim Under Section 1 of the Sherman Act Because They Fail to Adequately Plead an Agreement or a Relevant Market

Plaintiffs seek relief under Section 1 of the Sherman Act, 15 U.S.C. § 1, based on

allegations that "IDSA, the IDSA Panelists, and the Insurance Defendants engaged in a

conspiracy that restrained trade in the relevant market." (Compl. ¶ 166.) But merely invoking the

word "conspiracy" is not enough to state a Section 1 claim. Instead, "[t]o establish a violation of

[Section] 1 of the Sherman Act, [Plaintiffs] must demonstrate that: (1) [Defendants] engaged in a

conspiracy, (2) the conspiracy had the effect of restraining trade, and (3) trade was restrained in

the relevant market." *Marucci Sports*, 751 F.3d at 373 (quoting *Apani Sw., Inc. v. Coca-Cola*

*Enters., Inc.*, 300 F.3d 620, 627 (5th Cir. 2002)).

Plaintiffs fail to allege facts sufficient to meet those requirements in at least two respects: (1) they fail to allege facts sufficient to allege any agreement between or concerted action by Insurance Defendants to restrain trade, and (2) they fail to define a plausible, relevant market. Each of these defects is independently dispositive of Plaintiffs' Section 1 claim.

> ### a.      Plaintiffs Fail to Allege an Actionable Agreement Involving the Insurance Defendants

The "crucial question" under Section 1 of the Sherman Act "is whether the challenged anticompetitive conduct stems from independent decision or from an agreement, tacit or express." *Twombly*, 550 U.S. at 548, 553 (internal quotations omitted). Therefore, a complaint seeking relief under Section 1 must contain "allegations plausibly suggesting (not merely consistent with) agreement," including "further circumstance pointing toward a meeting of the minds." *Id*. at 557. Allegations of parallel conduct "[w]ithout more" do not "suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Id.* at 556-57.

In this case, Plaintiffs' complaint merely "presents various conclusory allegations that support one of many inferential possibilities." *Marucci Sports*, 751 F.3d at 375. Specifically, Plaintiffs allege that the Insurance Defendants engaged in parallel conduct insofar as they all received and denied claims for long-term antibiotic treatment for Lyme disease. (*See, e.g.*, Compl. ¶ 48-50.) "Without more," that allegation is insufficient to state a conspiracy claim, *Twombly*, 550 U.S. at 556-57, and Plaintiffs' complaint offers no "more." Even the most generous reading of the complaint gives rise solely to the possibility that the Insurance Defendants "were engaged in the same kind of insurance claims business," "worked with a common source" of medical knowledge to evaluate claims, and engaged in "natural parallel conduct," which "does not in and of itself support a plausible antitrust conspiracy." *Am. Surgical*

*Assistants, Inc. v. Great W. Healthcare of Tex., Inc.*, Civ. A. No. H-09-0646H-09-0646, 2010 WL 565283, at *6 (S.D. Tex. Feb. 17, 2010) (dismissing complaint that pleaded facts establishing, at most, that insurers were merely operating in same industry in similar ways).

Nor do Plaintiffs' conclusory allegations of conspiracy and use of the global term "Insurance Defendants" to describe the Insurance Defendants "nudge" their claims "from the conceivable to plausible." *Twombly*, 550 U.S. at 570. For example, Plaintiffs allege that "the Insurance Defendants treat [the 2006 IDSA Guidelines] as 'de facto' law that must be followed by doctors and refuse to cover treatment beyond the IDSA guidelines." (Compl. ¶ 74.) However, Plaintiffs neglect to provide any factual support for the contention that any individual Insurance Defendant's decision to follow the IDSA guidelines was the result of illegal concerted action among the companies, rather than individual decisions by each company, which coincided with the prevailing consensus among the medical community embodied in the Guidelines. The complaint simply concludes that it is all a conspiracy, ignoring that conspiracy is but one unsupported (and highly dubious) conclusion out of "many inferential possibilities" raised by the facts alleged. *Marucci Sports*, 751 F.3d at 375. This is insufficient to state a claim under Section 1 of the Sherman Act. *Id*. at 375 (dismissing plaintiff's Section 1 claim where the complaint did not "allege any specific *facts* demonstrating an intention" to violate Section 1).

