1

<pre>
 1                IN THE UNITED STATES DISTRICT COURT
                  FOR THE EASTERN DISTRICT OF TEXAS
 2                        TEXARKANA DIVISION

 3
     LISA TORREY, ET AL              )
 4                                        DOCKET NO. 5:17cv190-RWS
         -vs-                        )
 5                                        Texarkana, Texas
     INFECTIOUS DISEASES SOCIETY     )    1:45 p.m.
 6   OF AMERICA, ET AL                     April 19, 2018

 7

 8
                  TRANSCRIPT OF SCHEDULING CONFERENCE
 9          BEFORE THE HONORABLE ROBERT W. SCHROEDER III,
                   UNITED STATES DISTRICT JUDGE
10

11

12                     A P P E A R A N C E S

13

14
      (SEE SIGN-IN SHEETS DOCKETED IN THE MINUTES OF THE HEARING.)
15

16

17

18

19   COURT REPORTER:          MS. SHEA SLOAN, CSR, RPR
                              FEDERAL OFFICIAL COURT REPORTER
20                            211 W. Ferguson
                              Tyler, TX 75702
21

22

23
     Proceedings taken by Machine Stenotype; transcript was
24   produced by a Computer.

25
</pre>

1                P R O C E E D I N G S

2              THE COURT:  We typically do these back in chambers.

3    Given our size, we couldn't really accommodate that today.

4    And I like to do it because it is just a little more

5    informal, and it gives us a chance to sort of visit about the

6    case, but I thought we probably ought to be on the record

7    given the significant number of disputes that I see arising

8    already.

9              My normal practice is to just sort of start with

10   the Plaintiff and let him or her tell me a little bit about

11   the case just from a very sort of high level, what do you

12   think the case is going to involve.  And then I will hear

13   from whoever wants to speak on the other side about the other

14   side of the story, and then we can deal with the scheduling

15   issue as we go through and the discovery disagreements as

16   well.

17             So whoever wants to --

18             Mr. Egdorf.

19             MR. EGDORF:  Thank you, Judge.  I will take a stab

20   at it; and, obviously, if you have any questions or if I

21   misspeak, I have a peanut gallery to fix it for me.

22             We have got I think it is 23, give or take,

23   Plaintiffs that all suffer from chronic lyme disease.  And

24   what they have experienced in their lifetimes is an inability

25   to get the treatment that they need because they have been

1    denied coverage for various reasons and excuses by various

2    insurance companies.

3          Several years ago there was an investigation by a

4    state attorney general who found some issues with how

5    insurance companies were handling lyme disease claims.  It

6    appears, from at least what we have alleged in the case, that

7    there has been a conspiracy to manipulate the science and the

8    treatment protocols for these lyme disease victims to whereby

9    the insurance companies have a built-in excuse, if you will,

10   not to let these folks get treated.

11         And so these folks end up in some cases dying.  We

12   have some Plaintiffs that are deceased.  Others end up having

13   to pay their own medical care out of their own pocket even

14   though they had insurance coverage.

15         So we have alleged a RICO claim for the conspiracy

16   between these various insurance companies and the doctors who

17   make up the panel that help set the criteria and the

18   standards for the treatment.

19         I mean, I think one thing that we have a little bit

20   of a disagreement or a dispute on is what I took from the

21   phone call is in our view and the way we have pled the case,

22   it is somewhat irrelevant which Plaintiff is under which

23   insurance plan.  All of these Plaintiffs are victims of the

24   overall conspiracy.

25         So whether Anthem covers Ms. Torrey or not is

4

1    really irrespective of whether we think Anthem has

2    responsibility for Ms. Torrey's claims.  But, of course,

3    everyone is entitled to know which insurance carrier they

4    have and so forth.

5              So that is the big, big picture of what the case is

6    about.

7              You know, we -- obviously, as you know from the

8    pleadings, we have got some issues about how fast this case

9    can get moving, what discovery is important.  I don't want to

10   usurp that discussion at the moment other than to say I've

11   not been in front of Your Honor, but I have been in this

12   Court many times.  I think I have a reputation for moving

13   expeditiously.  I am not a "resist discovery" guy.  They are

14   going to get all of the stuff they are entitled to, and we

15   are ready to proceed as soon as you let us.

16             THE COURT:  Okay.

17             MS. DOAN:  Well, we have, obviously, a very

18   disparate group of Defendants here, and I am sure that I am

19   going to say some things that different people will disagree

20   with.  But at a general level, obviously, we dispute the

21   claims alleged by the Plaintiff.

22             We have filed motions to dismiss in this case, and

23   they range everything from whether there is personal

24   jurisdiction, especially over the doctors in this case where

25   are -- none from Texas and haven't done business here, and I

1  don't think they are even going to allege that here, to the

2  fact that whether they have standing to bring a RICO claim

3  says they allege personal injury.

4         They also have a major motion to dismiss on -- one

5  of the factors is how many years are involved in this?  I

6  mean, and with the salacious claims they are bringing in

7  their complaint, we look at, is there a statute of

8  limitations only for the last four years, or does it go back

9  30 years and three decades?

10         That depends on -- I mean, if it is the larger

11  amount, there is like microfiche discovery from all of the

12  Defendants in this case.  And we are all different.  So we

13  don't have just a group of insurance company Defendants that

14  are all very alike.  I mean, all of the insurance companies

15  are different, and different people -- different companies

16  have been around a different length of time, have dealt with

17  different issues at a different length of time, so they are

18  very disparate.  Then we have different associations as well,

19  and then we have the individual doctors.

20         THE COURT:  Okay.

21         MS. DOAN:  So we are kind of a cacophony of

22  Defendants on this side.

23         THE COURT:  So the association and the doctors it

24  looks like maybe they are jointly aligned; is that fair to

25  say?

1           MS. DOAN:  The lead Plaintiff and the doctors, I

2    believe, are aligned.

3           MR. DUNN:  The IDSA and the seven doctors are

4    aligned because those doctors work with IDSA on the

5    guidelines.

6           THE COURT:  Okay.

7           MS. DOAN:  But then we also have the Blue Cross

8    Blue Shield Association, which is different than Blue Cross

9    Blue Shield.  I'll let --

10          MS. DONNELL:  Yeah, Blue Cross Blue Shield

11   Association --

12          (Reporter requests Counsel to state her name.)

13          MS. DONNELL:  Sarah Donnell for Blue Cross Blue

14   Shield Association.  We are the organization that owns the

15   Blue Cross Blue Shield trademarks, and licenses them to 36

16   independent Blue Cross and Blue Shield companies.  We are not

17   a health insurer.  We don't provide health care coverage.

