**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| LISA TORREY, KATHRYN KOCUREK Individually and on behalf of the Estate of J. DAVID KOCUREK, PH.D., LANA BARNES Individually and on behalf of the Estate of AL BARNES, AMY HANNEKEN, JANE POWELL, CAROL FISCH, CHRISTOPHER VALERIO, STEVEN WARD, RANDY SYKES, BRIENNA REED, ROSETTA FULLER, ADRIANA MONTEIRO MOREIRA, JESSICA MCKINNIE, KRISTINE WOODARD, GAIL MEADS, DR. MICHAEL FUNDENBERGER, GAYLE CLARKE, ALLISON LYNN CARUANA, CHLOE LOHMEYER, MAX SHINDLER, TAWNYA DAWN SMITH, Individually and as Next Friend of MONET PITRE, MIKE PEACHER, Individually and as Next Friend of ASHLEIGH PEACHER, ALARIE BOWERMAN, Individually and as Next Friend of ELISA BOWERMAN, EMORY BOWERMAN, and ANAIS BOWERMAN, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 5:17-cv-00190-RWS |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | |
| INFECTIOUS DISEASES SOCIETY OF AMERICA, BLUE CROSS AND BLUE SHIELD ASSOCIATION, ANTHEM, INC., BLUE CROSS AND BLUE SHIELD OF TEXAS, AETNA INC., CIGNA CORPORATION, KAISER PERMANENTE, INC., UNITED HEALTHCARE SERVICES, INC., UNITEDHEALTH GROUP INCORPORATED, DR. GARY P. WORMSER, DR. RAYMOND J. DATTWYLER, DR. EUGENE SHAPIRO, DR. JOHN J. HALPERIN, DR. ROBERT B. NADELMAN, DR. LEONARD SIGAL, AND DR. ALLEN STEERE, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**<u>DEFENDANTS INFECTIOUS DISEASES SOCIETY OF AMERICA, DR. GARY P.
WORMSER, DR. RAYMOND J. DATTWYLER, DR. EUGENE SHAPIRO, DR. JOHN J.
HALPERIN, DR. ROBERT B. NADELMAN, DR. LEONARD SIGAL, AND DR. ALLEN
STEERE'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

I.     Plaintiffs Have Not Remedied the Defects in their RICO and Antitrust Claims................ 2

       a.     Plaintiffs Ignore the *Twombly* Standard.................................................................. 2

       b.     Plaintiffs' New Allegations Are False and Irrelevant and Cannot Be
             Considered Part of the Pleadings. ........................................................................ 3

       c.     Plaintiffs' RICO Claims Fail to Meet *Twombly's* Plausibility Standard. ............... 5

       d.     Plaintiffs Have Not Pled Plausible Antitrust Claims. ............................................ 7

II.    Jurisdictional Discovery Would Serve No Purpose Because Plaintiffs Have Not Made
      a Preliminary Showing that the Court Has Personal Jurisdiction Over the Doctors. ....... 10

       a.     Specific Jurisdiction is Not Available Because Plaintiffs' Claims Do Not
             Arise Out of Any Texas Contacts. ........................................................................ 10

       b.     Plaintiffs Fail to Show that the "Ends of Justice" Require the Doctors to
             Appear in Texas. ................................................................................................ 13

       c.     Jurisdictional Discovery Would Serve No Purpose............................................. 13

CONCLUSION………………………………………………………………………………..15

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Abraham & Veneklasen Joint Venture v. Am. Quarter Horse Ass'n*,
  776 F.3d 321 (5th Cir. 2015) ....................................................9

*Ancar v. Sara Plasma, Inc.*,
  964 F.2d 465 (5th Cir. 1992) ....................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................1, 2, 3, 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................... *passim*

*Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*,
  748 F.3d 631 (5th Cir. 2014) ....................................................3

*Conley v. Gibson*,
  355 U.S. 41 (1957)....................................................2

*Consol. Metal Prods., Inc. v. Am. Petroleum Inst.*,
  846 F.2d 284 (5th Cir. 1988) ....................................................7

*Davis v. Coopers & Lybrand*,
  787 F. Supp. 787 (N.D. Ill. 1992) ....................................................6

*DM Research, Inc. v. Coll. of Am. Pathologists*,
  170 F.3d 53 (1st Cir. 1999)....................................................7, 8, 9

*Fielding v. Hubert Burda Media, Inc.*,
  415 F.3d 419 (5th Cir. 2005) ....................................................13

*Golden Bridge Tech., Inc. v. Motorola, Inc.*,
  547 F.3d 266 (5th Cir. 2008) ....................................................7

*Hawkins v. Upjohn Co.*,
  890 F. Supp. 601 (E.D. Tex. 1994)....................................................11

