**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | |
|---|---|
| LISA TORREY, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 5:17-cv-00190-RWS |
| INFECTIOUS DISEASES SOCIETY OF AMERICA, et al., | |
| Defendants. | |

**DEFENDANTS' MOTION TO DISMISS OR STRIKE THIRD AMENDED COMPLAINT
AND
REPLY IN SUPPORT OF MOTION TO DISMISS OR STRIKE SECOND AMENDED
COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT........................ 2

ARGUMENT .......................................................................................................... 3

I.  Plaintiffs Falsely Claim That Recent Testimony Caused Them to Add Their New Misrepresentation Claims ................................................................. 3

II.  Plaintiffs Do Not Defend Their Continued Failure – After Full Discovery – To Plead Facts Sufficient To Support Their RICO And Antitrust Claims........................................ 5

III. Plaintiffs Make No Effort To Show That They Have Standing To Bring Their RICO And Antitrust Claims ................................................................................ 7

IV. Judicial Estoppel Bars Plaintiffs From Reversing Their Prior Successful Representations To The Court That They Are Not Seeking Recovery For Personal Injuries ...................... 8

V.  Plaintiffs' Defense Of Their New Misrepresentation Claims Rests On Misstatements Of The Law, The Guidelines, And The Testimony ............................................. 9

    A.  Plaintiffs' Failure To Establish The Correct Governing Law Warrants Dismissal With Prejudice ........................................................................ 10

    B.  No Matter Which State's Law Applies, Plaintiffs Cannot Recover For Alleged Misrepresentations In Medical Guidelines That Are Medical Opinions, Not Factual Representations ....................................................... 12

    C.  No Matter Which State's Law Applies, The IDSA Guidelines Refute Plaintiffs' Allegations of Falsity ............................................................... 14

    D.  Plaintiffs Fail To Allege Sufficient Details To State Claims For Misrepresentation Under Virginia Law And Rule 9(b) ................................ 17

    E.  Virginia Would Not Recognize Plaintiffs' Claim For Derivative Reliance Because IDSA Had No Special Relationship With Plaintiffs .............................. 19

VI. The Court Should Strike Plaintiffs' New Misrepresentation Claims Because They Come Too Late And Are Highly Prejudicial........................................................ 22

CONCLUSION...................................................................................................... 23

## INTRODUCTION

Defendants Dr. Gary P. Wormser, Dr. Raymond J. Dattwyler, Dr. Eugene Shapiro, Dr. John J. Halperin, Dr. Leonard Sigal, and Dr. Allen Steere (collectively, the "Doctors") and the Infectious Diseases Society of America ("IDSA") submit this Motion to Dismiss Plaintiffs' Third Amended Complaint, Dkt. 361 ("TAC") or, in the alternative, to strike Plaintiffs' new misrepresentation claims.  To avoid duplicative briefing, this Motion also serves as IDSA and the Doctors' Reply in Support of their Motion to Dismiss or Strike Plaintiffs' Second Amended Complaint (Dkt. 355).  Defendants request a hearing for oral argument on this motion.

Plaintiffs' Response to the Motion to Dismiss (Dkt. 362) fails to respond to most of Defendants' arguments, which are fully applicable to the new Third Amended Complaint.  When Plaintiffs do respond, they misstate the facts and/or law.

Plaintiffs do not dispute that their Second Amended Complaint admits that even after full fact discovery they still cannot plead their RICO and antitrust claims.  Plaintiffs assert only that they are not obligated to file an amended complaint.  While true, Plaintiffs cannot escape the fact that by filing a new complaint after fact discovery has closed – and admitting that they still lack the details necessary to plead the payments that underlie their RICO and antitrust claims – Plaintiffs have admitted, yet again, that they cannot state their claims even after three years of discovery.

Plaintiffs make the same admission in their Third Amended Complaint.

Plaintiffs assert that the recent testimony of IDSA and the Doctors just now made them aware that they could assert misrepresentation claims against IDSA and seek to recover for their personal injuries.  That assertion is objectively false.  Plaintiffs possessed every fact they now assert supports their new claims when they filed their Original Complaint and/or their First Amended Complaint – if not earlier.

1

In seeking to salvage their new misrepresentation claims from dismissal, Plaintiffs misstate the law at every turn.  They rely on Texas law, which does not apply to the claims of these nearly two dozen disparate Plaintiffs, and they cite no case from any state that extends the common law to impose liability on a professional medical society issuing voluntary guidelines that allegedly contribute to the misdiagnosis of distant, unrelated patients.

Plaintiffs also cannot save from dismissal their new misrepresentation claims by pointing to their Third Amended Complaint, which they filed immediately before they filed their Response brief.  Even if the Third Amended Complaint pled the new claims with the particularity required by Rule 9(b) – and it does not – the new claims would be subject to dismissal based on the other grounds set forth in Defendants' motion to dismiss the Second Amended Complaint.

Finally, nothing in Plaintiffs' Response or their Third Amended Complaint should dissuade the Court from exercising its discretion to strike Plaintiffs' new misrepresentation claims as untimely.  Those claims, even if properly pled, should have been filed long ago.  Plaintiffs cannot plead additional claims at the very end of fact discovery – and then amend those claims yet again after the end of fact discovery.

## STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT

1.      Whether Plaintiffs' Third Amended Complaint should be dismissed under Federal Civil Rules 9(b) and 12(b)(6) because:

   a.      Plaintiffs failed to allege facts sufficient to plead a plausible cause of action under the RICO Act; and

   b.      Plaintiffs failed to allege facts sufficient to plead a plausible cause of action against under the Sherman Act.

   c.      Plaintiffs failed to plead the elements of intentional misrepresentation or negligent misrepresentation.

2.      Whether Plaintiffs' new claims for personal injury and emotional distress damages are barred by the doctrine of judicial estoppel.

3.      In the alternative, whether Plaintiffs' amendment to add new claims at the end of the fact discovery period should be struck.

