# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TEXARKANA DIVISION

| | |
|---|---|
| LISA TORREY, *et al.*, § <br> § <br> Plaintiffs, § <br> § <br> v. § <br> § <br> INFECTIOUS DISEASES SOCIETY OF § <br> AMERICA, *et al.*, § <br> § <br> Defendants. § | CIVIL ACTION NO. 5:17-CV-00190-RWS <br><br> **SEALED** |

## ORDER

Before the Court are Defendant Infectious Diseases Society of America's ("IDSA") Motion to Dismiss Plaintiffs' Second Amended Complaint or, in the Alternative, to Strike Plaintiffs' New Misrepresentation Claims (Docket No. 355) and Motion to Dismiss or Strike Third Amended Complaint and Reply in Support of Motion to Dismiss or Strike Second Amended Complaint (Docket No. 363).[1, 2, 3] The Court heard argument on the motions on April 23, 2021. Docket No. 397. The Court takes each motion in turn.

---

[1] At the time the motion was filed, several individual doctors were also defendants in the case and signed onto the motion, including Dr. Gary P. Wormser, Dr. Allen Steere, Dr. Raymond J. Dattwyler, Dr. John J. Halperin, Dr. Eugene Shapiro and Dr. Leonard Sigal (collectively, the "Doctors"). They have since been dismissed from the case. Docket No. 396.

[2] Plaintiffs also sued the insurance providers Anthem, Inc., Blue Cross and Blue Shield of Texas, Aetna, Inc., Cigna Health and Life Insurance Company (sued as Cigna Corporation), Kaiser Foundation Health Plan, Inc. (sued as Kaiser Permanente, Inc.), United Healthcare Services, Inc., Unitedhealth Group Inc. and Blue Cross and Blue Shield Association (collectively, the "Insurance Defendants"). At this time, the suit against these parties has either been stayed for notice of settlement or dismissed.

[3] Defendant chose to combine its reply for its briefing on its motion to dismiss the Second Amended Complaint with its opening briefing to its motion to dismiss the Third Amended Complaint. *See* Docket No. 363.

## BACKGROUND

Plaintiffs sued Defendant in November 2017. Docket No. 1. Since filing their Original Complaint, Plaintiffs have maintained the allegation that Defendant, the Doctors and the Insurance Defendants have engaged in a decades-long conspiracy to deny the existence and prevent treatment of chronic Lyme disease. *Id.* Plaintiffs alleged that doctors have known for a long time that while many patients who contract Lyme disease may be cured with short-term antibiotics, up to 40 percent of patients do not respond to short-term antibiotic treatment. *Id.* ¶ 45. These patients require long-term antibiotic treatment until the symptoms are resolved. *Id.* Though the Insurance Defendants initially provided coverage for long-term antibiotic treatment of Lyme disease, the health insurance industry made a concerted effort in the 1990's to deny coverage because long-term treatment was too expensive. *Id.* ¶¶ 47–48. The Insurance Defendants enlisted the help of doctors who were researching Lyme disease—the IDSA panelists—and paid them large fees to develop arbitrary guidelines for testing Lyme disease. *Id.* ¶ 48. Once these guidelines were established, the Insurance Defendants denied coverage for patients who did not meet the new stringent Lyme disease testing protocols and prevented Plaintiffs from obtaining the antibiotics needed to treat their Lyme disease. *Id.* ¶ 49.

Plaintiffs filed an Amended Complaint on March 25, 2019, which continued to allege Racketeer Influenced and Corrupt Organization ("RICO") and antitrust violations. Docket No. 186. Plaintiffs filed a Second Amended Complaint on January 7, 2021, which added two new misrepresentation allegations. Docket No. 352. Defendant moved to dismiss the Second Amended Complaint—or, in the alternative, strike the new misrepresentation claims—on January 21, 2021. Docket No. 355. While that motion was briefing, Plaintiffs filed a Third Amended Complaint on February 4, 2021, which continued to allege RICO violations, antitrust violations and

misrepresentation. Docket No. 361. Plaintiffs have since filed a stipulation dismissing their RICO allegations (Docket No. 396), and the Court has since dismissed the antitrust allegations (Docket No. 407). Plaintiffs' misrepresentation claims are thus the only claims remaining in suit. Defendant has moved to dismiss or strike those claims. Docket No. 363.