### b.      Plaintiffs Fail to Adequately Plead a Relevant Market

In addition to failing to allege an actionable agreement among the Insurance Defendants, Plaintiffs' Section 1 claims fail because they have not alleged a plausible relevant market.[12] A

---

[12]      Plaintiffs' claims must be assessed under the rule of reason. Claims under Section 1 of the Sherman Act are reviewed under either (1) a "rule of reason" analysis or (2) the *per se* rule. The rule of reason is the default standard and applies "unless the combination falls within one of the categories of *per se* unreasonableness–conduct so pernicious and devoid of redeeming virtue that it is condemned without inquiry into the effect on the market in the particular case at hand."

plaintiff seeking relief under the antitrust laws must establish that "trade was restrained *in the relevant market*," which includes: (1) a geographic component defining the area of "effective competition" or "the market area in which the seller operates and to which buyers can practicably turn for supplies"; and (2) a product component, which focuses on the extent to which the seller's product is 'interchangeable in use' and the degree of 'cross-elasticity of demand between the product itself and substitutes for it.'" *Apani*, 300 F.3d at 626-27 (emphasis added). If a plaintiff "fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient, and a motion to dismiss may be granted." *Id.* at 628 (citing *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997)).

Here, Plaintiffs refer to the relevant market as either "the Lyme treatment market" (Compl. ¶ 118), or the "Lyme disease treatment and diagnosis market" (*id.* ¶ 130). This proposed market definition is deficient as a matter of law. First, Plaintiffs do not even attempt to define the relevant market in relation to interchangeable products or substitutes, as they are required to do. *Apani*, 300 F.3d at 628. Additionally, it is not at all self-evident what would be included in a "Lyme treatment market." For instance, it is unclear whether Plaintiffs' alleged market is limited

---

*Spectators' Commc'n Network Inc. v. Colonial Country Club*, 253 F.3d 215, 222-23 (5th Cir. 2001) (citing *Nw. Wholesale Stationers, Inc. v. Pacific Stationery and Printing Co.*, 472 U.S. 284, 289 (1985)). The *per se* rule is reserved for agreements that lengthy judicial experience has shown to serve no competitive purpose, such as overt price-fixing agreements, customer allocation schemes, and group boycotts among competitors. *See, e.g.*, *Broad. Music, Inc. v. Columbia Broad. Sys.*, 441 U.S. 1, 19-20 (1979). In this case, Plaintiffs do not contend that the Insurance Defendants' actions are *per se* illegal, nor have Plaintiffs argued that the Insurance Defendants have entered into any agreement that falls within the limited categories of activities that courts have recognized to be *per se* unlawful.

to treatment or includes diagnosis; whether that alleged market is limited to treatments by

doctors or whether it also includes other kinds of health care providers; whether it is limited to

antibiotic-based treatments or whether it also includes other kinds of alternative treatments; or

whether Plaintiffs' proposed market is local, regional, national, or international in its geographic

scope.

Accordingly, Plaintiffs' proposed market definition is both legally and factually deficient

and cannot sustain a claim under the rule of reason. *Apani*, 300 F.3d at 628; *see also Jayco Sys.,*

*Inc. v. Savin Bus. Machs. Corp.*, 777 F.2d 306, 320 (5th Cir. 1985) (dismissing Sherman Act

claims for failure "to show a relevant market").[13]

### 4.    Plaintiffs' Failure to Allege the Elements of a Monopolization or Attempted Monopolization Claim Dooms Their Claims Under Section 2 of the Sherman Act

Plaintiffs' Section 2 claims for monopolization and attempted monopolization are equally

defective. A claim for monopolization in violation of 15 U.S.C. § 2 requires a plaintiff to allege

facts sufficient to show: "(1) the possession of monopoly power in the relevant market and (2)

the willful acquisition or maintenance of that power as distinguished from growth or

development as a consequence of a superior product, business acumen, or historic accident."