18          THE COURT:  I understand.  Okay.

19          MS. DOAN:  Then there is, obviously, issues we have

20   raised with respect to Twombly and Iqbal, as well.  And I

21   know the Court sees a lot of those, especially in the patent

22   practice.  But here even though it is a very elongated

23   complaint, when you look at it from an individual Defendant

24   perspective what are they saying we did, so what can I tell

25   my client they are claiming, and what kind of discovery that

```
 1  we need to gather and engage in, that eludes some of us

 2  because it is so general and can mean lots of different

 3  things.

 4          THE COURT:  Right.

 5          MS. DOAN:  So we have moved on all of these -- I

 6  think three different motions for summary -- motions to

 7  dismiss.  I think they recently responded.

 8          THE COURT:  Did y'all work out an agreement on

 9  that?

10          MR. EGDORF:  On which part?

11          THE COURT:  On an extension of time to respond.

12          MR. LEE:  We did.

13          THE COURT:  Because I didn't see a notice on

14  that.

15          MR. LEE:  Well, we --

16          MS. DOAN:  They did respond three days ago.

17          MR. LEE:  We responded.  And then Ms. Doan filed

18  yesterday an agreed motion to extend reply and surreply dates

19  on the motion.

20          MS. DOAN:  So the briefing should be finished.

21          THE COURT:  Right.

22          MR. LEE:  By mid-May.

23          MS. DOAN:  Do you have that docket number?

24          (Discussion between Counsel.)

25          MS. DOAN:  61 we filed a joint motion, Your Honor,
```

```
 1    I think it was late last night, to complete the briefing.  We

 2    did give them an oral extension until February 17th -- wait a

 3    second, April 17th.

 4              MR. EGDORF:  Yeah, we reached an agreement.

 5              THE COURT:  Right.

 6              MR. EGDORF:  We agreed to give them more time to

 7    file theirs, and they gave us more time to file our response

 8    and so forth.

 9              THE COURT:  That's fine.  I am more than happy for

10    y'all to do that, but let us know.

11              MS. DOAN:  Yeah.  So I think we did.  I don't think

12    they did on the response was the issue.  Yes.  But on the

13    reply and surreply we did file a joint motion on that last

14    night.

15              THE COURT:  I did see that.

16              MS. DOAN:  So it looks like the briefing will be

17    complete the middle of May, and we are asking the Court to

18    tee that up to hear those issues because we think that will

19    give this case structure.

20              THE COURT:  Okay.

21              MS. DOAN:  As to how many years are we talking

22    about, what are we talking about, and to whom are we going to

23    be talking.  Obviously we think this is a very large case.

24    It is different than things that are normally in this Court.

25    And I know this Court has handled other antitrust cases.
```

```
 1              THE COURT:  Yes.

 2              MS. DOAN:  But this is significantly bigger

 3    involving significantly different parties and a number of

 4    parties.  You will recall I think the last Red Lion case

 5    there was four Defendants and three of them were GE

 6    Defendants, as they are aligned.  Here we are not.  We are

 7    really different, all types of Defendants.

 8              THE COURT:  Okay.

 9              MS. DOAN:  So I think when you get to the discovery

10    issue some of the things we have asked for reflect in that

11    and some of them may be premature, but that is where we are

12    coming from on that.

13              We would like for the Court to hear our motions to

14    dismiss in June or July.

15              THE COURT:  Okay.

16              MS. DOAN:  We would like for this Court to

17    entertain an idea of a different structure for this case so

18    that before we start down the road of full discovery, that we

19    actually know what is at play, who is at play, and what we

20    are discovering.  And we would like for that to be said

21    sooner rather than later so that the Court can give us

22    guidance, and then come back to set additional discovery.

23              THE COURT:  Well, here is what I'd say.  I will --

24    I will let anybody else on the Defense side speak who wants

25    to; but specifically addressing that, I am happy to hear it
```

1    as soon as it is fully briefed, consistent with our schedule,

2    which is pretty busy right now.  But I am more than willing

3    to set it for a hearing and get an order out just as quickly

4    as we can get it fully briefed.

5            So what is your response or your reply time -- when

6    will it be fully briefed?

7            MR. LEE:  May 15th.

8            MR. EGDORF:  May 15th is the end --

9            MS. DOAN:  May 15th.

10           MR. EGDORF:  -- and obviously your schedule.  You

11   know, my M.O. always is I'll be there when you tell me to be

12   there, Judge.

13           THE COURT:  So we will start looking at some dates

14   in June for that.

15           MS. DOAN:  That's perfect.  That would be great.

16           So we would like for the Court to also entertain an

17   idea of -- and I know the Court's regular schedule of

18   practice, and we are also very cognizant of the Local Rules,

19   et cetera, and we are not trying to have some kind of

20   elongated stay.  But it is difficult to produce two years of

21   documents with a large company or 30 years of documents, but

22   we want to figure out what is the gamut of what we are

23   looking at in this case.

24           So if the Court granted part of the summary

25   judgment with respect to the companies and said, yes, the

1    statute of limitations is really the last four years only,

2    then there would be no reason for us to be digging up

3    microfiche documents from 30 years ago.

4             And yet, you know, depending on where the discovery

5    is is how we start, et cetera.  And we think the Court's

6    rulings on our motions will give us great guidance as to

7    that.

8             THE COURT:  Okay.

9             MS. DOAN:  And then subject to that, obviously, we

10   have moved for the number of depositions in this case --

11   there is 23 Plaintiffs.  They all have treating physicians.

12   I am assuming at least one.  So that is going to be 50

13   depositions at least.

14            Some of these Plaintiffs depending upon their

15   allegations and what they end up actually being, may have

16   two.  So there may be 75 depositions.

17            And then there is 16 different Defendants.  I have

18   yet been in a case where there is only one 30(b)(6) per

19   Defendant.  So we are talking about easily over 100

20   depositions in this case.  I just don't think that is going

21   to happen by this fall.

22            And I know the Plaintiffs have asked if we have an

23   April 20, '19 trial date, have asked for us to do all of our

24   complete document production by October.

25            Given the regular structure of the Court's

1    schedule, this is not workable in this type of case.  This is

2    why we would like to have a hearing, have those issues

3    decided, have the Court decide what is the framework of this

4    particular case, and then we decide discovery issues going

5    forward.  But if you want to discuss that date, too, we are

6    prepared on that.

7              THE COURT:  Okay.

8              MS. DOAN:  We think that is one of the reasons if

9    the Court wants to stay on its regular schedule that we

10   definitely need at least a year in order to complete

11   everything that has been done here.

12             THE COURT:  We will talk about that in a second.

13   Before I give you all an opportunity to respond, let me ask,

14   is there anybody else on the Defense side that wants to add

15   anything to what Ms. Doan has said?

16             MR. TUTEUR:  I just think it is worthwhile to --

17   Mike Tuteur representing Anthem from Foley & Lardner.

18             So just to amplify on what Ms. Doan just said, as

19   you may know, Anthem is a company that grew by accretion over

20   the last 30 years.  It is now the largest holder of Blue

21   Cross Blue Shield licenses in America in 14 states, none of

22   them Texas, by the way.

23             But Anthem grew by, you know -- it originally was

24   14 separate Blue Cross Blue Shield companies.  They merged

25   over time.  The last one of these was with Empire of New

1    York, which is six or seven years ago.  And in each case, of

2    course, there is legacy systems that got incorporated

3    hopefully or discarded or put to one side.