*Hazim v. Schiel & Denver Book Publishers*,
  647 F. App'x 455 (5th Cir. 2016) ....................................................13

*Holt Oil & Gas Corp. v. Harvey*,
  801 F.2d 773 (5th Cir. 1986) ....................................................11

*L.G. Motorsports, Inc. v. NGMCO, Inc.*,
  No. 4:11CV112, 2012 WL 718594 (E.D. Tex. Mar. 6, 2012) .................................................11

*Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*,
  No. 12-223-BAJ-SCR, 2013 WL 12096500 (M.D. La. Mar. 25, 2013), *aff'd in
  part*, 751 F.3d 368 (5th Cir. 2014) ........................................................................................7

*Midwest Gas Servs., Inc. v. Indiana Gas Co.*,
  317 F.3d 703 (7th Cir. 2003) ................................................................................................6

*Mills v. Polar Molecular Corp.*,
  12 F.3d 1170 (2d Cir. 1993) ..................................................................................................6

*Monkton Ins. Servs., Ltd. v. Ritter*,
  768 F.3d 429 (5th Cir. 2014) ...............................................................................................14

*Nat'l Sur. Corp. v. Ferguson Enters., Inc.*,
  No. 3:13–CV–2045–M, 2014 WL 5472436 (N.D. Tex. Oct. 29, 2014) ................................14

*Nelson v. Monroe Reg'l Med. Ctr.*,
  925 F.2d 1555 (7th Cir. 1991) ...............................................................................................6

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
  253 F.3d 865 (5th Cir. 2001) ..........................................................................................11, 12

*Poller v. Columbia Broad. Sys., Inc.*,
  368 U.S. 464 (1962) ...............................................................................................................6

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*,
  940 F. Supp. 2d 367 (E.D. La. 2013) ..................................................................................10

*PT United Can Co. Ltd. v. Crown Cork & Seal Co.*,
  138 F.3d 65 (2d Cir. 1998) ..................................................................................................13

*Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*,
  711 F.2d 989 (11th Cir. 1983) ...............................................................................................6

*Revell v. Lidov*,
  317 F.3d 467 (5th Cir. 2002) ...............................................................................................12

*Sinclair v. StudioCanal, S.A.*,
  709 F. Supp. 2d 496 (E.D. La. 2010) ..................................................................................14

*Stuart v. Spademan*,
  772 F. 2d 1185 (5th Cir. 1985) ............................................................................................11

*Tassio v. Onemain Fin., Inc.*,
  No. 4:15-CV-00484, 2016 WL 7799626 (E.D. Tex. Oct. 28, 2016) ........................................5

## Statutes and Codes

United States Code,
    Title 18, section 1961(5)........................................................................................................6
    Title 18, section 1965(b).....................................................................................................12

## Rules and Regulations

Federal Rules of Civil Procedure
    Rule 9(b) ............................................................................................................................6
    Rule 12(b)(2).....................................................................................................................10
    Rule 12(b)(6).......................................................................................................................3

## INTRODUCTION[1]

In their Opposition,[2] Plaintiffs ignore binding U.S. Supreme Court precedent that they are required to "state a claim to relief that is *plausible on its face*" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added).  Plaintiffs instead cite to outdated case law in order to move to discovery to attempt to fill in the many fatal holes in their claims.  Their problem is that Supreme Court law now blocks such fishing expeditions.

Rather than address the legal deficiencies of their claims, Plaintiffs try to distract the Court with exaggerated, irrelevant, and just plain false stories about Lyme disease that are in fact contradicted by the documents they cite in support.  Plaintiffs flood their brief with dubious online sources without any context and new allegations that were not in their Complaint.  These assertions are not part of the pleadings and should not be considered.

Plaintiffs also fall well short of meeting their burden to show why the Doctors[3] should be subject to jurisdiction in this Court.  Plaintiffs ignore the applicable law and the Doctors' declarations showing their contacts with Texas are few, sporadic, and completely unrelated to Plaintiffs' claims.  Plaintiffs merely recite boilerplate law, which does nothing to show why it would comport with due process for *this* Court to require *these* individuals to appear here.

---

[1]  All references used herein are the same as in the Motion (Dkt. 40) ("Mot.").  IDSA and the Doctors incorporate by reference, as if set forth fully herein, the legal standards and arguments set forth in the Insurance Defendants' Reply in Support of their Motion to Dismiss, filed concurrently.

[2]  Plaintiffs' Response to IDSA and Panelists' Motion to Dismiss Plaintiffs' Complaint (the "Opp.") (Dkt. 59), filed on April 17, 2018.