## ARGUMENT

### I.      Plaintiffs Falsely Claim That Recent Testimony Caused Them to Add Their New Misrepresentation Claims

Plaintiffs seek to justify adding claims at the end of the fact discovery period by asserting that "[t]he reason for these new causes of action is the recent testimony of the IDSA corporate representative and the IDSA Doctors." Dkt. 362 at 1.  This assertion is patently false.

In particular, Plaintiffs assert that they learned for the first time through recent depositions that "the guidelines provide false information, including false information about treatment failure." Dkt. 362 at 1; *see also* Dkt 362 at 5 ("The recent testimony is the IDSA provides false information regarding numerous things including treatment failure.").  If the IDSA Guidelines falsely deny treatment failure – and they do not – Plaintiffs did not learn that from the recent depositions. Plaintiffs alleged repeatedly in their Original Complaint and their First Amended Complaint – each filed well before any depositions – that IDSA's Lyme disease guidelines include false information about treatment failure.[1]

_____

[1]  *See* Original Complaint (Dkt. 1) at ¶ 64 (alleging the 2000 Guidelines falsely restricted antibiotic treatment to 28 days); ¶ 74 (alleging that the 2006 Guidelines falsely claimed Lyme disease is easily cured with 28 days of antibiotics); ¶ 99(a) (accusing IDSA of "fraudulently and wrongfully misleading people with Lyme disease, and their doctors"); ¶ 99(b) (alleging that IDSA falsely claimed all Lyme disease patients can be easily treated and cured with short-term antibiotics); First Amended Complaint (Dkt. 186) at ¶ 85 (alleging that the 2006 Guidelines falsely deny treatment failure and "actually promote the idea that Lyme is a simple, rare illness that is easy to avoid, difficult to acquire, simple to diagnose, and easily treated and cured with 28 days of antibiotics"); ¶ 95 (same); ¶ 98 (IDSA and the other Defendants "have perpetrated a fraud on the American people" by denying treatment failure for Lyme disease).

3

Plaintiffs also assert that they learned for the very first time through the recent depositions that "IDSA provides false information regarding the accuracy of testing for Lyme disease" and "that the two-tier test is completely inaccurate and fails to detect Lyme disease." Dkt. 362 at 7.  If the IDSA guidelines misrepresent the two-tier test – and they do not – Plaintiffs did not learn that from the recent depositions.  Plaintiffs alleged repeatedly in their Original Complaint and their First Amended Complaint that the IDSA Guidelines misrepresent the two-tier test.[2]

But it gets even worse.  Plaintiffs assert that they did not learn until they took IDSA's Rule 30(b)(6) deposition that they needed to seek recovery for personal injuries and therefore would need to change their prior representations to this Court regarding the damages they seek.  Here is Plaintiffs' explanation:

> Plaintiffs did not know of the inconsistent position until taking recent depositions. For example, the IDSA corporate representative was deposed on November 24, 2020. (Ex. D). This deposition was taken a few weeks before Plaintiffs filed their Second Amended Petition. (Docket #352). ***In this deposition, Plaintiffs learned that the IDSA takes the position that it is the "leading medical authorities on the diagnosis and treatment of Lyme disease"*** and doctors all over the country, including in Texarkana Texas, rely solely on these guidelines:

Dkt. 362 13-14 (emphasis added).

Where to start?  It is incredible that Plaintiffs would blame IDSA and the Doctors for their prior statements to the Court that they were *not* seeking damages for personal injuries.  But it is equally incredible that Plaintiffs only claim to have learned from a deposition on November 24, 2020, that "IDSA takes the position that it is the 'leading medical authorities'" [sic] on Lyme disease.  ***As Plaintiffs well know***, that statement is ***not*** from Plaintiffs' recent deposition of IDSA

---

[2]  *See* Original Complaint at ¶ 95 (alleging the 2006 Guidelines falsely required the two-tier test); ¶ 150 (alleging IDSA fraudulently kept improper testing protocols in place); *see* First Amended Complaint at ¶ 89 (alleging the 2006 Guidelines falsely required the two-tier test); ¶ 151 (alleging IDSA fraudulently kept improper testing protocols in place).

4

but rather is from a public letter to five members of the U.S. House of Representatives dated May 22, 2015, *that Plaintiffs themselves introduced as an exhibit at their deposition of IDSA but did not attach to their Response*.[3]

Equally absurd is Plaintiffs' suggestion that they learned only from the IDSA deposition that doctors may rely on the IDSA guidelines when diagnosing and treating Lyme disease. Plaintiffs *went even further* in their Original Complaint and in their First Amended Complaint when they alleged that the IDSA guidelines "are treated as mandatory requirements" that "must be followed by doctors."[4]

Plaintiffs in fact learned absolutely nothing new from the recent depositions.

## II.     Plaintiffs Do Not Defend Their Continued Failure – After Full Discovery – To Plead Facts Sufficient To Support Their RICO And Antitrust Claims

Plaintiffs in their Response make no effort to defend their RICO and antitrust claims as pled in their Second Amended Complaint; they simply refer to the Court's prior ruling that the claims were adequately pled – a ruling that relied in part on the fact that, at the time, discovery was ongoing.  Yet as the Court's rules set forth, "[a] party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion."  Local Rule CV-7(d).

Likewise, Plaintiffs make no effort in their new Third Amended Complaint to plead their RICO claims with particularity – as required by Rule 9(b).  Plaintiffs simply deleted the assertions from their Second Amended Complaint that "[i]t is impossible for Plaintiffs to answer the newspaper questions regarding payments to the IDSA panelists until meaningful discovery to [sic]

---

[3]  *See* Ex. 1, May 22, 2015 Letter, Exhibit 3 to Busky Deposition.