## LEGAL STANDARD

For motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must assume that all well-pleaded facts are true and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then decide whether those facts state a claim that is plausible on its face. *Bowlby*, 681 F.3d at 219. The complaint need not contain detailed factual allegations, but a plaintiff must plead sufficient factual allegations to show that it is plausibly entitled to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (discussing *Twombly* and applying *Twombly* generally to civil actions pleaded under Rule 8). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

## ANALYSIS

### I. Motion to Dismiss Plaintiffs' Second Amended Complaint

Defendant moved to dismiss Plaintiffs' Second Amended Complaint. As Plaintiffs have filed a Third Amended Complaint that superseded their Second Amended Complaint as the operative pleading in this matter, Defendant's motion (Docket No. 355) is **DENIED-AS-MOOT**.

### II. Motion to Dismiss Plaintiffs' Third Amended Complaint

Defendant moved to dismiss Plaintiffs' Third Amended Complaint, requesting that the Court dismiss all claims with prejudice; or, in the alternative, strike Plaintiffs' misrepresentation claims with prejudice. Docket No. 363. Plaintiffs' RICO and antitrust allegations, however, have already been dismissed. Docket Nos. 396, 407. Defendant's motion (Docket No. 363) is thus **DENIED-IN-PART** as moot regarding the RICO and antitrust allegations. The Court now addresses Defendant's motion to dismiss as to the remaining misrepresentation claims.

Defendant contends that Plaintiffs falsely claim that recent testimony caused them to add their new misrepresentation claims. Docket No. 363 at 3. One, Defendant asserts that while Plaintiffs claim they learned for the first time through recent depositions that "the guidelines provide false information, including false information about treatment failure" (Docket No. 362 at 1), Plaintiffs have in fact repeatedly alleged this in their Original and First Amended Complaints—both of which were filed before any depositions took place but did not contain misrepresentation allegations. Docket No. 363 at 3 (citing Docket No. 1 ¶¶ 64, 74, 99; Docket No. 186 ¶¶ 85, 95, 98). Two, Defendant asserts that Plaintiffs claim they learned for the first time through the recent depositions that "IDSA provides false information regarding the accuracy of testing for Lyme disease" and "that the two-tier test is completely inaccurate and fails to detect Lyme disease" (Docket No. 362 at 7), despite also repeatedly alleging this in their Original and First Amended

Complaints. Docket No. 363 at 4 (citing Docket No. 1 ¶¶ 95, 150; Docket No. 186 ¶¶ 89, 151). Three, Defendant asserts that Plaintiffs claim they did not learn until Defendant's Rule 30(b)(6) deposition that they needed to seek recovery for personal injuries and therefore would need to change their prior representations to this Court regarding the type of damages they sought. *Id.* (citing Docket No. 362 at 13–14). But, Defendant argues, Plaintiffs cannot claim to have learned from a November 2020 deposition that "IDSA takes the position that it is the 'leading medical authorities [sic]' " on Lyme disease because that statement is not from a recent deposition; rather, it is from a document that Plaintiffs themselves introduced as an exhibit at their deposition of Defendant. *Id.* at 4–5 (citing Docket No. 363-1).