*C.E. Servs., Inc. v. Control Data Corp.*, 759 F.2d 1241, 1244 (5th Cir. 1985) (citing *U.S. v.*

*Grinnell Corp.*, 384 U.S. 563, 570-71 (1966)). The second element requires plaintiffs to

---

[13]     *See also Smugglers Notch Homeowners' Ass'n, Inc. v. Smugglers' Notch Mgmt. Co.*, 414 Fed. App'x 372 (2d Cir. 2011) (affirming grant of a motion to dismiss because plaintiffs failed to "sufficiently allege[] relevant product and geographic markets" for their Sherman Act claims); *Tanaka v. Univ. of So. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001) ("Failure to identify a relevant market is a proper ground for dismissing a Sherman Act claim."); *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 437-41 (3d Cir. 1997); *Star Tobacco, Inc. v. Darilek*, 298 F. Supp. 2d 436, 446-47 (E.D. Tex. 2003) (dismissing analogous state law antitrust claims for failure to adequately plead a relevant market).

33

demonstrate that defendants engaged in "[e]xclusionary conduct . . . [namely] the creation or maintenance of monopoly by means other than the competition on the merits." *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 522 (5th Cir. 1999). To plead an *attempted* monopolization claim, plaintiffs must allege (1) that Insurance Defendants engaged in predatory or exclusionary conduct with (2) a specific intent to monopolize the relevant market and (3) a dangerous probability of achieving monopoly power. *Surgical Care Ctr. of Hammond, L.C. v. Hosp. Serv. Dist. No. 1 of Tangipahoa Par.*, 309 F.3d 836, 839 (5th Cir. 2002) (citing *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993)); *see also Retractable Techs.*, 842 F.3d at 891.

Plaintiffs do not meet any of these requirements. *First*, as with claims under Section 1 of the Sherman Act, "[a] prerequisite to success under section 2 on either a completed or attempted monopolization claim is proof of the relevant market." *C.E. Servs.*, 759 F.2d at 1244; *see also Surgical Care Ctr.*, 309 F.3d at 839-40 ("To establish Section 2 violations premised on attempt and conspiracy to monopolize, a plaintiff must define the relevant market . . . ." (quoting *Doctor's Hosp. of Jefferson, Inc. v. Se. Med. Alliance*, 123 F.3d 301, 311 (5th Cir. 1997))); *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 771, 781 (5th Cir. 1999) ("Thus, to prove a monopolization claim, the plaintiff must first establish the relevant product market."). As noted above, Plaintiffs have failed to define a plausible relevant market, and certainly none in which the Insurance Defendants compete.

*Second*, Plaintiffs fail to allege that any Defendant has monopoly power or a dangerous probability of achieving such power, which are basic requirements to state a Section 2 claim. *See C.E. Servs.*, 759 F.2d at 1244; *Retractable Techs.*, 842 F.3d at 891. This alone is sufficient to dismiss Plaintiffs' Section 2 claims. *Apani*, 300 F.3d at 633 ("[T]o survive a motion to dismiss,

34

plaintiffs still must set forth facts sufficient to create an inference that defendant had enough market power to create a monopoly.") (quoting *Endsley v. City of Chi.*, 230 F.3d 276, 282 (7th Cir. 2000) (upholding dismissal of Section 2 claims for failure to adequately plead facts demonstrating monopoly power)); *L.G. Motorsports, Inc. v. NGMCO, Inc.*, No. 4:11CV112, 2012 WL 718603 (E.D. Tex. Mar. 6, 2012) (dismissing Section 2 claims for failure to adequately plead a relevant market or a dangerous probability of achieving monopoly power).