4            So to just I think exemplify what we are talking

5    about here, the difference between -- we think we have a good

6    motion to have the entire case thrown out.  But there is a

7    four-year statute of limitations at a minimum on RICO and on

8    the Sherman Act.  They have made some arguments about

9    fraudulent concealment.

10           Quite frankly it is a little hard to understand

11   when there has been an Attorney General's investigation and

12   so forth back in 2006.

13           But for Anthem to look at 30 years' worth of

14   material means going back to 14 separate companies'

15   computers' fiche to use that -- I mean, we are not joking

16   when we say fiche or film.

17           THE COURT:  Right.

18           MR. TUTEUR:  So anyway, but I think that just -- I

19   want to say that not only to distinguish between, say, a

20   company like Anthem, which is a conglomeration of many

21   companies, versus a CIGNA or an Aetna that has been a

22   consistent single company, we have very different types of

23   discovery regimes and sort of computer regimes.

24           THE COURT:  Okay.  All right.

25           Yes, sir?

1          MR. DUNN:  And, Your Honor, a similar point about

2     the doctors, while they are in the group with IDSA, which is

3     the professional society, they are separate individuals and

4     except for two of them, worked at the same hospital for

5     years.  They all worked at different, usually, medical

6     schools or teaching hospitals.

7          And if they are going after documents that involve

8     their work on these guidelines, most of them worked on the

9     original guidelines which were published in 2000, so they

10    have been working on those during the 1990s, in some

11    instances before heavy use of email, some email was used.

12         In every case they weren't, if they were using

13    email, their personal email for this.  They were doing it as

14    part of the functions for their teaching hospital or their

15    medical school.  And so those are separate entities that

16    would need to be involved if they are going back that far for

17    those types of discovery requests.

18         THE COURT:  Okay.

19         Others?  Anybody else?

20         Okay.  You all want to respond?

21         MR. EGDORF:  Sure.  Well, first of all, I mean, I

22    think what we are hearing is we want to the continue the case

23    until you rule on the motions to dismiss.  So there is

24    obviously a Local Rule on that.  It seems like I hear this in

25    every case -- we have got tons of legal talent over here with

 1    big giant law firms.  They can -- this will take as little or

 2    as much time as Your Honor allows them take.

 3         I have got a case against the NCA in Dallas.  I

 4    have a court hearing tomorrow.  They said the same thing, we

 5    can't get you any of these documents.  You are looking for

 6    stuff from 1906.  They did an appeal.  The Court of Appeals

 7    said you have 21 days to turn over 107 -- 112 years' worth of

 8    documents, and I got 800,000 pages in 21 days.

 9         These folks can do all of this if they want to.  So

10    this idea of delaying the case, you know, because we want to

11    know more, that just goes against what the rules are.  We are

12    ready to proceed.

13         They got a lot more people than we do; and if we

14    are saying we can do it, certainly they can.  I have been in

15    these antitrust cases.  I am the one who has run antitrust

16    cases that have been in this very courtroom and had millions

17    of pages of documents produced to me in 30 or 60 days.

18         So with all due respect to Counsel's arguments,

19    they can do that.  That is not an issue.

20         THE COURT:  Well, I don't think it is entirely just

21    a logistical problem.  It is also an efficiency argument and

22    a resources issue, so address that.

23         MR. EGDORF:  Well, sure.  Well, in terms of

24    efficiency, as I said, you can decide the case as they want

25    to go two years.  That means we are going to have two years

1    of work to do instead of one.  It is going to be more

2    inefficient the longer this drags out, instead of folks

3    focusing on what really needs to be focused on.

4         What I heard arguments about, we have to go look at

5    microfiche or whatever, that is not an efficiency question.

6    That is a logistics question, it seems to me, and a manpower

7    question and what they want to put on there.

8         Obviously we have a disagreement about the merits

9    of the motion to dismiss, and it seems to me that their

10   argument is predicated on, Judge, we think you are going to

11   throw their case or they are going to throw out a whole bunch

12   of the case.  I don't think that is what is going to happen.

13        And all we are really going to have done is kick

14   the can down the road three, four, five, whatever months, and

15   end up in the same place we are today having the same

16   conversation we are having today.

17        They want you to act on the premise that you are

18   going to dismiss the case.  Obviously I would like to act on

19   the premise that you are not going to dismiss the case.  And

20   the most efficient thing is to not waste the next three or

21   four months seeing what happens but instead get the ball

22   rolling.

23             THE COURT:  Okay.

24             MS. DOAN:  Can I have a short rebuttal on that one?

25             THE COURT:  Yes.

1          MS. DOAN:  We obviously don't want to waste any

2    time with this at all.  The Local Rule that he is talking

3    about does have a good cause exception.  We think because of

4    what they have pled here and how they have pled it, there is

5    good cause to have a different structure for this case.

6          We are not asking to have this hearing set in

7    September.  We are asking for it to be in June, as soon as

8    the briefing is over.  If you set it the end of May, it is

9    fine with us too.

10          THE COURT:  Well, just to be clear, so I

11    understand, are you asking for a stay of discovery for now?

12          MS. DOAN:  We are asking for -- if we need it

13    separately moved for that, we can.  But for the structure of

14    the case would be for the Court to decide, do I need to tell

15    my client to go back to look at four years of documents or 30

16    years of documents?

17          THE COURT:  Right.

18          MS. DOAN:  I mean, that is a wide disparity on what

19    they have pled versus what we think is allowed by the law.

20          THE COURT:  Right.

21          MS. DOAN:  Do the doctors need to produce a whole

22    bunch of documents when they may not be subject to personal

23    jurisdiction here?

24          I mean, these are issues that we think are pretty

25    easy to tee up and to look at.  And then if they need to give

1  more structure -- and we think that they do based on Iqbal

2  and Twombly, and we think that they know that -- they can

3  amend their complaint, give us an idea of what kind of things

4  they are looking at so we are not having to guess in the

5  dark.

6          THE COURT:  Well, let me ask you, would y'all

7  consider it -- I mean, I don't know what the state of play on

8  the pleadings is, but is that -- is amending the complaint

9  going to help?

10         MR. EGDORF:  Oh, I guess -- you know, it is hard to

11  say, Your Honor.  I would have to really see what kind of

12  ruling you came up with to know if you found a problem and it

13  would be curable by the amended pleading.  I am not really

14  sure on that.

15         I would say, you know, Counsel is being careful not

16  to say she wants a stay, but in essence they are saying we

17  want a stay, we want to know what is going on.

18         I am certainly -- you know, I mean, I guess as I am

19  sitting here and was thinking about it, we can certainly

20  propose a compromise on what I have heard argument about is

21  30 years versus four years.  Well, until you rule, they can

22  produce the four years' worth of stuff.  We can do the

23  discovery in that way since that seems to be the question of

24  four years.

25         That eliminates this alleged logistics and

1  microfiche and all of that other kind of stuff.  We can at

2  least get the ball rolling even -- obviously, if you throw

3  out the whole case, the four years will not be relevant; but

4  we certainly have eliminated the question of the time frame.