[3]  Dr. Robert B. Nadelman, who was originally a defendant and a party to this Motion, passed away on March 6, 2018, after the Motion was filed.  Dr. Nadelman's counsel notified Plaintiffs' counsel of Dr. Nadelman's death by telephone on March 9, 2018, and by follow-up email on March 15, 2018.  As of this date, Plaintiffs have not filed a motion for substitution.

1

**ARGUMENT**

**I.      Plaintiffs Have Not Remedied the Defects in their RICO and Antitrust Claims.**

The Motion should be granted because Plaintiffs have offered nothing to show that they have stated plausible RICO or antitrust claims.  Plaintiffs shamelessly misstate law and facts, regurgitate grievances from online Lyme disease advocacy groups, and cite dozens of documents outside the pleadings, which cannot be considered on a motion to dismiss.  Nothing Plaintiffs present shows that Plaintiffs have stated plausible legal claims.

**a.  Plaintiffs Ignore the *Twombly* Standard.**

Plaintiffs proclaim that a mere "outline" or "inference" of misconduct is sufficient to survive a motion to dismiss and that they should be permitted to engage in expansive discovery to fill in the gaps because "the information required to establish specificity is in the exclusive control of the IDSA and IDSA Panelists."  Opp. 15, 17.  Quite remarkably, Plaintiffs rely on *Conley v. Gibson*, which is no longer good law after *Bell Atlantic v. Twombly*.  *See* Opp. 25 (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *Iqbal*, 556 U.S. at 670 ("*Twombly* retired the *Conley* no-set-of-facts test[.]").

 As such, it is not surprising that Plaintiffs ignore *Twombly* and *Iqbal* and the requirement that they must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible on its face*.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570) (emphasis added).  An "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient; a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555-56).  It is particularly important to require plaintiffs to plead a plausible claim in antitrust cases, to "avoid the potentially enormous expense of discovery in cases with no reasonably

founded hope that the discovery process will reveal relevant evidence" to support a claim. *Twombly*, 550 U.S. at 558-60 (citations and quotation marks omitted).

Plaintiffs' Complaint comes no closer to stating valid claims than the complaint dismissed in *Twombly*. It alleges no specific agreement entered into by IDSA or the Doctors, no meetings or communications among Defendants, no specific payments made to IDSA or the Doctors, and no specific wrongful conduct by IDSA or the Doctors since the 2006 Guidelines were issued.

Plaintiffs lack facts because their theory defies logic. There is no rational reason that IDSA, a global organization comprised of medical professionals dedicated to advancing patient care, and the Doctors, renowned physicians employed by some of the most respected medical institutions in the country, would want to spread false medical theories, craft incorrect guidelines based on supposedly false research, and jeopardize their longstanding reputations, all in an effort to *reduce* insurance reimbursements to themselves and other doctors. Plaintiffs allege a conspiracy that runs contrary to IDSA and the Doctors' economic incentives. Because the Complaint is not "plausible on its face," it must be dismissed. *See Iqbal*, 556 U.S. at 678 (citation omitted).

### b. Plaintiffs' New Allegations Are False and Irrelevant and Cannot Be Considered Part of the Pleadings.

Plaintiffs haphazardly toss out new allegations concerning IDSA and the Doctors that are not in their Complaint and that, as such, cannot be considered. *See Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) ("On a Rule 12(b)(6) motion, a district court generally must limit itself to the contents of the pleadings, including attachments thereto.") (internal quotation marks omitted). The new material may be considered only if it is "referred to in the pleadings and [is] central to a plaintiff's claims." *Id.*

Here Plaintiffs' new material – various documents, websites, news articles, and even a deposition transcript – was not referred to in the Complaint and is not "central" to Plaintiffs'

claims, so none of it can be considered at this stage.  Nonetheless, many of Plaintiffs' allegations are so patently false that IDSA and the Doctors are compelled to respond.

For example, Plaintiffs assert that IDSA and the Doctors "state unequivocally that **all** Lyme disease patients are cured by a short course (14 to 28 days) of antibiotic treatment" and that the treatment of Lyme disease "involves no treatment failure[.]"  Opp. 5 (emphasis in original).  In fact, the Guidelines discuss treatment failure and note that some patients do not respond to antibiotics.[4]

Plaintiffs assert that IDSA and the Doctors "implemented a rule excluding from the IDSA Lyme disease [Guidelines] panel any physician who earned more than $10,000 per year from treating Lyme disease."  Opp. 2; *see also* Compl. ¶ 73.  However, the document they cite shows that the rule was implemented not by IDSA when it convened panels to write the 2000 and 2006 Lyme disease Guidelines but by the *independent review panel* that assessed the 2006 IDSA Lyme disease Guidelines as part of IDSA's settlement with the Connecticut Attorney General.  *See* document cited at Opp., n. 2.