[4]  *See* Original Complaint at ¶ 111, 113, 74; First Amended Complaint at ¶ 101, 103, 72.  Plaintiffs even argued that doctors 'solely' rely on the IDSA Guidelines by claiming they are part of a monopoly.  *E.g.*, Original Complaint ¶ 131.

conducted," SAC ¶ 53, and that "[i]t is impossible for Plaintiffs to answer the newspaper questions regarding reports to medical boards made from the Settling Insurance Companies to the medical boards until meaningful discovery to [sic] conducted."  SAC ¶ 70.

In their Third Amended Complaint, Plaintiffs admit yet again that they cannot meet Rule 9(b)'s pleading requirements for their RICO claims.  Plaintiffs ***still*** ask for the Court to apply a relaxed pleading standard because they are "unable, without pretrial discovery" to plead their claims with particularity.  TAC ¶ 52

A relaxed pleading standard spared Plaintiffs' RICO claims from dismissal earlier in the case – before Plaintiffs had the benefit of full discovery to try and identify the alleged payments at the core of their claims.  Yet the fact discovery period closed on January 15, 2021.  Because Plaintiffs have admitted in their two most recent amended complaints that they still cannot meet Rule 9(b)'s pleading requirements, their RICO claims should be dismissed with prejudice.[5]

Plaintiffs' antitrust claims depend upon the existence of the same exact payments that support their RICO claims – payments that Plaintiffs admit they cannot plead because they have no evidence of them.  Because these conspiracy claims are based on the same allegations of fraudulent activity as the RICO claims, they are subject to the same pleading standard.  *Huawei Techs. Co. v. Yiren Huang*, No. 4:17-CV-00893, 2018 WL 1964180, at *11 (E.D. Tex. Apr. 25, 2018); *see also U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 193 (5th Cir. 2009).  Plaintiffs'

---

[5] Plaintiffs cannot save their RICO and antitrust claims by referring to unspecified testimony they hope to elicit from their to-be-designated experts, including Dr. Sam Donta. Dkt. 362 at 4. We have been down this road before.  Plaintiffs once before designated Dr. Donta as a "non-retained expert," forcing Defendants to file a motion for a protective order to require Dr. Donta to submit an expert report before his deposition.  *See* Dkt. 281 (Motion for Protective Order).  After oral argument, Plaintiffs withdrew their designation of Dr. Donta.  If Plaintiffs had reason to believe Dr. Donta possesses ***facts*** to support their RICO and antitrust claims, they would have deposed him during the fact discovery period, but they did not.

original conclusory allegations that payments were made were sufficient to permit an inference of an antitrust conspiracy earlier in the case.  Now, however, there can be no inference of conspiracy in light of the admission by Plaintiffs that there is no evidence – after full fact discovery – of any systematic payments.  Like the RICO claims, the antitrust claims also should be dismissed with prejudice.

## III. Plaintiffs Make No Effort To Show That They Have Standing To Bring Their RICO And Antitrust Claims

Plaintiffs also make no effort to remedy the fact that they still have not pled (in either new complaint) that they suffered injuries to business or property as required by their RICO and antitrust claims.  Under the Sixth Circuit's en banc ruling in *Jackson v. Sedgwick Claims Management Services, Inc.*, 731 F.3d 556 (6th Cir. 2013), Plaintiffs' RICO and antitrust claims must be dismissed with prejudice because they seek only damages that flow from their alleged personal injury claims.

Plaintiffs in their Response rely only on their prior briefing and the Court's prior ruling. Neither saves Plaintiffs claims in the face of Plaintiffs' new personal injury claims.

Plaintiffs previously argued that they were asserting "no allegations that can even be read to infer personal injury claims against any of the Defendants."  Dkt. 60 at 10.  The Court accepted that assurance as the basis for its ruling, allowing the RICO and antitrust claims to go forward to discovery expressly because Plaintiffs represented that they were not seeking personal injury damages.  Dkt. 114 at 24-25.  That argument no longer applies because Plaintiffs now explicitly seek personal injury damages.  Plaintiffs in their Response ignore this deficiency, which infects both the Second and Third Amended Complaints and requires that the RICO and antitrust claims be dismissed.

## IV.   Judicial Estoppel Bars Plaintiffs From Reversing Their Prior Successful Representations To The Court That They Are Not Seeking Recovery For Personal Injuries

To save their new misrepresentation claims from dismissal under the doctrine of judicial estoppel, Plaintiffs submit false explanations for adding last-minute claims seeking recovery for personal injuries after years of representing to the Court that they were ***not*** seeking recovery for personal injuries.

Plaintiffs admit that the first two elements of judicial estoppel (an inconsistent prior position and acceptance of that position by the Court) are met.  Dkt. 362 at 12-13.

Plaintiffs' only response is to assert that the third element is not met because their inconsistent positions were "inadvertent."  Dkt. 362 at 13 (citing *Allen v. C & H Distribs*., L.L.C., 813 F.3d 566, 572 (5th Cir. 2015)).  In other words, ***Plaintiffs*** had to depose the ***Defendants*** to know what personal injuries the ***Plaintiffs*** suffered.  Why?  Because "Plaintiffs did not know of the inconsistent position until taking recent depositions."  Dkt. 362 at 13-14.

Of course, what Plaintiffs claim to have learned from the recent depositions had nothing to do with their prior disclaimer of personal injuries.  They only claim they did not know until they took IDSA's deposition that IDSA takes the position that the authors of its Guidelines are leaders in the diagnosis and treatment of Lyme disease and that other doctors rely in the IDSA Guidelines.