Defendant also argues that judicial estoppel bars Plaintiffs from reversing their prior successful representations to the Court that they are not seeking recovery for personal injuries. *Id.* at 8. In the Fifth Circuit, judicial estoppel applies if (1) the party's position is "clearly inconsistent with the previous one," (2) the court "accepted the previous position" and (3) the inconsistency "must not have been inadvertent." *In re Superior Crewboats, Inc.*, 374 F.3d 330, 335 (5th Cir. 2004). Defendant asserts that Plaintiffs cannot explain their inconsistent positions on damages, as their explanation that they needed to depose Defendant to know what personal injuries they themselves suffered is baseless. *Id.* Defendant contends that Plaintiffs knew before taking its deposition that it takes the position that its members are the leading medical authorities on Lyme disease (*see, e.g.*, Docket No. 1 ¶¶ 111, 113, 74, 131; Docket No. 186 ¶¶ 101, 103, 72); knew enough to allege that doctors may rely on the IDSA Guidelines when diagnosing and treating Lyme disease (*see, e.g.*, Docket No. 1 ¶ 122; Docket No. 186 ¶ 115); and knew enough to allege that Defendant's false Lyme disease guidelines caused Plaintiffs to suffer personal injuries (*see* Docket No. 1 ¶¶ 101, 132–140). Docket No. 363 at 8–9. Defendant asserts that "[b]y not disclosing their

personal injury claim . . . [Plaintiffs'] motivation for concealment is self-evident because of the 'potential financial benefit resulting from the nondisclosure.' " *Id.* at 9 (citing *Allen v. C & H Distribs., L.L.C.*, 813 F.3d 566, 574 (5th Cir. 2015)). Defendant contends that by denying they were seeking personal injuries earlier, Plaintiffs sought to potentially treble their damages by keeping their RICO and antitrust claims alive. *Id.* Defendant argues that Plaintiffs cannot reap a reward for tactical delay by seeking to add—after the close of fact discovery—claims for relief that they could have asserted in their Original Complaint. *Id.*

Defendant next argues that state law does not support Plaintiffs' misrepresentation claims. First, Defendant argues that Plaintiffs fail to establish which state's law governs their misrepresentation claims—which warrants dismissal of their claims. *Id.* at 11 (citing *Enigma Holdings, Inc. v. Gemplus Int'l S.A.*, No. 3:05-CV-1168-B, 2006 WL 2859369, at *7 (N.D. Tex. Oct. 6, 2006); *Corder v. BBG Commc'ns, Inc.*, No. CIV.A. W-11-CA-00264, 2012 WL 3843714, at *9 (W.D. Tex. July 30, 2012)). Second, Defendant argues that, regardless of which state's law applies,[4] Plaintiffs cannot recover for the alleged misrepresentations in the IDSA Guidelines, as the statements are medical opinions and not factual representations. *Id.* at 12 (citing *Paul v.*

---

[4] Defendant argues that Texas choice of law rules apply and that Texas courts use the most significant relationship choice-of-law analysis, which is a four-factor test for misrepresentation claims: (1) the place "plaintiff acted in reliance upon the defendant's representations," (2) the "place where plaintiff received the representations," (3) the "place where defendant made the representations" and (4) the domicile of the parties. Docket No. 363 at 11 (citing *Vanderbilt Mortg. & Fin., Inc. v. Posey*, 146 S.W.3d 302, 315 (Tex. App. 2004)). Under this analysis, Defendant argues that Virginia law applies because the pled facts contain no information as to any of the four factors except the place Defendant is located and published the guidelines—*i.e.*, Virginia. *Id.* at 12. Plaintiffs argue that the most significant relationships test does not apply because the Court is not exercising diversity jurisdiction. Docket No. 370 at 11 (citing *Jackson v. W. Telemktg. Corp. Outbound*, 245 F.3d 518, 522 (5th Cir. 2001); *Brown v. Cities Serv. Oil Co.*, 733 F.2d 1156, 1159 (5th Cir. 1984)). Plaintiffs contend that if Texas law does not apply, then New York law applies to their misrepresentation claims. *Id.* Plaintiffs assert that the most important factor for the Court to consider is "the place where the conduct causing the injury occurred." *Id.* at 12 (quoting *Access Telecom, Inc. v. MCI Telecommunic'ns Corp.*, 197 F.3d 694, 705 (5th Cir. 1999)). Plaintiffs argue that the authors of the IDSA Guidelines live and work in New York. *Id.* Defendant replies to that analysis that Plaintiffs' misrepresentation claims are against Defendant only—not the Doctors—thus, to the extent that place of business matters, it is where Defendant conducts its business. Docket No. 383 at 7. Further, Defendant points out that New York is only the residence or workplace of two out of the 20 total authors for the IDSA Guidelines. *Id.*