Indeed, any suggestion that any Insurance Defendant monopolized the "Lyme treatment [or diagnosis] market" would be implausible on its face. Here, there is no allegation—nor could there be—that the Insurance Defendants (or IDSA) are engaged in the treatment or diagnosis of Lyme disease. A firm cannot monopolize a market in which it does not compete. *Abraham & Veneklasen Joint Venture v. Am. Quarter Horse Ass'n*, 776 F.3d 321, 335 (5th Cir. 2015); *see also Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1075 (11th Cir. 2004) (dismissing the plaintiff's attempted monopolization claim because the defendant does not participate in the relevant market); *Mercy-Peninsula Ambulance, Inc. v. Cty. of San Mateo*, 791 F.2d 755, 759 (9th Cir. 1986) (affirming dismissal of Section 2 claim against defendant that was "not a competitor" in the relevant market). Further, a proper claim for monopolization must be based on plausible allegations that one firm has monopoly power; a theory of "shared monopoly" will not suffice. *See Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 926 F. Supp. 2d 36, 46 (D.D.C. 2013) ("The very phrase 'shared monopoly' is paradoxical . . . In enacting the prohibitions on monopolies, Congress was concerned about the complete domination of a market by a *single* economic entity . . . .") (internal citations omitted); *see also Harkins Amusement Enters., Inc. v. Gen. Cinema Corp.*, 850 F.2d 477, 490 (9th Cir. 1988) (finding no case law to support a theory of "shared monopoly").

35

*Third*, Plaintiffs fail to allege that the Insurance Defendants engaged in "predatory and exclusionary conduct"— that is, "conduct, other than competition on the merits or restraints reasonably necessary to competition on the merits, that reasonably appear[s] capable of making a significant contribution to creating or maintaining monopoly power." *Retractable Techs.*, 842 F.3d at 891 (quoting *Taylor Publ'g Co. v. Jostens, Inc.*, 216 F.3d 465, 475 (5th Cir. 2000)). "If the conduct has no rational business purpose other than its adverse effects on competitors, an inference that it is exclusionary is supported." *Retractable Techs.*, 842 F.3d at 891 (quoting *Stearns Airport Equip.*, 170 F.3d at 522).

Plaintiffs' complaint alleges no conduct that could plausibly be considered predatory or exclusionary under this standard. Insurance Defendants' alleged conduct—influencing a panel of experts to write non-binding treatment guidelines with cautionary language about long-term antibiotic use based on scientific research—creates no monopoly power in any market. Nor can the conduct be termed "predatory" or "exclusionary." The Guidelines do not exclude anyone from the Lyme treatment or diagnosis market, and Insurance Defendants' conduct, even accepted as true, would not increase their own share of any market. Rather, it would create an opening in the market for competing health plans to offer coverage for the treatment for which the Insurance Defendants allegedly denied coverage. The monopolization claim simply does not fit the allegations here. Consequently, Plaintiffs' Section 2 claim must be dismissed.

**C.     Plaintiffs' Claims Are Time-Barred**

Finally, Plaintiffs' claims are untimely. Plaintiffs allege they were injured by a 28-day limit on antibiotic treatment of Lyme disease that dates back to August of 1992 (Compl. ¶ 50) and the related issuance of the Guidelines, which occurred more than a decade ago. Because they do not allege any subsequent acts that caused them injury, Plaintiffs have failed to plead timely claims.

36

"A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. ALCOA, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003); *see also Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) ("[A] complaint that shows relief to be barred by an affirmative defense, such as the statute of limitations, may be dismissed for failure to state a cause of action") (affirming dismissal of time-barred antitrust claims). RICO Act claims and Sherman Act claims are subject to a four-year limitations period. *Joseph v. Bach & Wasserman, L.L.C.*, 487 F. App'x 173, 176 (5th Cir. 2012) ("Civil RICO claims have a four-year statute of limitations"); *Kaiser Alum.*, 677 F.2d at 1051 ("Generally, an antitrust cause of action accrues, and the four-year statute of limitations begins to run, when a defendant commits an act that injures a plaintiff's business").