5          I certainly don't agree we are limited to four

6  years ultimately.  Even regardless of what the limitations

7  period is, I don't think we are limited to four years on the

8  discovery of how we got to where we are today.  But it seems

9  to me that is a potential cure, if you will, to the problem.

10          You know, the motion they filed, though, didn't

11  say, you know, let's have a hearing in June and then decide.

12  Their motion is, kick the trial a year.

13          THE COURT:  Right.  We will get to that in a

14  second.

15          MR. EGDORF:  All right.

16          THE COURT:  So how about, Ms. Doan, what about the

17  four-year offer of compromise?

18          MS. DOAN:  That seems reasonable.  If the Court

19  orders that, we are happy to do that.  But I think what the

20  push-back we will get from our client is, you know, look, I

21  mean, so between four years and eight years or whatever else.

22  But if the Court orders us to do four years, we are happy to

23  do that.

24          THE COURT:  This is my -- we will talk about the

25  schedule in just a second.  But my suggestion would be you

1    all -- I don't know, Mr. Egdorf, or, Ms. Doan, if others of

2    you all have discussed whether there are specific things in

3    the complaint that might need dealt with, with an amended

4    complaint.  If there are, maybe it makes sense to go ahead

5    and do that.

6         If there are not or they are not significant, let's

7    go ahead and get this motion fully briefed, and we will hear

8    it in June, and we will get an order out as quickly as we can

9    and get going.

10        In the meantime there is -- there is a longstanding

11   practice that just because dispositive motions are pending,

12   we don't stop discovery.  And, you know, I clearly recognize

13   this is somewhat of an unusual case just by the presence of

14   19 lawyers.  That should tell me something.  But I don't see

15   it as so far out of the ordinary that we need to do staged

16   discovery or anything of that nature.

17        Here is what I would suggest:  I would suggest that

18   you all go ahead and, pursuant to the default rule, the model

19   rule, you all make your initial disclosures, both sides by 30

20   days and 45 days just like the rules require.  And we will

21   get the motions set for hearing, and I will rule on those

22   just as quickly as I possibly can.

23        MS. DOAN:  Okay.

24        THE COURT:  I am glad to hear anything anybody

25   wants to say about the trial setting.  I understand what the

1  parties' requests are; but if there is anything in addition

2  to what has already been filed, I am glad to hear it.

3          MS. DOAN:  I think the only thing that may be

4  different is in their response they alluded to the fact that

5  every time that the parties had asked in other cases for an

6  extension in discovery, that the -- that it had been by a

7  joint issue, and I think they attached a whole bunch of joint

8  issues before the Court.

9          As the Court will recall in the Red Lion case, and

10  I think that was their Exhibit A they attached to one of the

11  responses, the first request was disputed; and it was heavily

12  disputed, and we needed additional time.  And we had to go

13  through all of that rigamarole, and the Court granted the

14  additional time on the discovery.

15          We are telling you now how much discovery we need,

16  and I think we waited -- didn't cover it at this meeting in

17  Red Lion, but we needed it desperately, and then we got it.

18  Then later on we needed additional time on discovery, and

19  that one was joint, and it is the second one they attached,

20  not the first one that was really hotly disputed.  Here we

21  are going to need additional time.

22          THE COURT:  Right.

23          MS. DOAN:  Even if it is limited to four years,

24  that doesn't necessarily limit unless the party -- unless

25  this Court makes rulings eliminating certain Defendants

1    completely, we are talking about over 100 depositions.

2            THE COURT:  Sure.

3            MS. DOAN:  No one wants to take depositions before

4    we have the right documents, et cetera.  So I think that is

5    what we are talking about.

6            THE COURT:  Okay.

7            MR. EGDORF:  Your Honor, I guess the -- and I think

8    this probably is evident in what we have filed, but I think

9    the best way I would say it is we don't know that we are

10   there yet.  I mean, I think it is premature to say we need to

11   kick the trial an extra year because this might happen or

12   that might happen or we need to do a whole bunch of stuff.

13           If everybody is working diligently and cooperating

14   the way they should and we are all giving it the college try,

15   if you will, I am not going to be the one pounding the table

16   saying too bad, ixnay, you know, if we are all really trying

17   to do what we need to do.

18           But, again, I have never found a case that the

19   parties couldn't get done whatever the Court made them do

20   under whatever schedule they had to do it, and there is no

21   reason why we can't do that in this case.  We certainly ought

22   to be put to the test to try and accommodate each other and

23   work with each other to do that before we just prematurely

24   say let's kick the can down the road a year because we think

25   it might be hard work.

1           MR. TUTEUR:  Your Honor, could I just speak to that

2    because there is one issue that has not been put out, and I

3    don't know whether Your Honor has had the opportunity to look

4    at their responses -- there is no reason for you -- to the

5    motion to dismiss.

6           THE COURT:  Not yet, no.

7           MR. TUTEUR:  But I don't mean to characterize it,

8    but I think it is safe to say that on the one hand they argue

9    that they shouldn't be held to a strict 9(b) standard because

10   all of the information is purportedly in the hands of these

11   co-conspirators, and they have been secret about it.  And

12   then they say, you should give us, Your Honor, a whole lot of

13   discovery, so we should have the opportunity to dig down and

14   justify the particularity requirements.

15          Both of their oppositions speak expressly to

16   extensive, what we would refer to on the Defense side as

17   fishing expeditions they will say is legitimate discovery.

18   But that is right in their briefs that they intend to take

19   discovery of material that they don't actually have any

20   knowledge of.  They say we have the knowledge of.

21          And I think it is fair to say, I don't disagree

22   with Mr. Egdorf, whenever a Court has ordered me and my

23   clients to do something, we do everything we can do.  Of

24   course, we do.

25          THE COURT:  Sure.  Sure.

1          MR. TUTEUR:  I can foresee -- I hope it is not the

2     case, but I can see some serious proportionality and

3     relevance questions when there is discovery that apparently

4     wasn't supported in the complaint, and they want to dig down

5     and make their case where they can't make it now.

6          So I just anticipate a lot of motion practice on

7     that.  I don't think we are going to try to be difficult, but

8     I think there is going to be a real disagreement about what

9     it is you can go look for if you don't have any basis for

10    making those claims.

11         THE COURT:  Sure.

12         Mr. Jones?

13         MR. JONES:  Yeah.  The only thing I would add to

14    that, and Your Honor brought up the Local Rule about the fact

15    that we have pending motions to dismiss and go forward in

16    discovery all the time, definitely correct.  It is also

17    correct that once we have these trial settings, they do

18    become sacrosanct in this district, we all know that, once we

19    have the trial setting in place.  And he who needs to put the

20    trial setting off, we all know that is a tough thing to do.

21    Every lawyer who has practiced law in this Court knows that.

22         THE COURT:  Right.

23         MR. JONES:  I would just say this:  Particularly in

24    light of this where we have a case that is going to be

25    probably further defined -- I'm not predicting the Court's

 1    ruling, but it could get dismissed, it could not get

 2    dismissed, or it could not -- there is going to be a lot to

 3    happen in the next few moments to define discovery.