In some instances, Plaintiffs even contradict themselves, demonstrating just how flimsy their allegations are.  The Complaint is based on the premise that the Guidelines are "arbitrary" and "improper."  *See, e.g.*, Compl. ¶¶ 48, 60, 95.  Yet Plaintiffs now assert that the Guidelines "should remain in place" and say they *agree* with the independent review panel's conclusion in its 2010 report that the 2006 IDSA Lyme disease Guidelines are based on "sound medical/scientific evidence."  Opp. 3.  Plaintiffs also state in their introduction that the Doctors are "researchers who

---

[4]  *See* 2006 IDSA Guidelines, cited at Opp. n. 15, at p. 1104 ("Less than 10% of individuals do not respond to antiobiotic therapy, as evidenced by the presence of objective clinical manifestations . . . Inadequately recognized CNS infection at the time of institution of antibiotic therapy may be the explanation for antibiotic failures in some circumstances.").

4

do not treat Lyme disease."  *See* Opp. 2.  But in their effort to salvage their antitrust claim, Plaintiffs

say the opposite.  *See* Opp. 31 ("The IDSA and the IDSA Panelists claim they cannot monopolize

the Lyme disease treatment market because they are not engaged in the treatment or diagnosis of

Lyme disease.  Even if this were true, which it is not . . . .").

We could go on and on.  Plaintiffs' new false and misleading assertions – not part of the

Complaint – must be ignored.

### c.   Plaintiffs' RICO Claims Fail to Meet *Twombly's* Plausibility Standard.

Plaintiffs offer nothing more than conclusory legal allegations in support of their RICO

claims.  *See* Opp. 18-25.  For example, Plaintiffs state that the Complaint "clearly establishes all

of the Defendants have a common purpose: to prevent the treatment of chronic Lyme disease."

Opp. 19.  Plaintiffs posit that Defendants "all have this common purpose in order to make money"

and that "it is clear there are sufficient allegations that the IDSA and the IDSA Panelists work

together with the Insurance Defendants to create and enforce the restrictive guidelines." Opp. 19-

20.  These conclusory statements are nowhere near sufficient to state a plausible claim.  *See*

*Twombly*, 550 U.S. at 564 ("a few stray statements [spoke] directly of agreement, on fair reading

these [were] merely legal conclusions resting on the prior allegations."); *Tassio v. Onemain Fin.,*

*Inc.*, No. 4:15-CV-00484, 2016 WL 7799626, at *5 (E.D. Tex. Oct. 28, 2016) (dismissing RICO

claims because the complaint did not "contain sufficient factual matter to state a claim to relief

that is plausible on its face") (citations omitted).

Plaintiffs say the Complaint "sets forth how the IDSA and the IDSA Panelists are paid by

the Insurance Companies to act as experts to support the Insurance Defendants repeatedly denying

coverage for chronic Lyme disease."  Opp. 15.  Yet Plaintiffs still have not identified which

Insurance Defendants sent payments to which Doctors or to IDSA, when such payments were

made,[5] the purpose of the payments, or the amounts.  Plaintiffs ask the Court to give them a pass

on complying with pleading standards so that they can conduct broad, extremely burdensome

discovery:  they argue that "Rule 9(b)'s particularity requirement should be relaxed" and that they

should be permitted to conduct discovery because "the information required to establish specificity

is in the exclusive control of the IDSA and IDSA Panelists." Opp. 15.  They say it "is impossible

for Plaintiffs to have exact knowledge of every detail of the conspiracy until Plaintiffs conduct

discovery[.]"  Opp. 24.   However, Plaintiffs must allege a plausible claim *on its face* prior to

conducting discovery.  *See Twombly*, 550 U.S. at 558-59.[6]  Plaintiffs' inability to even allege two

predicate acts of racketeering activity – a prerequisite – dooms their RICO claims.  *See* 18 U.S.C.

§ 1961(5).

---

[5]  Plaintiffs say that the Complaint sets forth the dates of these payments (Opp. 23).  But Plaintiffs inconsistently allege that the payments occurred between 1995 and 2017 (Compl. ¶ 56) and between 2006 and 2017 (*id.* ¶ 77).  On the face of the RICO statute, these allegations are insufficient, because Plaintiffs must allege two predicate acts within ten years of each other. *See* 18 U.S.C. § 1961(5).