The assertion is also patently false.  Plaintiffs knew long before taking the IDSA deposition that IDSA takes the position that its members are leading medical authorities on Lyme disease.  *E.g.*, Original Complaint at ¶ 111, 113, 74, 131; First Amended Complaint at ¶ 101, 103, 72.  Long before taking the IDSA deposition, Plaintiffs also knew enough to allege that doctors may rely on the IDSA guidelines when diagnosing and treating Lyme disease.  *E.g.*, Original Complaint at ¶ 122; First Amended Complaint at ¶ 115.  And long before taking the IDSA deposition, Plaintiffs knew enough to allege that the IDSA's allegedly false Lyme disease guidelines caused Plaintiffs

8

to suffer personal injuries.  *See* Original Complaint ¶¶ 101, 132-140.  It is telling that Plaintiffs added their new misrepresentation claims and personal injury damages claims in their Second Amended Complaint ***without alleging a single new fact***.  All they did was switch the very nature of their damages – more than three years into the case.

Parties do not act "inadvertently" when they had a motive to conceal.  Here, "[b]y not disclosing their personal injury claim … [Plaintiffs'] motivation for concealment is self-evident because of the 'potential financial benefit resulting from the nondisclosure.'"  *Allen*, 813 F.3d at 574. By denying personal injuries earlier, Plaintiffs sought a potential treble damages windfall by keeping their RICO and antitrust claims alive.  Plaintiffs cannot reap a reward for tactical delay by seeking to add – after the close of fact discovery – claims for relief that they could have asserted in their Original Complaint.

## V.   Plaintiffs' Defense Of Their New Misrepresentation Claims Rests On Misstatements Of The Law, The Guidelines, And The Testimony

Plaintiffs failed to establish that Texas law would govern their new misrepresentation claims, which warrants dismissal of those claims after Plaintiffs amended their Second Amended Complaint after Defendants raised the choice of law issue in their Motion to Dismiss the Second Amended Complaint.

The choice of law analysis Plaintiffs do apply is wrong because Virginia law should govern where the law on these claims is in conflict.  However, on the universal elements of Plaintiffs' new claims, which require misrepresentations to be factual statements (not opinions) and require them to be false, Plaintiffs' claims fail regardless of which law applies.  Plaintiffs also wholly fail to allege the facts underlying their claims in sufficient detail to state a claim under the applicable federal and state pleading standards.

Finally, where there is a conflict of law regarding their novel theory of reliance based on the actions of their treating physicians, Plaintiffs cannot establish a "special relationship" that would support the application of their theory.  Nor can they demonstrate that their novel theory would be acceptable under any state's law.

### A.    Plaintiffs' Failure To Establish The Correct Governing Law Warrants Dismissal With Prejudice

Plaintiffs are flat wrong when they argue that because jurisdiction is based on the existence of a federal question Texas law applies to their common law claims.  First, Texas choice of law rules apply, not Texas substantive law.  A federal court deciding a non-federal tort claim, such as the misrepresentation claims of Plaintiffs, must apply the choice of law rules of the forum in which it sits, regardless of whether jurisdiction is based on diversity of citizenship or supplemental jurisdiction under 28 U.S.C. § 1367.  *Janvey v. Brown*, 767 F.3d 430, 434 (5th Cir. 2014) ("It is well-settled that choice of law issues for supplemental state law claims … are governed by the forum state in which the federal court is sitting.").

For claims such as Plaintiffs' misrepresentation claims, "Texas courts use the 'most significant relationship' choice-of-law analysis."  *See*, *e.g.*, *Schweiger v. USAA Fed. Sav. Bank*, No. SA-17-CV-00660-OLG, 2017 WL 6503660, at *2 (W.D. Tex. Dec. 18, 2017) (cited by Plaintiffs at Dkt. 362 at 10).  The same test would apply under a federal choice of law analysis. *Jimenez v. Sun Life Assur. Co. of Canada*, 486 Fed. App'x 398, 407 (5th Cir. 2012).

Choice of law issues are decided on a motion to dismiss because choosing the applicable law is a "threshold issue that sets the framework for the entire litigation."  *Corder v. BBG Commc'ns, Inc.*, No. CIV.A. W-11-CA-00264, 2012 WL 3843714, at *8 (W.D. Tex. July 30, 2012); *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009) ("A complaint should be dismissed when the governing law cannot be determined from the facts alleged therein.").

As such, Plaintiffs were required to plead facts to allow the Court to perform this "analysis for each plaintiff on an issue-by-issue basis," so that the Court could determine the proper law for each alleged misrepresentation and injury to each Plaintiff . *Norwood v. Raytheon Co.*, 237 F.R.D. 581, 594 (W.D. Tex. 2006) (citing *Lutheran Bhd. v. Kidder Peabody & Co.*, 829 S.W.2d 300, 310 (Tex. App. 1992).  Where, as here, Plaintiffs assert misrepresentation but do not address the place of reliance or the place of receipt of the statements, dismissal is appropriate.  *Enigma Holdings, Inc. v. Gemplus Int'l S.A.*, No. 3:05 CV 1168 B, 2006 WL 2859369, at *7 (N.D. Tex. Oct. 6, 2006). In a case like this, where Plaintiffs responded to the motion to dismiss with another amended complaint, the Court may "assume that the allegations in the amended complaint are the [Plaintiffs'] best case" and dismiss with prejudice if it cannot determine the proper law for each Plaintiff and injury alleged.  *Corder*, 2012 WL 3843714, at *9.

If the Court does need to determine the governing law, it need only do so for elements where there is a conflict among the states.  *Vandeventer v. All American Life & Cas. Co.*, 101 S.W.3d 703, 712 (Tex. App. 2003).  As discussed below, most elements of misrepresentation are universal, such as the requirement of a factual statement and the requirement of falsity, but Plaintiffs advance a novel theory to satisfy the element of detrimental reliance under the Restatement, which would require this Court to determine the governing law.