*Capital Res. Mgmt., Inc.*, 987 S.W.2d 214, 219 (Tex. App. 1999); *Klaiber v. Freemason Assocs., Inc.*, 587 S.E.2d 555, 558 (Va. 2003)).  Defendant asserts that there is no misrepresentation when "there [is] a legitimate difference of opinion among learned experts" regarding medical treatments. *Id.* at 13 (citing *Weidner v. Marlin*, No. 04-96-00160-CV, 1997 Tex. App. LEXIS 4875, at *27–28 (Tex. App. 1997)).  Defendant contends that Plaintiffs' doctors—the persons Plaintiffs allege were the recipients of the IDSA Guidelines—were equally capable of reviewing the studies and papers cited as the basis for the opinions expressed in the IDSA Guidelines, and when "the information forming the basis for [Defendant]'s opinions was equally available to both . . . [the] statements are not actionable misrepresentations." *Id.* (citing *Paul*, 987 S.W.2d at 219–20; *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 105 (1902)).  Defendant contends that Plaintiffs only cite other studies or statements that have reached different conclusions or formed different opinions than the IDSA Guidelines, but Plaintiffs do not allege that the studies cited by the IDSA Guidelines do not contain the findings described therein. *Id.* at 14 (citing *United States ex rel. Morton v. A Plus Benefits, Inc.*, 139 F. App'x 980, 983 (10th Cir. 2005)).

Defendant further contends that no matter which state's law applies, the IDSA Guidelines refute Plaintiffs' allegations of falsity. *Id.* Defendant asserts that it is axiomatic that to prove a claim for misrepresentation Plaintiffs must plead that the statements at issue were actually false. *Id.* (citing *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983); *R&M Mixed Beverage Consultants, Inc. v. Safe Harbor Benefits, Inc.*, 578 S.W.3d 218, 239 n.11 (Tex. App. 2019)). Defendant contends that the failure to plead that the IDSA Guidelines contain alleged false statements of fact is another deficiency that dooms both of Plaintiffs' misrepresentation claims. *Id.* at 15.  Defendant asserts that while Plaintiffs claim that the IDSA Guidelines "specifically state there is absolutely no treatment failure for Lyme disease" (Docket No. 362 at 5; Docket No. 361

¶ 193), the IDSA Guidelines without question recognize that initial treatment might fail. Docket No. 363 at 15 (citing Docket No. 363-2 at 1112). Defendant also asserts that the Doctors explained at their depositions that the IDSA Guidelines recognize treatment failure. *Id.* at 15, 15 n.9 (citing Docket No. 363-3 at 36:17–19, 37:11–19). Defendant asserts that while Plaintiffs also claim that "[t]he IDSA tells doctors that the only way to determine whether a patient has Lyme disease is the two-tier serologic test" (Docket No. 362 at 7), the IDSA Guidelines do not require a positive result for the standard two-tier test to diagnose early Lyme disease. Docket No. 363 at 16 (citing Docket No. 363-2 at 1101). Defendant contends that Plaintiffs improperly seek to oversimplify a complex question in order to allege misrepresentation. *Id.* at 16–17 (citing *Lone Star*, 594 F.3d at 388).