In an action, like this one, purportedly involving an alleged continuing conspiracy, the statute of limitations runs from the last *act* committed in furtherance of the conspiracy. "In the context of [an alleged] continuing conspiracy to violate the antitrust laws…each time [the] plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act and, as to those damages, *the statute of limitations runs from the commission of the act*." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971) (emphasis added); *see also Al George, Inc. v. Envirotech Corp.*, 939 F.2d 1271, 1273 (5th Cir. 1991) (applying continuing conspiracy analysis to both RICO Act and Sherman Act claims). Continuing injury to the plaintiff does not restart the statute of limitations. *Kaiser Alum.*, 677 F.2d at 1053 (quoting *Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 517 F.2d 117, 128 (5th Cir. 1975) ("[W]here a defendant commits an act injurious to plaintiff outside the limitations period, and damages continue to result from that act within the limitations period, no new cause of

37

action accrues for the damages occurring within the limitations period because no act committed by the defendant within that period caused harm.")).

To be timely, the November 10, 2017 complaint would need to allege "an act injurious to plaintiff[s]" occurring on or after November 10, 2013. *Id*. But all of the acts at issue are alleged to have occurred well before that time. According to the complaint, the "Insurance Defendants" limited their coverage for long-term antibiotic treatment of Lyme disease as early as 1992. (Compl. ¶¶ 48-50.) Consulting arrangements with IDSA panelists allegedly began as early as 1995 (*id*. ¶¶ 54-58), and were publicly known no later than 2008, when they were referred to in the Connecticut Attorney General's IDSA investigation (*see id*. ¶ 93). The IDSA Guidelines were first published in 2000 (*id*. ¶ 60), and the current Guidelines were published in 2006 (*id*. ¶¶ 70-78). The Connecticut Attorney General's investigation into the IDSA Guidelines concluded on April 30, 2008. (*Id*. ¶ 94.)

The only allegations of conduct within the last four years are vague references to payments to IDSA doctors or referrals to medical boards, but Plaintiffs allege no causal connection between such purported conduct and any supposed denial of Lyme treatment, coverage, or other alleged harm to them. (Compl. ¶¶ 56, 77, 90.) *See Astoria Entm't, Inc. v. Edwards*, 159 F. Supp. 2d 303, 318 (E.D. La. 2001), *aff'd*, 57 F. App'x 211 (5th Cir. 2003) ("The continuing conspiracy doctrine requires that a plaintiff's interests be continually invaded or injured.") (dismissing antitrust and RICO Act claims as time-barred). Without allegations connecting these acts to any injury, this alleged conduct is insufficient to restart the statute of limitations.

Plaintiffs acknowledge their statute of limitations problem by including a conclusory allegation of fraudulent concealment, which does not specify what was concealed or how.

38

(Compl. ¶ 104.) But that bare allegation is belied by the substance of their complaint, which is almost exclusively based on information that has been publicly available for over a decade. And there is no allegation that any actionable fact was concealed from Plaintiffs or anyone else. *See Priester v. Long Beach Mortg. Co.*, No. 4:10-CV-641, 2011 WL 6116491, at *4 (E.D. Tex. Oct. 13, 2011), *report and recommendation adopted*, No. 4:10CV641, 2011 WL 6116481 (E.D. Tex. Dec. 8, 2011), *aff'd sub nom Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667 (5th Cir. 2013) ("When records are publicly available, a cause of action related to those records is not inherently undiscoverable."); *see also Astoria*, 159 F. Supp. 2d at 319-320 (rejecting fraudulent concealment argument because plaintiff failed to sufficiently plead either that defendants concealed conduct complained of or that plaintiff exercised due diligence to discover facts forming the basis of the complaint but was unable to do so).