 4          THE COURT:  Correct.

 5          MR. JONES:  And I think that also cautions for why

 6    this case might need a longer time to trial.  And I just

 7    raise that issue with the Court.

 8          THE COURT:  Okay.

 9          MR. JONES:  And I do think we are better trying to

10    deal with it at the beginning than kicking the can down the

11    road because Lord knows what you can count on down the road

12    that might happen.

13          THE COURT:  I agree with that.

14          Well, let me -- here is what I -- unless there are

15    others who want to speak -- here is what I would suggest:  I

16    think it is -- I think it is a reasonable request.  I do

17    think it is somewhat of a complicated case.

18          I will tell you what our -- just by way of

19    background -- what our normal model schedule is for

20    non-patent cases.  It is somewhere about ten months.  I think

21    that is an attenuated, too short of a schedule for a case of

22    this side.

23          It is a little wonky because this scheduling

24    conference is actually a little bit late.  We would normally

25    have had this scheduling conference not in April but in

1    February.  But because February was so busy, I think you all

2    ended up in April.

3          Having said that, where we are currently setting

4    Texarkana things as distinguished from Tyler and Marshall

5    things, is February, April, June, and October.  We don't set

6    things in August.  We learned the hard way about that.  And

7    we don't set things in December.  We learned the hard way

8    about that, too.

9          But, basically, if you start in February and you go

10   all the way through the year, those are Texarkana months.  So

11   that leaves you with sort of a longer gap between June and

12   October for Texarkana.

13          I am telling you all that to say I think probably

14   the thing that makes the most sense is a very slight

15   extension from our model nine months to trial, essentially.

16          So I would suggest we move this to a June 2019

17   trial setting.  That gives you all on this side of the table

18   a four-month extension from what our model schedule is for a

19   non-patent case.

20          I certainly recognize it is not April 2020, which

21   is what you had asked for.  But I think, recognizing

22   Mr. Jones' point that it does get harder as you go along -- I

23   will tell you this:  I have and will move things when I think

24   the parties have done their dead level best to get the case

25   ready for trial, and it just can't be gotten ready for trial.

1          MR. LEE:  Sure.

2          THE COURT:  That happens.

3          If I -- if I'm satisfied that not everybody is

4    doing their dead level best and there is gamesmanship going

5    on, I will take a different view of it.  But if I think

6    people are cooperating and dealing with each in good faith

7    and we can't get the thing ready by June of '19, you know, we

8    will end up bumping it by a little bit to get it ready.

9          I don't think the way to do that is to put off all

10   of those initial disclosures.  I think we ought to get those

11   initial disclosures out there for both sides.  You all serve

12   whatever discovery you think you are entitled to.  The

13   Defendants will have an opportunity to object to the extent

14   there are, you know, questions about, going to the point that

15   you made, whether they are entitled to that discovery or not.

16         I can assure you if you all will let me know that

17   there are disputes, sooner rather than later, we will get

18   those issues teed up, either here or in person or on the

19   papers, and we will get rulings on them.  So we will do our

20   part not to drag anything out or to create problems down the

21   road.

22         So I think based on what you all have told me now,

23   we will move the trial setting to June of 2019.  As I said,

24   that's a -- that's a four-month extension over our model

25   schedule.  It is a two-month extension from what we have told

1   you, which would be April 29.

2           And you all go forward and try to get the discovery

3   done; and if we get to a point where you just can't do it and

4   everybody has been working together in good faith and it is

5   just not going to happen, you know, I'll -- I am more than

6   willing to look at that very seriously.

7           As I have said, I have moved a number of trials

8   under those circumstances, and I will again.

9           MS. DOAN:  Okay.

10          MR. EGDORF:  Your Honor, may I ask a question?

11          THE COURT:  Yes.

12          MR. EGDORF:  Is there a specific date in June that

13  we would have it, so we can -- because we will need to

14  reformulate the schedule we have agreed upon.

15          THE COURT:  You mean in terms of a trial setting?

16          MR. EGDORF:  Yes, sir.

17          THE COURT:  We will give you the date.

18          MR. LEE:  Final pretrial conference.

19          THE COURT:  We will give you -- yeah, we will give

20  you a date for a final pretrial conference.  And we will

21  provide that.  Ms. Munshi is the law clerk on the case.  And

22  we will provide that to you within the next day or two.

23          Then after that, Judge, do you want us to go back

24  and reformulate the proposed schedule --

25          THE COURT:  That's exactly --

1     MR. LEE:  -- and submit it.

2          THE COURT:  -- what I want you to do.

3          MR. EGDORF:  And I think other than the trial date,

4     we agree on almost everything else, didn't we, on the

5     schedule?

6          MR. LEE:  The only --

7          MR. EGDORF:  A question was about the document

8     production; but in light of the kicking two months, maybe we

9     can fix that pretty easily.

10         MS. DOAN:  I don't think we can produce the

11    document -- they wanted us to have a final document

12    production deadline early, Your Honor.  I just don't think

13    that is going to be able to physically --

14         THE COURT:  I didn't know about that dispute, so

15    you will have to tell me about it.

16         MR. LEE:  Judge, we had requested -- under the

17    order that Your Honor sent out, there was a deadline for

18    document production of December of 2018.

19         THE COURT:  Okay.

20         MR. LEE:  And in order to fully prepare for

21    depositions, we had requested that it be bumped back to

22    October of 2018.

23         THE COURT:  Okay.

24         MR. LEE:  And, you know, what I would suggest is

25    that we try and work that out.  But it is -- it is a

```
 1    two-month time frame.  And then you have got an expert
 2    deadline that would come shortly thereafter, so we wanted to
 3    be able to have --
 4              THE COURT:  Here is what I would suggest, we have
 5    got a number of discovery things.  Let's work through those
 6    and see what we can resolve.  My guess is you all are not
 7    going to get out of here without another meet-and-confer
 8    requirement.
 9              Mr. Jones is very familiar with those over the last
10    month.  And so I am going to suggest that you all meet and
11    confer on that issue, as well as more than likely other
12    issues before we finish this afternoon.
13              And then I will ask -- as I said, Ms. Munshi will
14    give you a date and you all can recalculate the scheduling
15    order based on that.  And I will ask you to get that proposed
16    new schedule back to us, say, a week from today; is that
17    okay?
18              MR. EGDORF:  That won't be a problem.
19              THE COURT:  Seven days from today.
20              MR. EGDORF:  Other than the document date, I think
21    we have agreed with everything else on the dates, so we
22    should be fine I would think.
23              THE COURT:  Okay.  The normal rule on 30 and 45
24    days, as far as I am concerned, I don't know if y'all have
25    reached some agreement otherwise.
```

```
 1              MR. EGDORF:  We did.

 2              MS. DOAN:  We reached an agreement.

 3              THE COURT:  You do have another agreement?

 4              MS. DOAN:  We do.

 5              THE COURT:  Okay.  All right.  So whatever you all

 6    have worked out, is fine with me; but why don't you build in

 7    that day on your schedule --

 8              MR. EGDORF:  We will.

 9              THE COURT:  -- just so we will know what it is.

10              MR. EGDORF:  Thank you, Your Honor.

11              THE COURT:  Trial length, I mean, I know what you

12    all had said about that, and I think that is one of the

13    things that we will just figure that out when we get there.

14    I mean, if it takes 30 days to try the case, we will figure

15    out a way to try the case in 30 days.

16              I mean, you know, if it takes less than that -- I

17    mean, whatever I think is necessary to meet the needs of the

18    case and to fairly allow the parties to put on their cases,

19    we will get you.  But I just think we are way too far out to

20    know what that is going to be.  We have tried mighty

21    complicated cases in two weeks.

22              MS. DOAN:  We agree with that assessment.  If we

23    are all here in the next 15 months, then it may be different.

24    If part of us aren't, it would be adjusted.

25              THE COURT:  So it could be totally agreement.
```