[6]  Instead of addressing *Iqbal* and *Twombly*, Plaintiffs rely heavily on outdated cases from the 1960s, 80s, and 90s.  These cases – many of which are from other circuits – are no help to Plaintiffs because the cases apply a pre-*Twombly* standard to assess the viability of antitrust or RICO claims.  *See, e.g.*, *Nelson v. Monroe Reg'l Med. Ctr.*, 925 F.2d 1555 (7th Cir. 1991) (cited at Opp. 14); *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464 (1962) (cited at Opp. 25, 26); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989 (11th Cir. 1983) (cited at Opp. 25); *Ancar v. Sara Plasma, Inc.*, 964 F.2d 465 (5th Cir. 1992) (cited at Opp. 25); *Midwest Gas Servs., Inc. v. Indiana Gas Co.*, 317 F.3d 703 (7th Cir. 2003) (cited at Opp. 27).

Other cases Plaintiffs cite actually support dismissal of Plaintiffs' claims.  *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993) (cited at Opp. 14, 15) (affirming dismissal of RICO claims because the plaintiffs had not alleged two predicate acts of mail or wire fraud with particularity in compliance with Federal Rule 9(b) because the "allegations of predicate mail and wire fraud acts [failed to] state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent"); *Davis v. Coopers & Lybrand*, 787 F. Supp. 787, 804-07 (N.D. Ill. 1992) (cited at Opp. 14, 15) (dismissing RICO claims for failure to adequately plead a pattern of continuous racketeering activity).

#### d.  Plaintiffs Have Not Pled Plausible Antitrust Claims.

Plaintiffs attempt to salvage their antitrust claims by pointing to assertions that IDSA and the Doctors "enforce the IDSA guidelines as if they are mandatory" (Opp. 28) and asserting that any action akin to "standard-setting" is *per se* illegal under the Sherman Act.  *See* Opp. 30 ("It is clear Plaintiffs' Complaint sets forth facts establishing the IDSA and the IDSA Panelists violated the standard-setting antitrust laws of Section One of the Sherman Act.").  Once again, Plaintiffs misstate the law and fail to explain how their antitrust theory is plausible.

It "has long been recognized that the establishment and monitoring of trade standards is a legitimate and beneficial function."  *Consol. Metal Prods., Inc. v. Am. Petroleum Inst.*, 846 F.2d 284, 294 (5th Cir. 1988); *Golden Bridge Tech., Inc. v. Motorola, Inc.*, 547 F.3d 266, 273 (5th Cir. 2008) (observing potential "procompetitive benefits" of such standards).  It is "axiomatic that a standard setting organization must exclude some products, and such exclusions are not themselves antitrust violations. To hold otherwise would stifle the beneficial functions of such organizations, as 'fear of treble damages and judicial second-guessing would discourage the establishment of useful industry standards.'"  *Golden Bridge*, 547 F.3d at 273 (quoting *Consol. Metal Prods.*, 846 F.2d at 294, 297); *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, No. 12-223-BAJ-SCR, 2013 WL 12096500, at *3 (M.D. La. Mar. 25, 2013) (the fact that athletic association's standards restricting use of particular baseball bats in collegiate baseball games resulted in plaintiff's products' exclusion was insufficient to state a Sherman Act § 1 claim), *aff'd in part*, 751 F.3d 368 (5th Cir. 2014).

*DM Research, Inc. v. College of American Pathologists*, 170 F.3d 53 (1st Cir. 1999), illustrates why Plaintiffs' antitrust claims fall short.  In that case, a national organization issued standards for clinical laboratory testing of reagents, which a medical association incorporated into its own guidelines.  *Id.* at 54.  Plaintiff alleged that the clinical guidelines were "scientifically

unjustified," that two members who wrote the standards had economic interests in the outcome, that defendants conspired to force industry members to comply with the standards, and that plaintiff's business had been harmed as a result.  *Id.* at 54, 58.  The district court dismissed the complaint for failure to state a Sherman Act claim, and the First Circuit affirmed because plaintiff's theory was implausible:

> [N]o antitrust lawyer could help but ask almost immediately *why* [the standard-setting organization] and the [medical organization] would conspire. It is easy enough to understand why two manufacturers might agree to charge above-market prices; if taken together they have market power, the agreement can increase their profits. . . . without more detail, it is highly implausible to suppose that the [medical organization] or its members have any reason to "agree" with [the standard-setting organization] to adopt a faulty standard whose main effect would be to raise costs for laboratories that found it cheaper to buy bottled reagent water than to make it on site.

*Id.* at 56 (emphasis in original).  The First Circuit agreed that the complaint was nothing more than general allegations and "epithets," without specific facts.  *Id.*  The court noted the practical reasons for requiring plaintiffs to allege concrete facts instead of conclusory allegations:

> [T]he price of entry, even to discovery, is for the plaintiff to allege a *factual* predicate concrete enough to warrant further proceedings, which may be costly and burdensome. Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition.