Under the Texas choice of law rules, the most significant relationship test leads inexorably to the application of Virginia law.  The test considers four factors that are relevant to the misrepresentation claims: (1) the place "plaintiff acted in reliance upon the defendant's representations," (2) the "place where plaintiff received the representations," (3) the "place where defendant made the representations," and (4) the domicile of the parties. *Vanderbilt Mortg. & Fin., Inc. v. Posey*, 146 S.W.3d 302, 315 (Tex. App. 2004).  Plaintiffs do not allege the first two factors

11

because they do not claim that "Plaintiffs" acted in reliance on or received the statements in the IDSA Guidelines.  Instead, they claim that unspecified treating physicians located in various unspecified states relied on the Guidelines when treating Plaintiffs.  Indeed, neither of the new complaints contains any information as to any of the four factors except the place IDSA is located and published the guidelines:  Virginia.  As such, Virginia is the only state with any discernible connection to the new claims and is the state with an interest in regulating the conduct of IDSA.

Plaintiffs offer no support for their conclusory statement that "the true test is where the injuries occurred."  Dkt. 362 at 10.  Even so, there is no single location where the alleged injuries occurred.  Plaintiffs' argument that "several of the Plaintiffs live in Texas, where their injuries occurred," Dkt. 362 at 10, is not true.  Only two plaintiffs allege they are residents of Texas, and one of those moved to California for a time.  TAC ¶¶ 1-2.  There is no evidence that any non-Texas resident was injured in Texas, and the new complaints suggest that treatment was sought in multiple states by different Plaintiffs.  *See* TAC ¶ 130.  As such, Virginia law would apply to Plaintiffs' new claims.

### B. No Matter Which State's Law Applies, Plaintiffs Cannot Recover For Alleged Misrepresentations In Medical Guidelines That Are Medical Opinions, Not Factual Representations

Regardless of the which state's law applies, the IDSA Guidelines are statements of general medical opinion, not factual statements that can be considered misrepresentations.  Both Virginia and Texas require that an alleged misrepresentation must be of a fact and not an opinion.  *Paul v. Capital Resource Mgmt., Inc.*, 987 S.W.2d 214, 219 (Tex. App. 1999); *Klaiber v. Freemason Assocs., Inc.*, 587 S.E.2d 555, 558 (Va. 2003).  Plaintiffs make no response to the requirement that a doctors' statements can only be considered a "fact" (as opposed to a non-actionable general medical opinion) for purposes of a misrepresentation claim when there is a "special relationship," such as direct doctor-patient relationship where the "relative knowledge of the parties" was

12

unequal.  *Glenn v. Trauben*, 70 Va. Cir. 446, 448 (2004).  Even under the Texas law, there is no "false representation of a material fact" when "there was a legitimate difference of opinion among learned experts" regarding the risk of medical treatments.  *Weidner v. Marlin*, No. 04-96-00160-CV, 1997 Tex. App. LEXIS 4875, at *27-28 (Tex. App. Aug. 29, 1997).  Plaintiffs (or their doctors, the persons the Plaintiffs allege were the true 'recipients' of the IDSA Guidelines) were equally capable of reviewing the studies and papers cited as the basis for the opinions expressed in the IDSA Guidelines, and when "the information forming the basis for [Defendant]'s opinions was equally available to both … [the] statements are not actionable misrepresentations."  *Paul*, 987 S.W.2d at 220.  Plaintiffs' arguments that the IDSA is a preeminent authority on infectious disease "confuse 'knowledge' with 'expertise,'" and the court in *Paul* explained that as long as the underlying basis for an expert's opinion is available to both sides, there can be no misrepresentation.  *Id.* at 219.

This result is not unusual.  For more than a century, it has been clear that mere disagreements regarding standards for treatment of diseases are not actionable factual statements. *Am. Sch. of Magentic Healing v. McAnnulty*, 187 U.S. 94, 105 (1902) ("[T]he effectiveness of almost any particular method of treatment of disease is, to a more or less extent, a fruitful source of difference of opinion. … The opinions entertained cannot, like allegations of fact, be proved to be false.").[6]  In *McAnnulty*, the Supreme Court considered whether statements regarding the efficacy of a non-standard medical treatment could be considered a false statement of fact that was actionable fraud and concluded that the statements were medical opinions and not provably false

---

[6] Plaintiffs' suggestion that medical guidelines are a "recent phenomenon" is laughable.  The Supreme Court ruled in 1902 that disputes among the medical community were no basis for claims of fraud.  And the guidelines that form the basis for Plaintiffs' claims were first published more than 20 years ago, which is not particularly recent.

statements of fact.  *Id.*  Plaintiffs here have alleged a "disagreement … between actual Lyme disease doctors and research doctors."  TAC ¶ 116.  Addressing a similar debate, the Court concluded that "these different schools of medicine have their followers, and many who believe in the one will pronounce the other wholly devoid of merit.  But there is no precise standard by which to measure the claims of either."  *McAnnulty*, 187 U.S. at 106.

This fundamental problem dooms Plaintiffs' misrepresentation claims.  The statements in the IDSA Guidelines are not actionable statements of fact that Plaintiffs could prove are ***mis***representations of fact.  Plaintiffs' critique of the Guidelines merely underscores the non-factual nature of the challenged recommendations in the Guidelines.[7]  "Expressions of opinion, scientific judgments, or statements as to conclusions about which reasonable minds may differ cannot be false."  *United States ex rel. Morton v. A Plus Benefits, Inc.*, 139 F. App'x 980, 983 (10th Cir. 2005).

### C.  No Matter Which State's Law Applies, The IDSA Guidelines Refute Plaintiffs' Allegations of Falsity

It is axiomatic that to prove a claim for misrepresentation Plaintiffs must plead that the statements at issue were actually false.  This requirement arises under the applicable law of every state, including Texas.  *See Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983) (requiring false statement of fact, not opinion, for fraud claims); *R&M Mixed Beverage Consultants, Inc. v. Safe Harbor Benefits, Inc.*, 578 S.W.3d 218, 239 n.11 (Tex. App. 2019) (same for negligent misrepresentation).

---

[7]  *See*, *e.g.*, TAC ¶ 44 (describing conflicting "opinions" regarding Lyme disease); TAC ¶ 72 (alleging IDSA "improperly ignored or minimized medical opinion regarding chronic Lyme disease").