Defendant then argues that Plaintiffs fail to allege sufficient details to state claims for misrepresentation under Virginia law and Rule 9(b). *Id.* at 17. Defendant argues that because both of Plaintiffs' new misrepresentation claims are based on the same set of facts, they are subject to the heightened pleading standard in Rule 9(b). *Id.* (citing *Lone Star*, 594 F.3d at 387 n.3 ("Rule 9(b) does apply . . . when 'fraud and negligent misrepresentation claims are based on the same set of alleged facts.' ")). But, Defendant argues, Plaintiffs plead only conclusory allegations and set forth no specific explanation of how each Plaintiff was harmed by a misrepresentation of fact contained in the IDSA Guidelines; no allegation of when and where those alleged misrepresentations occurred; no details in the allegations of which doctors relied on the IDSA Guidelines; no details in the allegations of whether a doctor's reliance overrode their own judgment and actually caused the alleged injury; no details in the allegations of how the doctors first read the IDSA Guidelines; and no allegations of when and where those doctors made decisions that caused Plaintiffs' alleged harm. *Id.* at 18–19.

Defendant finally argues that while Plaintiffs assert that they can recover under Restatement (Second) Torts §§ 310–11 because they were treated by some doctors who, in turn, allegedly relied at least in part on the IDSA Guidelines, no state law supports this. Defendant argues that even under the Restatement, Plaintiffs have failed to plead viable claims. *Id.* at 20 (citing Restatement (Second) Torts § 311, cmt a (explaining the provision applies in cases of "the professional duty of a physician to give correct information as to the character of the disease from which his patient is suffering")). Virginia would not recognize Plaintiffs' claim for derivative reliance because Defendant had no special relationship with Plaintiffs. *Id.* at 19 (citing *Nasser v. Parker*, 249 Va. 172, 176 (1995)). "Texas courts have not explicitly adopted § 311." *Id.* at 20 (quoting *Butler v. Juno Therapeutics, Inc.*, No. H-18-898, 2019 WL 2568477, *24 (S.D. Tex. June 21, 2019)). And under New York law, Defendant contends that Plaintiffs' misrepresentation claims fare no better, as Plaintiffs do not allege any connection or relationship between themselves and Defendant. *Id.* Defendant further asserts that Plaintiffs do not allege that they personally relied on the IDSA Guidelines to their detriment. *Id.* Indeed, Defendant points out, Plaintiffs plead that they did not rely on the IDSA Guidelines but instead sought treatment outside the IDSA Guidelines. *Id.* And Defendant contends that the cases Plaintiff's cite are inapposite, as they rely on a direct relationship between plaintiffs and the defendant medical societies—such as an actual regulatory body or a direct recommendation similar to an actual doctor-patient relationship. But, Defendant asserts, Plaintiffs do not and cannot allege that Defendant has such a relationship with them. *Id.* at 21 (citing *Snyder v. Am. Ass'n of Blood Banks*, 144 N.J. 269, 296 (1996); *In re Factor VIII or IX Concentrate Blood Prod. Litig.*, 25 F. Supp. 2d 837, 846 (N.D. Ill. 1998)).

Plaintiffs first respond that recent testimony of Defendant confirmed that it is liable for misrepresentations involving risk of physical harm as set forth in the Second Restatement of Torts

and under Texas law.  Docket No. 370 at 6 (citing Restatement (Second) of Torts § 311 (1965); *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 664 (Tex. 1998); Texas Pattern Jury Instruction 105.19).  Plaintiffs argue that new testimony established that Defendant provides false information regarding treatment failure and false information regarding the accuracy of testing for Lyme disease.  *Id.* at 6–8 (citing Docket No. 370-1 at 36:11–13; Docket No. 370-2 at 34:3–4, 36:19–25, 42:4–19, 49:16–19; Docket No. 370-6 at 110:1–5).