Because the complaint lacks even a single allegation of an injurious act within the last four years, Plaintiffs' RICO Act and Sherman Act causes of action are time-barred and should be dismissed.

## VI.    **CONCLUSION**

As the Supreme Court and the Fifth Circuit have repeatedly held, there is a vast difference between a conspiracy theory and a well-pled federal cause of action. Plaintiffs' complaint ignores that difference, recycling a decade-old theory that is far-fetched on its face and unsupported by factual allegations sufficient to push it across the "line from the conceivable to plausible." *Twombly*, 550 U.S. at 570. For the reasons set forth above, Plaintiffs' complaint should be dismissed.

| BAKER BOTTS L.L.P. | REED SMITH LLP - CHICAGO |
|---|---|
| By: /s/ *Earl B. Austin* <br>   Earl B. Austin - *Lead Attorney* <br>   Texas Bar No. 01437300 <br><br> 30 Rockefeller Plaza <br> New York, New York 10112 <br> Phone: (212) 408-2564 <br> Fax: (212) 259-2564 <br> Email: earl.austin@bakerbotts.com <br><br>   John B. Lawrence <br>   Texas Bar No. 24055825 <br><br> 2001 Ross Avenue, Suite 600 <br> Dallas, Texas 75201 <br> Phone: (214) 953-6873 <br> Fax: (214) 661-6873 <br> Email: john.lawrence@bakerbotts.com <br><br> ***ATTORNEYS FOR DEFENDANT*** <br> ***AETNA INC.*** | BY: /s/ Martin James Bishop <br>       MARTIN JAMES BISHOP <br>       Texas Bar No. 24086915 <br> 10 South Wacker Drive <br> Suite 4000 <br> Chicago, IL 60606 <br> Phone: (312) 207-1000 <br> Fax: (312) 207-6400 <br> Email: mbishop@reedsmith.com <br><br> REED SMITH LLP - PITTSBURGH <br><br> BY: /s/ Debra H. Dermody <br>       DEBRA H. DERMODY <br>       (Admitted pro hac vice) <br><br> BY: /s/ William Sheridan <br>       WILLIAM SHERIDAN <br>       (Admitted pro hac vice) <br> 225 Fifth Avenue, Suite 1200 <br> Pittsburgh, PA 15222-2716 <br> Phone: (412) 288-3131 <br> Fax: (412) 288-3063 <br> Email: ddermody@reedsmith.com <br>       wsheridan@reedsmith.com <br><br> REED SMITH LLP - HOUSTON <br><br> BY: /s/ Peter John Chassman <br>       Peter John Chassman <br>       Texas Bar No. 00787233 <br> 811 Main Street, Suite 1700 <br> Houston, TX 77002 <br> Phone: (713) 469-3885 <br> Fax: (713) 469-3899 <br> Email: PChassman@ReedSmith.com <br><br> ***ATTORNEYS FOR DEFENDANT BLUE*** <br> ***CROSS AND BLUE SHIELD OF TEXAS*** |