| | |
|---|---|
| 1 | MS. DOAN:  We completely agree with your |
| 2 | assessment. |
| 3 | MR. EGDORF:  Do you break out the clock, Judge? |
| 4 | THE COURT:  We break out the clock every time. |
| 5 | MR. EGDORF:  I was trying to see -- I remember |
| 6 | Judge Folsom (makes a noise) -- |
| 7 | THE COURT:  We don't used a chess clock, but we are |
| 8 | keeping track. |
| 9 | MR. JONES:  Down to the seconds. |
| 10 | THE COURT:  Down to the seconds.  And we deduct |
| 11 | argument time.  I learned that lesson the hard way, too.  If |
| 12 | you lose at the sidebar, it is coming out of your time. |
| 13 | MR. EGDORF:  Don't filibuster. |
| 14 | THE COURT:  All right.  So good resolution on that. |
| 15 | You all had this sort of disagreement about a joint exhibit |
| 16 | list -- |
| 17 | MS. DOAN:  We visited further about that, Your |
| 18 | Honor. |
| 19 | THE COURT:  Yes. |
| 20 | MS. DOAN:  I think we are in agreement that going |
| 21 | through discovery, if we could keep a sequential set rather |
| 22 | than remarking the same exhibit in every single deposition, |
| 23 | that would be advisable.  Then when we come back to having |
| 24 | trial exhibits, we know your rule is 250 per side. |
| 25 | Obviously, the Defendants may, depending on many |

```
 1   Defendants there are -- if there is one Defendant left, that
 2   is probably not going to be an issue.  If there is 16 of us
 3   and we are all sort of disparate, and then we will raise it
 4   at the time --
 5              THE COURT:  When we get there --
 6              MS. DOAN:  We wanted to put the Court on notice
 7   that that could be an issue for the Defendants.
 8              MR. EGDORF:  That's where we were, Judge --
 9              THE COURT:  That's fine.
10              MR. EGDORF:  -- it seemed a little too early to
11   fuss about it.
12              MR. LEE:  Same with the motion in limine.
13              THE COURT:  Same thing on the motion in limine, I
14   think those are a little premature.  If we get to a point
15   where we need additional motion in limine --
16              MS. DOAN:  We agree we will move for relief --
17              THE COURT:  -- yeah, that's -- y'all can raise
18   whatever you need to at the appropriate time.
19              Let's see, hours of deposition time.  Let me hear
20   from you all about that.
21              MR. EGDORF:  If I could because Counsel kind of
22   ventured into this a little bit when she was talking earlier.
23              So what came up is what Counsel is referring to a
24   little bit was, we are going to want to depose these doctors.
25   And I don't have any doubt or fuss they can depose a doctor.
```

1  Maybe they need to depose two doctors of these patients.

2          Unfortunately, these patients don't have just one

3  doctor or two doctors.  Some of them have been treated for

4  years, different doctors, trying to find a doctor, trying to

5  find insurance, and all those kinds of things.

6          So the original proposal we had from the Defendants

7  was, we have a right to depose every single doctor that any

8  patients -- these Plaintiffs have seen, and we get seven

9  hours with each one of them.  Well, we are not going to do

10  2025 for a trial date if we do that.

11          So, you know, so what we suggested was we ought to

12  just have an hour limit to depositions.  If they want to

13  depose 200 doctors and do them for 20 minutes, then sobeit.

14  But, you know, otherwise we are going to have unlimited

15  depositions until the end of time in this case if we don't

16  have some kind of cap on what each side can do.

17          Defendants said, well, we want to depose all of the

18  doctors, and we want to have an hour limit for other third

19  parties.  Well, that kind of -- you know, that is the baby in

20  the bath water.  That doesn't really solve the problem.

21          So we just put out a proposal and said -- I forgot

22  now, did we do 100 --

23          MR. LEE:  We did 100 hours.

24          MR. EGDORF:  100 hours.  Everybody can do their

25  third-party depos including doctors in 100 hours.  It think

1  they say 75 hours for third parties plus unlimited for the

2  doctors.  So I apologize, I think I'm starting to get

3  redundant now, Judge.

4       But we think there needs to be some kind of cap.

5  In my experience, you know, hours is the best way to do it.

6  And you have just got to economize and pick which depos you

7  want, and you have got to make them short and sweet.  I

8  certainly can't fathom needing to depose a treating physician

9  for seven hours.  So -- but anyway that is where we are on

10 the depositions.

11      MR. LEE:  Could I add one more thing to that Judge?

12 I think we said in the papers, obviously, if we hit that

13 100-hour limit or whatever limit you decide to impose, we are

14 not going to be unreasonable in coming back to the Court and

15 asking for some additional time if it is necessary.

16      MS. DOAN:  So the problem is -- and I agree with

17 Mr. Lee -- the only problem with that is that setting at 100

18 hours is woefully short.  There is 23 Plaintiffs.  I don't

19 know anybody in discussions saying we are going to be seven

20 hours for any doctor because we have never done that even in

21 personal injury cases before.

22      If we need to have -- let's say there is a common

23 doctor amongst -- we don't have any of the disclosure on any

24 of these Plaintiffs.

25      THE COURT:  Sure.

1          MR. DOAN:  So say there is a common doctor on like

2     10 of these, that deposition may need to go longer than a

3     deposition of another doctor.  But to set it at you can't

4     have more than four hours of treating physician testimony,

5     and say there are three depositions you want to take of a

6     particular Plaintiff given whatever their claims are which

7     may need to be detailed more in the next pleading, but that

8     is putting on false limits on what they would be for the

9     doctors.

10         We don't necessarily want to have unlimited hours

11    either.  So maybe 70 -- 70 hours for non-treating physicians

12    and then 200 hours for treating physicians with leave to come

13    back if we have been efficient and come back and need

14    additional more time.  We don't intend to be inefficient.  We

15    are not going to send "first years" in there to spend -- we

16    can't afford -- we don't want to have this case grow into

17    that type of case where you are spending seven --

18         THE COURT:  Here is what I would ask, Mr. Egdorf,

19    do you have any idea when you all will disclose total number

20    of treating physicians out there and whether there is any

21    overlap?  Is that going to be --

22         MR. EGDORF:  Yeah, I mean, in accordance with all

23    of the timing that we have, we will certainly do that and not

24    hide the ball on any of that, as fast as we can.