*Id.* at 55 (emphasis in original).[7]

So it is here.  It is just as implausible to suppose that IDSA and the Doctors "would have any reason to agree" with the Insurance Defendants to adopt false guidelines for Lyme disease treatment when the alleged conspiracy goes *against* IDSA's and the Doctors' economic interests. *See DM Research*, 170 F.3d at 57 ("improbability is ample reason for the court to demand

---

[7]  *DM Research,* decided before *Twombly,* was actually cited by the Supreme Court with approval in *Twombly* for helping to demonstrate the difference between conclusory and factual allegations.  *See Twombly*, 550 U.S. at 597, n.5 ("The border in *DM Research* was the line between the conclusory and the factual.  Here it lies between the factually neutral and the factually suggestive.  Each must be crossed to enter the realm of plausible liability.").

something more than mere conclusions as to conspiracy").  Plaintiffs allege no specific facts to show what IDSA or the Doctors did to "enforce" the Guidelines.  *See* Opp. 19.  Nor do Plaintiffs allege the Guidelines are false; to the contrary, Plaintiffs now say the Guidelines are based on "sound medical evidence" and "should remain in place."  Opp. 3.

At most, Plaintiffs allege that the Insurance Defendants (collectively, with no specific allegations about which insurance company did what) have reported doctors to medical boards for failing to abide by the Guidelines and that the Doctors "are then paid by the Insurance Defendants to testify against those doctors in front of the medical boards."  Compl. ¶¶ 79-91.  Even if this allegation were true, Plaintiffs have not alleged that IDSA, the Doctors, or the Insurance Defendants formed an agreement to engage in this conduct.  Nor have Plaintiffs alleged that the Doctors "dominated the decision making" on the IDSA Panels (indeed, the Doctors comprised less than half of the panel) or tried to influence the views of others on the panel to adopt false Guidelines.  Just as in *DM Research*, Plaintiffs' Complaint is nothing more than conclusory statements, without facts – a "danger sign" that Plaintiffs are "engaged in a fishing expedition." *DM Research*, 170 F.3d at 55.  Plaintiffs fail to provide any "additional facts to make [their] complaint concrete and plausible."  *Id.* at 56.

In addition, Plaintiffs still have not explained how IDSA could be considered part of the alleged "Lyme disease treatment market" in connection with their Section 2 claim when Plaintiffs do not and cannot allege that IDSA treats Lyme disease.  Yet again, Plaintiffs' own case demonstrates why dismissal is warranted.  *See* Opp. 31 (citing *Abraham & Veneklasen Joint Venture v. Am. Quarter Horse Ass'n*, 776 F.3d 321, 335 (5th Cir. 2015) (membership organization was not "engaged in breeding, racing, selling, or showing" horses so could not be considered part of market for elite horses).  Nor have Plaintiffs addressed how IDSA or the Doctors could possess

at least a 50% market share, as required to allege a Sherman Act § 2 claim.  *See In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, 940 F. Supp. 2d 367, 382 (E.D. La. 2013).

Plaintiffs have not stated viable antitrust claims, which should be dismissed.

## II.     Jurisdictional Discovery Would Serve No Purpose Because Plaintiffs Have Not Made a Preliminary Showing that the Court Has Personal Jurisdiction Over the Doctors.

Because Plaintiffs have not pled proper RICO or antitrust claims, their Complaint should be dismissed in its entirety.  Yet even if the RICO or antitrust claims survive, the Doctors should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction because not one lives, works, or owns property in Texas or conducted any work on the IDSA Lyme disease Guidelines in Texas.  *See* Mot. at 19-33.

Plaintiffs rely on the visits to Texas that most of the Doctors have made over the years, but these visits were sporadic, did not concern the matters alleged in the Complaint, and cannot support personal jurisdiction.  Plaintiffs argue that the Court has personal jurisdiction over the Doctors under RICO, but they do not show that the "end of justice" require that the Doctors appear in Texas.  Recognizing the weakness of these arguments, Plaintiffs request the opportunity to conduct jurisdictional discovery in a last-ditch effort to keep the Doctors in the case.

As outlined in the Motion, Plaintiffs have failed to meet their burden to make a *prima facie* showing of either specific jurisdiction or jurisdiction under RICO.  Therefore, jurisdictional discovery would serve no purpose.

### a.     Specific Jurisdiction is Not Available Because Plaintiffs' Claims Do Not Arise Out of Any Texas Contacts.

Plaintiffs assert that "it is clear there are sufficient contacts [with Texas] for this Court to have jurisdiction over the IDSA Panelists."  Opp. 8.  Plaintiffs do not attempt to argue that the Doctors' sporadic Texas visits rise to the level of "systematic and continuous" contacts, as needed

to establish general personal jurisdiction. *See Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986). Instead, Plaintiffs argue specific jurisdiction exists over the Doctors. *See* Opp. 7.