14

To justify waiting until fact discovery is over to bring their new misrepresentation claims, Plaintiffs assert that recent deposition testimony reveals for the first time that the IDSA Guidelines are fraudulent.  Once again, the deposition testimony adds nothing that the Plaintiffs did not allege long ago and/or did not already know long ago, and their selective quotations from both the Guidelines and the recent depositions are misleading and make no showing that the Guidelines are false in any way.

Looking to the Guidelines themselves confirms that Plaintiffs have not adequately pled that the Guidelines contain any false statements at all.  *Rogers v. City of Yoakum*, 660 F. App'x 279, 285 (5th Cir. 2016) ("Because the exhibits attached to Rogers's complaint contradict his allegations, we assume the facts in the exhibits to be true.").  The failure to plead that the IDSA Guidelines contain alleged statements of fact that are actually false is another deficiency that dooms both misrepresentation claims.

Plaintiffs assert that the IDSA Guidelines "specifically state there is absolutely no treatment failure for Lyme disease."  Dkt. 362 at 5; TAC ¶ 193.  However, the Guidelines without question recognize that initial treatment might fail.  Just one example: "Not all patients with Lyme arthritis respond to 2–4-week courses of oral or intravenous antibiotic therapy."  Ex. 2, 2006 IDSA Guidelines at 1112.  The Doctors explained at their depositions that the Guidelines recognize treatment failure,[8] but Plaintiffs conveniently ignore this testimony.

---

[8]  For example, Dr. Wormser testified as follows:

> Q.  Okay.  Well, can you tell me why the 2000 and 2006 guidelines do not reference treatment failure as a possibility?
>
> A.      No, I don't think that's correct at all.
>
> ….
>
> A.  Okay.  [Reading from the 2006 Guidelines] "Regardless of the clinical manifestation of Lyme disease, complete response to treatment may be delayed beyond the treatment

Plaintiffs similarly misstate the Guidelines when they assert that the Guidelines falsely say that the standard two-tier test must yield a positive result in order to diagnose Lyme disease. Plaintiffs allege as follows:  "The IDSA tells doctors that the only way to determine whether a patient has Lyme disease is the two-tier serologic test: 'Confirmation of the diagnosis requires serologic testing. All patients should be determined to be seropositive by 2-tier testing that includes an ELISA and IgG immunoblot.'"  Dkt. 362 at 7 (quoting 2006 Guidelines at 1110).  The Guidelines do include the quoted material.  What Plaintiffs do not point out – and do not want the Court to understand – is that there is early Lyme disease and late Lyme disease; the quoted material is from a section of the Guidelines that discusses a manifestation of late Lyme disease, when the two-tier antibody test has proven to be accurate and effective.  2006 Guidelines at 1109-1113.

The Guidelines absolutely *do not* require a positive result on the standard two-tier test in order to diagnose early Lyme disease, and they make clear that for diagnosing early Lyme disease, the standard two-tier test is *not* recommended:  "Serologic testing is too insensitive in the acute phase (the first 2 weeks of infection) to be helpful diagnostically.  Patients should be treated on the basis of clinical findings." 2006 Guidelines at 1101.  Plaintiffs seek to oversimplify a complex question in order to allege misrepresentation.  The fact that the Guidelines explain that the two-tier test is useful in some contexts and not others does permit Plaintiffs to allege that the Guidelines contain a statement of fact that is false, and Plaintiffs' new complaint makes no attempt to consider

_____

duration, relapse may occur with any of these regimens.  Patients with objective signs of relapse may need a second course of treatment."
Q.  Okay.  That doesn't say anything about treatment failure, Dr. Wormser.
A.  That's treatment failure, relapse -- objective signs of relapse, that's treatment failure.

Ex. 3, Wormser Depo 36:17-19, 37:11-19 (these excerpts were purportedly attached as Exhibit I to the Third Amended Complaint, but were not contained in the copies served, so are attached as Exhibit 3 for the Court's convenience).

the actual context or evidence supporting their cherry-picked quotations.  Again, the Doctors explained all of this during their depositions – testimony Plaintiffs ignore while quoting other portions of the very same depositions.

Plaintiffs have misstated the standard two-tier test before, most recently when Plaintiffs sought to avoid providing the standard two-tier test in connection with appearing for their independent medical exams – as the Court long ago authorized the IME physician to request that the Plaintiffs submit.  *See* Dkt. 347, Dkt. 349.

The Guidelines do not make unequivocal assertions that Plaintiffs could allege are false statements of fact.  As stated, Plaintiffs' misrepresentation claims therefore fail to plead the required element of falsity and must be dismissed.  Plaintiffs cannot allege misrepresentation by pointing only to "isolated portions of complex" documents, such as the IDSA Guidelines, but they "must be read in their entirety to be given effect."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 388 (5th Cir. 2010).  When Plaintiffs' alleged misrepresentations from the Guidelines are placed in context, it is clear they do not take the positions ascribed to them in Plaintiffs' conclusory paraphrasing and that they cannot support Plaintiffs' new misrepresentation claims.

### D.    Plaintiffs Fail To Allege Sufficient Details To State Claims For Misrepresentation Under Virginia Law And Rule 9(b)

Both of Plaintiffs' new misrepresentation claims, because they are based on the same set of facts, are subject to the heightened pleading standard of Rule 9(b).  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 n.3 (5th Cir. 2010) ("Rule 9(b) does apply … when

'fraud and negligent misrepresentation claims are based on the same set of alleged facts.").[9]  In addition, both actual and constructive fraud claims in Virginia are subject to a heightened burden of proof requiring clear and convincing evidence, which impacts the pleading requirements.  Such claims necessarily must be "distinctly alleged" and "show, specifically and in detail all elements of the cause of action at a level which, if believed, would qualify as clear and convincing proof. 'Generalized, nonspecific allegations … are insufficient to state a valid claim of fraud.'"  *Sweely Holdings, LLC v. SunTrust Bank*, 296 Va. 367, 382 (2018).  Thus, Plaintiffs bear the burden of pleading with specificity, either under Virginia substantive law or under Rule 9(b).