Plaintiffs next respond that Defendant failed to establish any of the elements of judicial estoppel.  *Id.* at 9.  Plaintiffs argue that they previously took the position they were not seeking personal injury damages for their RICO claim (*see* Docket No. 60 at 8) and are still not seeking personal injury damages for their RICO claims; instead, they are seeking personal injury damages under a new cause of action—so there is no inconsistency in their prior and current positions.  Docket No. 370 at 10.  Plaintiffs also argue that Defendant failed to show that Plaintiffs were previously aware of the facts related to the misrepresentations made by Defendant.  *Id.*

Plaintiffs also respond that the pleading requirement here is governed by federal law, and Plaintiffs' negligent misrepresentation claims should be decided by Rule 8(a).  *Id.* at 13 (citing *Am. Realty Tr., Inc. v. Hamilton Lane Advisors, Inc.*, 115 Fed. Appx. 662, 668–69 (5th Cir. 2004)).  Plaintiffs argue that Defendant did not contest that Plaintiffs satisfy Rule 8(a).  *Id.* at 14.  Plaintiffs further argue that their claim for fraudulent misrepresentation meets the Rule 9(b) pleading requirements: the Third Amended Complaint specifically sets forth the fraudulent statements (*i.e.*, there is no treatment failure and two-tier testing is accurate); identifies the speaker (*i.e.*, Defendant); states when and where the statements were made (*i.e.*, in the 2000 and 2006 IDSA Guidelines); and explains why the statements were fraudulent (*i.e.*, there is treatment failure and the tests are inaccurate).  *Id.* at 14–15 (citing Docket No. 361 at 52–60; *Herrmann Holdings Ltd.*

*v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002); *Williams v. WMX Techs., Inc.*, 112 F.3d 175 (5th Cir. 1997)).

Plaintiffs then respond that Defendant failed to provide any law supporting its claim that Plaintiffs' misrepresentation claims are improper. *Id.* at 15. Plaintiffs argue that medical societies can be held liable for disseminating false and dangerous information. *Id.* at 15–16 (citing Restatement (Second) of Torts § 311; *Blood Prods.*, 25 F. Supp. 2d 837; *Snyder*, 676 A.2d at 1048–50, 1055; *Weigand v. Univ. Hosp. of N.Y. Univ. Med. Ctr.*, 659 N.Y.S.2d 395, 398–401 (Sup. Ct. 1997)).

Under any state law that the parties debate, Plaintiffs' claims fail. To sustain either claim for misrepresentation, Plaintiffs must plead that the representations are factual statements, that the statements are false and that Plaintiffs detrimentally relied on those misrepresentations of fact. *Trenholm*, 646 S.W.2d at 930; *R&M Mixed Beverage Consultants*, 578 S.W.3d at 239 n.11. Plaintiffs, however, fail to plead any false statements.

In the Third Amended Complaint, Plaintiffs plead that "[e]ven though the IDSA knows there is treatment failure, the 2006 guidelines specifically state there is absolutely no treatment failure for Lyme disease" (Docket No. 361 ¶ 181), and "the IDSA provides false information regarding the accuracy of testing for Lyme disease. The IDSA tells doctors that the only way to determine whether a patient has Lyme disease is the two-tier serologic test . . . [but t]he testimony of the IDSA and the IDSA doctors establishes that the two-tier test is completely inaccurate and fails to detect Lyme disease" (*id.* ¶¶ 186, 187). *See also id.* ¶¶ 193, 198 (same). While standing alone the pled statements may support Plaintiffs' claims, the identified statements are isolated portions of complex documents and reading the IDSA Guidelines in their entirety undermines Plaintiffs' pleadings. *Cf. Lone Star*, 594 F.3d at 388; *see also id.* at 387 (allowing a court to

consider "any documents attached to the complaint[] and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."). The IDSA Guidelines state "[n]ot all patients with Lyme arthritis respond to 2–4 week courses of oral or intravenous antibiotic therapy." *See e.g.*, Docket No. 373-3 at 1112. As to the testing requirement, the IDSA Guidelines state that "[s]erologic testing is too insensitive in the acute phase (the first 2 weeks of infection) to be helpful diagnostically. Patients should be treated on the basis of clinical findings." *See e.g.*, *id.* at 1101.