| FOLEY & LARDNER LLP – LOS ANGELES | MORGAN, LEWIS & BOCKIUS LLP |
|---|---|
| BY: /s/ Kimberly A. Klinsport<br>        KIMBERLY A. KLINSPORT<br>        Texas Bar No. 24096073<br>555 South Flower Street, Suite 3500<br>Los Angeles, CA 90071-2411<br>Phone: (213) 972-4500<br>Fax: (213) 486-0065<br>E-mail: kklinsport@foley.com<br><br>FOLEY & LARDNER LLP - BOSTON<br><br>Michael J. Tuteur<br>(Admitted to E.D. Tex.)<br>111 Huntington Avenue, Suite 2500<br>Boston, MA 02199-7610<br>Phone: (617) 342-4000<br>Fax: (617) 342-4001<br>Email: mtuteur@foley.com<br><br>FOLEY & LARDNER LLP – SAN FRANCISCO<br><br>Eileen R. Ridley<br>(Admitted to E.D. Tex.)<br>555 California Street, Suite 1700<br>San Francisco, CA 94104-1520<br>Phone: (415) 434-4484<br>Fax: (415) 434-4507<br>Email: eridley@foley.com<br><br><br>***ATTORNEYS FOR DEFENDANT ANTHEM, INC.*** | BY: /s/ R. Brendan Fee<br>        R. Brendan Fee (*pro hac vice*)<br>brendan.fee@morganlewis.com<br>Amy M. Dudash (*pro hac vice*)<br>amy.dudash@morganlewis.com<br>1701 Market Street<br>Philadelphia, PA 19103-2921<br>Phone: (215) 963-5000<br>Fax: (215) 963-5001<br><br>Crystal R. Axelrod<br>Texas Bar No. 24078170<br>1000 Louisiana Street, Suite 4000<br>Houston, TX 77002<br>Phone: (713) 890-5000<br>Fax: (713) 890-5001<br>Email: crystal.axelrod@morganlewis.com<br><br>***ATTORNEYS FOR DEFENDANT CIGNA HEALTH AND LIFE INSURANCE COMPANY, IMPROPERLY SUED AS CIGNA CORPORATION*** |

| | |
|---|---|
| HOGAN LOVELLS US LLP | KIRKLAND & ELLIS LLP |
| By: /s/ Maria Wyckoff Boyce<br>   MARIA WYCKOFF BOYCE<br>   Texas Bar No. 22095050<br>   maria.boyce@hoganlovells.com<br>   Blayne Thompson<br>   Texas Bar No. 24088525<br>   blayne.thompson@hoganlovells.com<br>   609 Main Street, Suite 4200<br>Houston, Texas 77002<br>Phone: (713) 632-1400<br>Fax: (713) 632-1401 | BY: /s/ Daniel E. Laytin<br>   DANIEL E. LAYTIN<br>   (Admitted pro hac vice)<br><br>BY: /s/ Sarah J. Donnell<br>   SARAH J. DONNELL<br>   (Admitted pro hac vice)<br>300 N. LaSalle<br>Chicago, IL 6065<br>Phone: (312) 862-2000<br>Fax: (312) 862-2200<br>Email: dlaytin@kirkland.com |
| Michael E. Jones<br>Texas SBN 10929400<br>mikejones@potterminton.com<br>POTTER MINTON, P.C.<br>110 North College, Ste. 500<br>Tyler, Texas 75702<br>Phone: (903) 597-8311<br>Fax: (903) 593-0846 | ***ATTORNEYS FOR DEFENDANT BLUE CROSS AND BLUE SHIELD ASSOCIATION*** |
| ***ATTORNEYS FOR DEFENDANTS UNITED HEALTHCARE SERVICES AND UNITEDHEALTH GROUP INCORPORATED*** | |

|  | COOPER & SCULLY, P.C. |
|  | BY: __/s/ Derek S. Davis__<br>     DEREK S. DAVIS<br>     State Bar No. 00793591<br>     JOHN SCULLY<br>     State Bar No: 17936500<br><br>900 Jackson Street, Suite 100<br>Dallas, Texas 75202<br>Phone: (214) 712-9500<br>Fax: (214) 712-9540<br>Email: derek.davis@cooperscully.com<br>Email: john.scully@cooperscully.com<br><br>***ATTORNEYS FOR DEFENDANT KAISER FOUNDATION HEALTH PLAN, INC. improperly served as KAISER PERMANENTE, INC.*** |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and forgoing document has been served on February 16, 2018, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per local rule CV-5(a)(3).

*/s/ Kimberly A. Klinsport* _____
Kimberly A. Klinsport

43

4820-9546-8891