25         I do think I need to add one other thing though.

1    The Defendants specifically asked that I limit myself to how

2    many depositions I can take of their folks.  I am basically

3    allowed under our agreement to take one corporate rep and two

4    more witnesses, so, I mean, the notion they get to depose a

5    whole slew of folks for a Plaintiff and I get to ask three

6    witnesses from Blue Cross questions, there is --

7              THE COURT:  Let me suggest this:  It sounds like

8    you all have some side agreement that I am not aware of on

9    other witnesses, so this is one of those issues I'm going to

10   ask you all to see if you can't pound out an agreement on and

11   see if there is some room for negotiation one way or the

12   other.

13             The Defendants are going to know a whole lot more

14   about how much this is really going to be an issue after the

15   treating physicians are disclosed in 30 days.  And I think

16   that would fall under the initial disclosures, you are going

17   to know that in 30 days.

18             MR. LEE:  Right.

19             THE COURT:  And you all try in the next seven days

20   to reach an agreement and resolve this.  If you can't, let me

21   know that; and then I will make a determination based on, you

22   know, the parties' proposals.

23             MS. DOAN:  Okay.

24             THE COURT:  And I am also happy to hear any further

25   briefing once those disclosures are made, too, so --

1          MR. EGDORF:  Sure.

2          THE COURT:  -- let me suggest that on that.

3          On the expert witnesses, I know our model order, of

4    course, is two per side.  There is not much of a difference.

5    I think Plaintiffs have asked for four.  The Defendants have

6    asked for five.

7          MR. EGDORF:  That's not correct.

8          THE COURT:  Not correct, okay.

9          MR. EGDORF:  So we agree to each side would get

10   four, but then the Defendant said we want to reserve the

11   right for each party to add one additional expert.  So you

12   are suddenly saying the Defendants say they want to have as

13   many as 20, and you are saying I guess theoretically I could

14   add an expert for every Plaintiff, which would be 27.  I am

15   pretty sure --

16         THE COURT:  No.

17         MR. EGDORF:  -- the Court is not interested in us

18   having 50 experts in this case.

19         THE COURT:  I am pretty sure you are right about

20   that.

21         MR. EGDORF:  I am not interested in having -- I am

22   not going to hire 27 regardless, but I certainly don't want

23   to have to deal with 20 from the other side.  So I think what

24   we proposed, look, if you have a real showing when we get to

25   that day that for some reason Anthem needs an extra expert

1  different and separate from the ones who are there, then we

2  will take that up, we will meet and confer like we ordinarily

3  would.  And if we don't agree, we can take that to you.

4       But in advance sort of agreeing you guys can have

5  up to 20 experts if you want to, that is not something I am

6  willing to agree to.

7       MS. DOAN:  So the problem with that is they are the

8  ones that decided to sue us all together.  If this case were

9  only, for example -- and I'm not picking on Blue Cross Blue

10 Shield, but say it was just the Blue Cross Blue Shield

11 entities together, then that is the type of case where the

12 local -- where the standard rule is there are three or four

13 per side because they have shared interests, although they

14 may be slightly different.

15      Here we have insurance companies that are highly

16 competitive.  We also have individual doctors, and then we

17 have associations as well.  So we are all sitting at this

18 really differently.  So to say this is the type of

19 cookie-cutter case that four or five experts per side might

20 be able to cut it, that is just not this type of case.  That

21 is why we asked for an additional one per party, if needed.

22      We don't know right now that they will be needed.

23 We don't know what their claims are necessarily.  We are sort

24 of at a loss.  That is why we briefed part of this on the

25 actual pleadings.  But we haven't seen what the Plaintiffs

1  are going to say to see if some of these can be joint.

2            Obviously, we want to make it as efficient as

3  possible.  The fastest way to lose a case is to put on one

4  too many witnesses obviously.  We are all very aware of that.

5  But to say that we can live with four or five per side is too

6  difficult when we are this disparate.

7            MR. EGDORF:  Well, again, she said "might," which

8  sounds to me like we should have it limited to four and then

9  if folks really need it later, we agree to it, or we take it

10 up to you.

11           MS. DOAN:  I think the problem is we are going to

12 need to start -- I mean, once we figure out who they are, we

13 would need to start looking at what kind of experts we need

14 then.

15           THE COURT:  My worry is really that it seems a

16 little early to decide this without knowing much in the way

17 of discovery.  And so what -- in the order -- yeah, I don't

18 have y'all's order.  What was the expert --

19           MR. EGDORF:  What was the date for the experts?

20           MR. LEE:  The expert deadline was --

21           MR. EGDORF:  That is probably going to get moved

22 two months, right, give or take?

23           THE COURT:  Uh-huh.

24           MR. LEE:  Expert deadline was --

25           MS. DOAN:  It is December the 4th, so it would be

1   February --

2           THE COURT:  February.

3           MS. DOAN:  -- 4th of 2019.  If we could come back

4   to the Court perhaps at the end of the summer and just make a

5   suggestion.

6           THE COURT:  I think that -- let's just do the four

7   now.  And then if you all get two or three months into this

8   and you realize that you absolutely need more experts, I am

9   happy to do that.  Do you want to just --

10          MS. DOAN:  Can we have five, and then be able to

11  come back?  We know we will need more than four.

12          MR. EGDORF:  I was happy with four.  If you want it

13  to be five, Judge, then it will be five.  Paper, scissors,

14  rock.

15          MS. DOAN:  Can we have five with leave to come back

16  for more, if needed?

17          MR. LEE:  With a much stricter view on their

18  request coming back.

19          MR. EGDORF:  Yeah, I was going to say.

20          THE COURT:  That's fair enough.  I will go for

21  that.

22          MR. EGDORF:  We have added 25 percent more experts

23  already.

24          THE COURT:  You have talked me into it.

25          All right.  Five, come back -- you want to put a --

```
 1    put a deadline in the scheduling order, if you want to, to

 2    cover that.

 3              MS. DOAN:  We can negotiate that.

 4              MR. EGDORF:  I am sorry?  To cover, like the

 5    revisiting question you mean?

 6              THE COURT:  Yes.  Put a deadline like August 1 or

 7    something like that.

 8              MR. EGDORF:  Yeah, I am fine with that.

 9              THE COURT:  That way everybody knows what the

10    drop-dead date is.

11              MR. TUTEUR:  I want to -- with all respect, we

12    don't want them too early because we -- what experts you may

13    need --

14              THE COURT:  You want the benefit of some discovery,

15    sure.

16              MR. TUTEUR:  Yeah.

17              THE COURT:  Well, y'all see if you can negotiate

18    that.  I just threw that August 1 date out.

19              MR. EGDORF:  By then we will circulate the

20    discovery, and it seems like you would have ruled it about

21    any fussing and you would have ruled on the motion to

22    dismiss, so we ought to have a pretty good idea -- and we

23    would have done our disclosures.

24              THE COURT:  Good.

25              MR. EGDORF:  So we ought to have a good idea.
```

1             THE COURT:  Okay.  Good.

2             I think I have made this point.  Your initial

3    disclosures just need to be made pursuant to the normal

4    rules.  Same thing with respect to -- well, I am happy to

5    hear any argument about the privilege logs if anybody wants

6    to address that.

7             MS. DOAN:  I think we are just focusing on where it

8    should fall on the schedule; but given you asked us for --

9    given us three additional months, we will be happy to build

10   that in.

11            MR. EGDORF:  I think we had agreement on it, Your

12   Honor.  The only so-called dispute was it was going to change

13   depending on the trial date.

14            MR. LEE:  Right.

15            MR. EGDORF:  So I actually -- Counsel can correct

16   me if I am wrong, I think we have covered everything we have

17   disagreed on at this point.

18            THE COURT:  Okay  Good.

19            MR. EGDORF:  We are able to work out most things.

20   Trial date was the linchpin issue.

21            THE COURT:  Good, good.

22            What else?

23            MR. DUNN:  Clarification?

24            THE COURT:  Yes, sir.

25            MR. DUNN:  I thought I heard an offer for a limit

44

1   of, at least for now, four years.  And I thought -- and I

2   just want to make sure it is clear that is where we are.

3              THE COURT:  That's what I understood.

4              MR. EGDORF:  That's what I threw out there for at

5   least the time being if everyone wanted to agree to that to

6   fix that question or that problem, so --

7              MR. LEE:  And maybe we should throw this out there

8   now.  Let's say we get discovery started and we decide to

9   serve interrogatories in the case, we would serve those

10  interrogatories, I would assume, as if there were no

11  limitations but; for the purposes of their initial responses,

12  we do agree -- would agree to a four-year limitation.

13             MR. EGDORF:  They can save some trees, and I

14  wouldn't have to object to each one.

15             MS. DOAN:  We'll probably object anyway, but then

16  we will do it anyway.

17             MR. EGDORF:  One general objection.  Sorry.

18             MR. LEE:  If the Court comes back and says, no, you

19  get more than that, then there won't be any kind of argument,

20  oh, well, you burned your interrogatories --

21             THE COURT:  Because they were too limited.

22             MS. DOAN:  We are not going to play that.

23             MR. JONES:  I like that argument.

24             MR. LEE:  I'm sure you do, Mike.

25             MS. DOAN:  Just before we close out, I just know

1  the Court has given us three months, and we are very

2  appreciative of that.

3         THE COURT:  Four months, I gave you four months.

4         MS. DOAN:  Okay.  April to June, okay, yes.  But

5  just doing the calculations with the number of depositions,

6  even just assuming everybody stays in the case, that is about

7  100 depositions.  There is 300 working days in the year.

8  That is just -- if we did one every three days -- then we

9  would -- it is just an overwhelming amount of fact discovery

10 in this case, so --

11        THE COURT:  Well, like I said --

12        MS. DOAN:  -- as generous as the Court is --

13        THE COURT:  -- I promise you if I am convinced

14 everybody is doing their dead level best to get the thing

15 ready -- and I know we all have lives and other cases and

16 other responsibilities, and I certainly recognize that -- but

17 if I am convinced everybody is doing their dead level best

18 within those sort of confines and the case can't be gotten

19 ready for trial, then we will end up bumping it a little bit.

20        You know, I am -- I can tell you what I really have

21 learned my lesson about is special settings because it mucks

22 up everything else.  But if we have to set the case specially

23 on some non-Texarkana month, we will reset the case, we will

24 do that.

25        So I just think it is a little preliminary.  You

1  may end up convincing me you are right if that is the way it

2  all plays out.  I just think it is a little preliminary to do

3  that.  You all start with the discovery.  Let's get these

4  dispositive motions fully briefed.  Maybe the case will be

5  narrowed somewhat.  And go ahead and get your discovery

6  started, and then, you know, see where we end up.

7          The one thing I would strongly encourage you to do

8  is, to the extent you make agreements that we need to know

9  of, file a notice, let us know what you have agreed to.  If

10  you have agreed that the Plaintiff doesn't have to respond to

11  the motions to dismiss until X date, let us know that because

12  we are watching.

13          And the second thing I would suggest to you is

14  don't let things fester.  If there is a problem or there is a

15  dispute about some issue, bring that to our attention earlier

16  rather than later.  And, you know, if it is something -- I

17  mean, not everything is an emergency motion, but there are

18  some emergency motions.

19          As soon as you become aware that something is a

20  problem, let us know that.  It doesn't need to be filed the

21  night before the deposition.  Let us know if it is a problem

22  sooner rather than later, and we will get it teed up.

23          We may expedite briefing.  It doesn't have to go

24  through the full briefing cycle for something to get teed up

25  and us to rule on.  If something gets filed and it's

1  important and there is a deposition next week, we will

2  expedite briefing and get it ruled on.

3          So I fully expect we are not going to have any

4  discovery fights in this case, so it is never going to be an

5  issue.  But I say that every time, so --

6          MR. EGDORF:  We can always hope.

7          THE COURT:  We can always hope.

8          MR. EGDORF:  One day there will be one.

9          THE COURT:  But, really, if this is -- you know,

10 not everything, as I said, has to be an emergency, not

11 everything has to be a fight.  But where there are truly

12 serious disagreements in good faith and you all just can't

13 work it out, let us know that.

14         I am, I guess, a Luddite in some respects.  I don't

15 like telephone hearings.  And so I prefer not to do that.  It

16 is sometimes necessary, and I will do it.  But I think the

17 better thing is to let us know there is a dispute either by

18 filing a motion or sending us an email, and we will figure

19 out a way to get it briefed as quickly as we can get it

20 briefed, and we will get it ruled on.  So we are here to

21 serve you all and help you all get the case ready.

22         MR. EGDORF:  I certainly represent we will do

23 everything we can to see if we can resolve things amongst

24 ourselves before we take your time, Judge.

25         THE COURT:  Good.

48

1          MR. EGDORF:  Which is, I think, what you would

2     expect us to do.

3               THE COURT:  I would, I would.

4               What else?  Anything?

5               MR. LEE:  Nothing from us.

6               MR. EGDORF:  Nothing from the Plaintiff.

7               MS. DOAN:  Thank you.

8               THE COURT:  Okay.  Thanks.  Safe travels,

9     everybody.

10              (Hearing adjourned.)

11

12                       CERTIFICATION

13

14          I HEREBY CERTIFY that the foregoing is a true

15     and correct transcript from the stenographic notes of the

16     proceedings in the above-entitled matter to the best of my

17     ability.

18

19     /s/ Shea Sloan_____                    April 27, 2018
       SHEA SLOAN, CSR, RPR
20     Official Court Reporter
       State of Texas No.:  3081
21     Expiration Date:  12/31/18

22

23

24

25