Yet this argument fails because Plaintiffs do not show that their claims arise from the Doctor's alleged Texas contacts. *See Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001) (citations omitted) (even though "jurisdictional allegations must be accepted as true . . . [e]stablishing a prima facie case still requires the plaintiff to show the nonresident defendant's purposeful availment of the benefits and protections of and minimum contacts with the forum state."); *L.G. Motorsports, Inc. v. NGMCO, Inc.*, No. 4:11CV112, 2012 WL 718594, at *3 (E.D. Tex. Mar. 6, 2012) (despite antitrust defendants' sporadic visits to Texas, court lacked specific personal jurisdiction over them because "the facts alleged are simply insufficient to show purposeful availment of the forum state"); *Hawkins v. Upjohn Co.*, 890 F. Supp. 601, 608 (E.D. Tex. 1994) (complaint contained no allegation that "the alleged conspiracy was expressly aimed at Texas, nor an allegation that the alleged tortfeasors had knowledge that a particular Texas resident would suffer the brunt of the harm.").

Plaintiffs rely on the conclusory assertion that because each Doctor is renowned for his Lyme disease research, all of the Doctors' visits to Texas were "clearly" to spread "false representations regarding Lyme disease in Texas." Opp. 10, 11. By this reasoning, the Doctors could be subject to specific jurisdiction in any state they have ever visited for any professional purpose during their careers for the sole reason that their careers have focused, in part, on studying Lyme disease. But that would not comport with due process. *See Stuart v. Spademan*, 772 F. 2d 1185, 1189 (5th Cir. 1985).

Plaintiffs disregard – but not dispute – the Doctors' declarations describing the purposes of those visits.[8]  *See* Mot. at 7-11 and Doctors' Declarations attached as Exs. B-H.  Plaintiffs even make the desperate allegation that *George W. Bush* apparently contracted Lyme disease in Texas – and Dr. Wormser (not located in Texas) commented on the matter to a newspaper reporter (also not located in Texas) – as if that somehow constituted a contact between Dr. Wormser and Texas.  Opp. 10.

Fundamentally, Plaintiffs cannot establish specific jurisdiction because Plaintiffs did not allege in their Complaint that their antitrust and RICO claims *arise out of* any Texas contacts made by the Doctors.  *See Panda Brandywine*, 253 F.3d at 868.  Nothing in the Complaint points to any Texas contacts as the basis for any of the allegations.  Nor do Plaintiffs allege that the conspiracy was specifically directed at Texas, such that the Doctors could "reasonably anticipate being haled into court" in Texas.  *See Revell v. Lidov*, 317 F.3d 467, 475 (5th Cir. 2002).  To the contrary, Plaintiffs allege that the conspiracy occurred on a national scale.  *See, e.g.*, Compl. ¶ 84 (alleging a "chilling effect on all doctors around the country.").

---

[8]  For example, Plaintiffs say Dr. Halperin visits Texas 3-5 weekends per year (Opp. 9) but omit the fact that Dr. Halperin stated that the visits are to see his son and his family in Houston.  *See* Mot., Ex. E (Halperin Decl.), ¶ 10.  Plaintiffs also make much out of the fact that Dr. Shapiro had been retained by a Texas firm on multiple cases (Opp. 8), and they even attach a deposition transcript to their opposition brief, but they fail to mention that (1) the case was unrelated to Lyme disease (Dr. Shapiro served as an expert witness for the family of a child with a brain injury in its malpractice lawsuit against a hospital and doctors); (2) the deposition took place in Connecticut – not Texas (*see* Opp. Ex. C at 3); and (3) Dr. Shapiro testified both at that deposition and in his Declaration in support of the Motion that he never traveled to Texas for any of the cases (*see id.*, p. 11 ("Q: Have you been to Texas before on any cases related to Mr. Mueller's and Mr. Freeman's lawsuits? A: No."); Mot. Ex. D (Shapiro Decl.), ¶ 12).  As such, Plaintiffs' suggestion that Dr. Shapiro's Declaration is inconsistent with his prior deposition is unfounded.

> ### b. Plaintiffs Fail to Show that the "Ends of Justice" Require the Doctors to Appear in Texas.

Plaintiffs assert that jurisdiction is proper under RICO, 18 U.S.C. § 1965(b), and do not dispute that invoking personal jurisdiction under RICO's "nationwide service of process" provision requires an affirmative "*showing* that the 'ends of justice' so require." *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71 (2d Cir. 1998) (emphasis added); Mot. at 20. Yet Plaintiffs offer nothing more than the conclusory statement that the "'ends of justice' require that the IDSA Panelists be subject to jurisdiction in this Court." Opp. 11.

Plaintiffs ignore the factors considered by courts in the Fifth Circuit and in Defendants' cases addressing the "ends of justice" requirement (Mot. at 21-28). They fail to acknowledge that New York is a more suitable jurisdiction, that nearly every party resides outside of Texas, that the Doctors all reside in the Northeast, and that appearing in Texas would be a significant inconvenience for the Doctors – if not impossible for some, due to medical issues. Simply put, Plaintiffs have not satisfied their burden to show that the necessity of requiring the Doctors to defend themselves in Texas outweighs Congress's preference to "bring the action where suits are normally expected to be brought." *See PT United*, 138 F.3d at 71-72.

> ### c. Jurisdictional Discovery Would Serve No Purpose.

Finally, Plaintiffs want to conduct jurisdictional discovery in order to keep the Doctors in the case. *See* Opp. 13. Here Plaintiffs fall well short of meeting their burden to demonstrate that jurisdictional discovery is warranted.

When seeking jurisdictional discovery, a plaintiff must first make a "preliminary showing of jurisdiction." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005). "When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Hazim v. Schiel & Denver Book Publishers*, 647 F. App'x 455, 460 (5th Cir. 2016)

(citation omitted).  "As the party opposing dismissal and requesting discovery, the plaintiffs bear the burden of demonstrating the necessity of discovery."  *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014).  "A plaintiff seeking discovery on matters of personal jurisdiction is expected to identify the discovery needed, the facts expected to be obtained thereby, and how such information would support personal jurisdiction."  *Nat'l Sur. Corp. v. Ferguson Enters., Inc.*, No. 3:13–CV–2045–M, 2014 WL 5472436, at *1 (N.D. Tex. Oct. 29, 2014) (citations omitted).

Plaintiffs have not even made a preliminary showing that the Doctors would be subject to personal jurisdiction in Texas.  Nor have Plaintiffs demonstrated what facts they hope to gain from discovery or how those facts would support personal jurisdiction over the doctors.  *See id.*  The Doctors have already submitted declarations under oath outlining in detail the dates and purposes of their Texas contacts throughout their careers.  It would be futile to allow Plaintiffs to seek additional information related to the Doctors' Texas contacts, which would not add any new facts and would be burdensome and likely delay resolution of this case.  *See Nat'l Sur. Corp.*, 2014 WL 5472436, at *3 ("Plaintiff here identifies no specific facts that are in dispute, does not identify the discovery needed, and fails to explain how any information obtained would support personal jurisdiction."); *Sinclair v. StudioCanal, S.A.*, 709 F. Supp. 2d 496, 510 (E.D. La. 2010) (denying request for jurisdictional discovery because it was "clear from the pleadings and papers submitted on this record" that the Court lacked personal jurisdiction over defendant); *Monkton*, 768 F.3d at 434 (affirming denial of discovery request because plaintiff "failed to make a prima facie showing of either specific or general jurisdiction" and discovery would not "add any significant facts").

14

## CONCLUSION

For the reasons stated herein, and those set forth in the Motion, IDSA and the Doctors request that this Court dismiss Plaintiffs' Complaint with prejudice for failure to state a claim as to IDSA and the Doctors.  In the alternative, the Doctors request that they be dismissed from the case for lack of personal jurisdiction.

Dated: May 1, 2018                      Respectfully submitted:


                                        /s/ Casey Low
                                        Pillsbury Winthrop Shaw Pittman LLP
                                        Casey Low (Texas Bar No. 24041363)
                                        401 Congress Avenue, Suite 1700
                                        Austin, TX 78701
                                        Tel: (512) 580-9616
                                        Fax: (512) 580-9601

                                        Alvin Dunn (Admitted Pro Hac Vice)
                                        Sara E. Stinson
                                        1200 Seventeenth St. NW
                                        Washington, D.C. 20036
                                        Tel:  (202) 663-8000
                                        Fax:  (202) 663-8007

                                        *Attorneys for Defendants Infectious Diseases Society of America, Dr. Gary P. Wormser, Dr. Raymond J. Dattwyler, Dr. Eugene Shapiro, Dr. John J. Halperin, Dr. Robert B. Nadelman, Dr. Leonard Sigal, and Dr. Allen Steere*

## <u>CERTIFICATE OF SERVICE</u>

I, Casey Low, hereby certify that on the 1st day of May, 2018, the foregoing Defendants Infectious Diseases Society of America, Dr. Gary P. Wormser, Dr. Raymond J. Dattwyler, Dr. Eugene Shapiro, Dr. John J. Halperin, Dr. Leonard Sigal, and Dr. Allen Steere's Reply in Further Support of Motion to Dismiss was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants.

/s/ Casey Low
Casey Low

16