The new Third Amended Complaint is deficient under the required pleading standards. Plaintiffs do not state specifics for either misrepresentation claim.  The Court has previously held that Plaintiffs could not establish the details regarding the "newspaper questions" of their allegations of fraud.  Dkt. 114 at 28.  The same requirement to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent" applies to Plaintiffs' new misrepresentation claims, and both amended complaints fail to do so with respect to each Plaintiff and each instance of reliance. *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997).

Even after adding factual allegations to their Third Amended Complaint, Plaintiffs plead only conclusory allegations and set forth no specific explanation of how each Plaintiff was harmed by a misrepresentation of fact contained in the IDSA guidelines, nor when and where those alleged misrepresentations occurred.  Other than three isolated statements identified in deposition

---

[9]  This Court has recognized that *Lone Star Fund* overturned the case holding to the contrary that was relied on by Plaintiffs in their response.  *Dragoslavic v. Ace Hardware Corp.*, 274 F.Supp.3d 578, 586 (E.D. Tex. 2017) (recognizing the later decision in *Lone Star Fund* controls over the case cited by Plaintiffs, *Am. Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115 Fed. App'x 662 (5th Cir. 2004)).

testimony, Plaintiffs give no details of which doctors relied on the IDSA Guidelines, whether that reliance overrode the doctor's own judgment and actually caused whatever injury was alleged, how the doctors first read the Guidelines (and when and where), or when and where those doctors made decisions that thereafter caused Plaintiffs' alleged harm.  The examples cited in the Third Amended Complaint fail to give specifics, and the details that are provided indicate at most an inference that the doctors referenced the Guidelines in discussions with a Plaintiff – not that any doctor actually relied upon them.

> **E.  Virginia Would Not Recognize Plaintiffs' Claim For Derivative Reliance Because IDSA Had No Special Relationship With Plaintiffs**

Plaintiffs argue that they can recover under Restatement (Second) Torts §§ 310-11 because they were treated by some doctors who, in turn, allegedly relied at least partially on the IDSA Guidelines in making diagnostic or treatment decisions regarding Plaintiffs' care.  But Virginia would not recognize such derivative reliance, which could make IDSA liable to third-party plaintiffs based on how treating physicians interpreted the guidelines.  There is "no duty to control the conduct of third persons to prevent harm to another" unless there is a "special relationship between the defendant and the third party," such as a psychiatric hospital taking charge of a dangerous patient having an obligation to prevent the patient from harming others or an employer having an obligation to prevent their employees from harming customers.  *Nasser v. Parker*, 249 Va. 172, 176 (1995).  Plaintiffs do not allege *any* relationship between themselves and IDSA, much less the type of "special relationship" that would require IDSA to have prevented the Plaintiffs' doctors from causing harm to Plaintiffs after reading the IDSA Guidelines.

Virginia does not recognize an exception to its rule based on Plaintiffs' cited Restatement provisions.  The only cases where Virginia courts have considered Restatement section 311 have been where the plaintiff was a minor and the parents relied on an express promise of safety for the

19

child.  *See Doe v. Roe School*, 67 Va. Cir. 387, *3 (2005).  In *Doe*, a boarding school could be held

liable for fraud based on promises to the parents that it would keep the child safe if enrolled.  *Id.*

In contrast, the representations in the IDSA Guidelines are not specific to the Plaintiffs, and

Plaintiffs' treating physicians are not similarly situated to parents of a minor child.

Even under the Restatement, Plaintiffs have failed to plead viable claims.  Comments to

Restatement Section 311 specifically discuss how it will apply in the type of doctor-patient

relationship usually required to allow a plaintiff to rely on medical opinions about their specific

bodily condition.  Rest. (2d) Torts, § 311, cmt a (explaining the provision applies in cases of "the

professional duty of a physician to give correct information as to the character of the disease from

which ***his patient*** is suffering").  Even under Plaintiffs' preferred Texas law, "Texas courts have

not explicitly adopted § 311."  *Butler v. Juno Therapeutics, Inc.*, No. H-18-898, 2019 WL 2568477,

*24 (S.D. Tex. June 21, 2019).  The most favorable use of the provision under Texas law involved

injury to the employee of a contractor leading to liability for the owner of the job site for

misrepresenting the safety of the equipment the employee was working on.  *EDCO Prod. Inc. v.*

*Hernandez*, 794 S.W.2d 69, 76-77 (Tex. App. 1990).  In a more analogous case, clinical

researchers who allegedly withheld evidence of negative side effects were not held liable for

misrepresentations when the drug they were studying was later sold to plaintiffs who alleged they

suffered harm from taking it.  *Staples v. Merck & Co., Inc.*, 270 F.Supp.2d 833, 840-41 (N.D. Tex.

2003).  In the face of this uncertainty, this Court should not expand the reach of either state's

common law to impose potential liability on IDSA under Plaintiffs' new misrepresentation claims.

Plaintiffs cite two isolated cases where medical organizations have been found liable in

tort, but neither applies here.  In *Snyder v. Am. Ass'n of Blood Banks*, 676 A.2d 1036 (N.J. 1996),

the New Jersey courts found that the American Association of Blood Banks ("AABB") owed

patients a duty of care to test blood transfusions for HIV.[10]   There was no issue there of

misrepresentation in educational and voluntary guidelines issued to the medical community.

AABB and IDSA are not similarly situated.  "In 1984, the AABB was more than a trade association.

It was the governing body of a significantly self-regulated industry."  *Snyder v. Am. Ass'n of Blood

Banks*, 144 N.J. 269, 296 (1996).  In fact, the FDA would adopt AABB standards as its own

regulations.  *Id.*  In contrast, there is no allegation that IDSA plays any formal regulatory role or

has the type of operational involvement in actual patient care that AABB had.  The case offers no

support for a claim against a non-regulatory body that issues guidelines with no binding effect.

Plaintiffs' other authority is a medical malpractice case where the issue was whether the

First Amendment provides absolute immunity to a medical association for assuring patients that

blood transfusion products were safe when in fact there was a risk the transfusions could transmit

HIV.  *In re Factor VIII or IX Concentrate Blood Prod. Litig.*, 25 F. Supp. 2d 837, 846 (N.D. Ill.

1998).  The court concluded at the summary judgment stage that the plaintiffs actually did rely on

the association's representations in deciding which products to use.  *Blood Prod. Litig*, 25 F.

Supp.2d at 840.  The case has no bearing here because there is no allegation – and could be no

allegation – that Plaintiffs themselves relied on the IDSA guidelines.  And, of course, the risk of

HIV transmissions was a fact that could be proved.

Plaintiffs' cases all rely on a more direct relationship between plaintiffs and the defendant

medical societies, such as an actual regulatory body or a direct recommendation akin to an actual

doctor-patient relationship.  Plaintiffs do not and cannot allege that IDSA has such a relationship

---

[10] Decided just a year later, the New York case cited by Plaintiffs relied on *Snyder* in a nearly
identical case.  *See Weigand v. Univ. Hosp. of New York Univ. Med. Ctr.*, 659 N.Y.S.2d 395,
398 (N.Y. Sup. Ct. 1997).

with them, and thus Plaintiffs cannot rely on the Guidelines as factual representations to assert claims of misrepresentation.

## VI.   The Court Should Strike Plaintiffs' New Misrepresentation Claims Because They Come Too Late And Are Highly Prejudicial

Plaintiffs' only response to the motion to strike the Second Amended Complaint is that the Court's Docket Control Order contains a standard provision stating "[i]t is not necessary to file a Motion for Leave to Amend before the deadline to amend pleadings."  Dkt. 309.  Yet this provision does not give Plaintiffs a blank check to add new claims requiring new discovery after the end of fact discovery in a highly prejudicial manner.

The Court's Docket Control order does not grant parties "the right to freely amend without leave."  Dkt. 362 at 15; *Daves v. Payless Cashways, Inc.*, 661 F.2d 1022, 1025 (5th Cir. 1981) ("Liberality in pleading does not bestow on a litigant the privilege of neglecting her case for a long period of time.").  Whether to accept an amendment is squarely "within the discretion of the District Court," and the Court may refuse to accept an amendment if there is "undue prejudice to the opposing party by virtue of allowance of the amendment."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Both the Second and Third Amended Complaints run afoul of the well-established standards to determine whether "justice so requires" that an amendment be permitted.  *See* Fed. R. Civ. P. 15(a)(2).

With their Third Amended Complaint, Plaintiffs "attempted to establish a new factual basis and legal theory … more than a year after [their] institution of suit, after discovery had been terminated and after the defendant's motion for summary judgment."  *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 667 (5th Cir. 1981).  Just like in *Addington*, the Court should find Plaintiffs' attempts to amend under these circumstances is prejudicial.  Plaintiffs admit there will be prejudice because there must be a reopening of discovery, which Plaintiffs seek to

downplay, Dkt. 362 at 15, but which likely would require new document productions, new interrogatories, new independent medical examinations, and new depositions – not only on damages but on substantive elements of Plaintiffs' new claims.

In addition, in their Response Plaintiffs threatened to take their interpretation of the Court's Docket Control order to an even greater extreme and file ***yet another*** amendment to evade any other dispositive motions that may be filed before April.  Dkt. 362 at 4.  The Court should not permit the disruption such actions threaten to cause.  "At some point in the course of litigation, an unjustified delay preceding a motion to amend goes beyond excusable neglect … we also must protect 'a busy district court (from being) imposed upon by the presentation of theories seriatim." *Daves*, 661 F.2d at 1025.

## CONCLUSION

For the reasons stated herein and in Defendants' Motion to Dismiss (Dkt. 355), Defendants request that the Court dismiss all counts of Plaintiffs' Second and Third Amended Complaints with prejudice.  In the alternative, if the Court does not dismiss all counts, Defendants request the Court strike Plaintiffs new misrepresentation claims in both the Second and Third Amended Complaints.

Dated:  February 12, 2021

Respectfully Submitted,

PILLSBURY WINTHROP SHAW
PITTMAN LLP

BY:   */s/ Ronald Casey Low*
RONALD CASEY LOW

Ronald Casey Low
State Bar No. 24041363
401 Congress Avenue, Suite 1700
Austin, TX 78701
Phone:  (512) 580-9616
Fax:  (512) 580-9601
Email: casey.low@pillsburylaw.com

Alvin Dunn – *Lead Attorney*
(*pro hac vice*)
1200 Seventeenth St. NW
Washington, D.C. 20036
Tel:  (202) 663-8000
Fax: (202) 663-8007
Email: alvin.dunn@pillsburylaw.com

***ATTORNEYS FOR DEFENDANTS
INFECTIOUS DISEASES SOCIETY OF
AMERICA, DR. GARY P. WORMSER, DR.
RAYMOND J. DATTWYLER, DR.
EUGENE SHAPIRO, DR. JOHN J.
HALPERIN, DR. LEONARD SIGAL, AND
DR. ALLEN STEERE***

24

## **CERTIFICATE OF SERVICE**

I, Casey Low, hereby certify that on the 12th day of February, 2021, the foregoing DEFENDANTS' MOTION TO DISMISS OR STRIKE THIRD AMENDED COMPLAINT AND REPLY IN SUPPORT OF MOTION TO DISMISS OR STRIKE SECOND AMENDED COMPLAINT, with exhibits and accompanying Proposed Order, were filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants.

_____/s/ *Casey Low*_____
Casey Low