Indeed, the statements in the IDSA Guidelines are not the type of statements that Plaintiffs can recover for based on misrepresentation, as they are medical opinions, not factual representations. The IDSA Guidelines set forth explanations of medical research, experiments and knowledge based on citations to other published studies and clinical trials, not naked assertions of fact. *See generally* Docket Nos. 373-3, 373-7; *see also* Docket No. 373-3 at 1 ("It is important to realize that guidelines cannot always account for individual variation among patients. They are not intended to supplant physician judgment with respect to particular patients or special clinical situations. The Infectious Diseases Society of America considers adherence to these guidelines to be voluntary, with the ultimate determination regarding their application to be made by the physician in the light of each patient's individual circumstances."). And where there is a legitimate difference of opinion on medical treatments among experts, there is no false representation of a material fact. *See McAnnulty*, 187 U.S. at 105 ("[T]he effectiveness of almost any particular method of treatment of disease is, to a more or less extent, a fruitful source of difference of opinion."); *A Plus Benefits*, 139 F. App'x at 983 ("Expressions of opinion, scientific judgments, or statements as to conclusions about which reasonable minds may differ cannot be false."); *Weidner*, 1997 Tex. App. LEXIS 4875, at *27–28 (finding no evidence of false representation of

a material fact when there was a legitimate difference of opinion among experts regarding the risk of medical treatments.). At best, Plaintiffs cite other studies or statements that have reached different conclusions or formed different opinions than those expressed in the IDSA Guidelines. *See McAnnulty*, 187 U.S. at 106 ("[D]ifferent schools of medicine have their followers, and many who believe in the one will pronounce the other wholly devoid of merit. But there is no precise standard by which to measure the claims of either."). But Plaintiffs do not allege that the studies cited by the IDSA Guidelines do not contain the findings described therein. Moreover, when "the information forming the basis for [Defendant]'s opinions was equally available to both . . . [the] statements are not actionable misrepresentations." *Paul*, 987 S.W.2d at 219–20. Here, Plaintiffs' doctors were equally capable of reviewing the studies and papers cited as the basis for the opinions expressed in the IDSA Guidelines. Thus, the statements pled here are not actionable.[5]

As Plaintiffs have not pled claims for relief that are plausible on their face, Defendant's second motion to dismiss (Docket No. 363) is **GRANTED-IN-PART** as to Plaintiffs' negligent and fraudulent misrepresentation claims.

\* \* \*

For the reasons set forth above, Defendant's first motion to dismiss (Docket No. 355) is **DENIED-AS-MOOT** and second motion to dismiss (Docket No. 363) is **GRANTED-IN-PART** and **DENIED-IN-PART** as moot. It is

**ORDERED** that Plaintiffs' negligent and fraudulent misrepresentation claims are **DISMISSED WITH PREJUDICE**. It is further

---

[5] While Plaintiffs argue that medical associations can be held liable, the cases they cite are distinguishable from the allegations in suit here. *Weigand* and *Snyder* did not involve misrepresentation claims; rather, the allegations involved negligence in promulgating binding standards on blood banking organizations. *Weigand*, 659 N.Y.S.2d at 396; *Snyder*, 676 A.2d at 1038. *Blood Products* did include a negligent misrepresentation claim, but it involved direct reliance by the plaintiffs. 25 F. Supp.2d at 839–40.

**ORDERED** that within seven (7) days of the issuance of this order, the parties shall jointly submit a proposed redacted version of this sealed order so that a public version can be made available.

**So ORDERED and SIGNED this 20th day of September, 2021.**

*Robert W. Schroeder III*
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE